LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA



# KENTUCKIANA
## COURT REPORTERS

## CASE NO. 21-CV-271-NJR

## ANTONIO HUNTER

## V.

## ILLINOIS DEPARTMENT OF CORRECTIONS, ET AL.

## DEPONENT:

## ED  POTASH, ON BEHALF OF IDOC

## DATE:

## January 23, 2023



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com
☎ 877.808.5856 | 502.589.2273

1      IN THE UNITED STATES DISTRICT COURT FOR THE

2            SOUTHERN DISTRICT OF ILLINOIS

3            CASE NO. 21-CV-271-NJR

4

5

6

7

8

9                ANTONIO HUNTER,

10                  Plaintiff,

11

12                       v.

13

14      ILLINOIS DEPARTMENT OF CORRECTIONS, ET AL.,

15                 Defendants.

16

17

18

19

20

21

22

23   DEPONENT:  ED POTASH, ON BEHALF OF IDOC

24   DATE:      JANUARY 23, 2023

25   REPORTER:  MAGGIE PATTERSON



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 2

```
1                    APPEARANCES
2
3    ON BEHALF OF THE PLAINTIFF, ANTONIO HUNTER:
4    Maria Makar, Esquire
5    Lindsay Hagy, Esquire
6    Loevy & Loevy
7    311 North Aberdeen Street
8    Third Floor
9    Chicago, Illinois 60607
10   Telephone No.: (312) 243-5900
11   E-mail: maria@loevy.com
12        lindsay@loevy.com
13   (Appeared via videoconference)
14
15   ON BEHALF OF THE DEFENDANTS, ILLINOIS DEPARTMENT OF
16   CORRECTIONS AND STEVEN MEEKS:
17   Tara Barnett, Esquire
18   Office of Attorney General- Chicago Main Office
19   100 West Randolph Street
20   Chicago, Illinois 60601
21   Telephone No.: (312) 814-3000
22   E-mail: tara.barnett@ilag.gov
23   (Appeared via videoconference)
24
25
```

Page 3

```
1              APPEARANCES (CONTINUED)
2
3    ON BEHALF OF THE DEFENDANTS, WEXFORD HEALTH SOURCES,
4    INC. AND STEPHEN RITZ, M.D.:
5    Abbey Fritz, Esquire
6    Sandberg Phoenix & von Gontard PC
7    600 Washington Avenue
8    15th Floor
9    St. Louis, Missouri 63101
10   Telephone No.: (314) 231-3332
11   E-mail: afritz@sandbergphoenix.com
12   (Appeared via videoconference)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1                      INDEX
2                                          Page
3    PROCEEDINGS                             6
4    DIRECT EXAMINATION BY MS. MAKAR         7
5    CROSS EXAMINATION BY MS. BARNETT        33
6
7                    EXHIBITS
8    Exhibit                                Page
9    1 - Letter from Plaintiff's Counsel -
10       June 7, 2019                        27
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1                   STIPULATION
2
3    The 30(b)(6) deposition of ED POTASH was taken at
4    KENTUCKIANA COURT REPORTERS, 110 NORTH WACKER DRIVE,
5    CHICAGO, ILLINOIS 60606, via videoconference in which
6    all participants attended remotely, on MONDAY the 23rd
7    day of JANUARY 2023 at 9:01 a.m. (CT); said 30(b)(6)
8    deposition was taken pursuant to the FEDERAL Rules of
9    Civil Procedure.  THE OATH IN THIS MATTER WAS SWORN
10   REMOTELY PURSUANT TO FRCP 30.
11
12   It is agreed that MAGGIE PATTERSON, being a Notary
13   Public and Court Reporter for the state of ILLINOIS, may
14   swear the witness and that the reading and signing of
15   the completed transcript by the witness is not waived.
16
17
18
19
20
21
22
23
24
25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 6

1    PROCEEDINGS

2

3          COURT REPORTER:  All right.  We are now on the

4    record.  Will all parties present please state

5    their appearance and location they are attending

6    from?

7          THE WITNESS:  I, Edward Potash, am attending

8    this meeting from 555 West Monroe in Chicago,

9    Illinois.

10         MS. HAGY:  (Inaudible).

11         MS. MAKAR:  You're muted.

12         MS. HAGY:  Sorry.  Lindsay Hagy attending via

13   Zoom from Oak Park, Illinois on behalf of Plaintiff

14   Antonio Hunter.

15         MS. MAKAR:  Maria Makar, attending virtually

16   from the Loevy & Loevy office, 311 North Aberdeen,

17   in Chicago.

18         MS. BARNETT:  Tara Barnett on behalf of the

19   IDOC defendants, attending virtually from Southern

20   Illinois.

21         MS. FRITZ:  I'm Abbey Fritz on behalf of the

22   Wexford defendants, attending virtually from

23   St. Louis, Missouri.

24         COURT REPORTER:  Perfect.  Thank you.

25   And Mr. Potash, will you please state your full name

Page 7

1    for the record?

2          THE WITNESS:  Yes.  Edward Murray (phonetic)

3    Potash.

4          COURT REPORTER:  Thank you.  And do all parties

5    agree that this witness is, in fact, Mr. Potash?

6          MS. HAGY:  Yes, we do.

7          MS. MAKAR:  Yes.

8          COURT REPORTER:  Thank you.  All right.

9    And sir, will you please raise your right hand for

10   me?  Do you solemnly swear or affirm that the

11   testimony you're about to give is the truth,

12   the whole truth, and nothing but the truth?

13         THE WITNESS:  I do.

14         COURT REPORTER:  All right.  Thank you.

15   You may begin.

16         MS. MAKAR:  Thank you.

17                DIRECT EXAMINATION

18   BY MS. MAKAR:

19         Q     So have you ever been a plaintiff or a

20   defendant in a civil suit before?

21         A     No.

22         Q     Have you ever been deposed before?

23         A     No.

24         Q     Okay.  So you may be familiar with the rules,

25   but let me go through them for you.  It's important to

Page 8

1    keep your voice loud and answer verbally rather than

2    with a nod of the head or a shake of the head.  And try

3    to avoid expressions like uh-huh or uh-uh.  I'll try to

4    ask questions that make sense, but please let me know if

5    you don't understand the question and ask me to

6    rephrase.  If you do answer a question, we will assume

7    that you understood the question.  Because there's no

8    judge, there's no one to rule on objections.  A lawyer

9    may object to questions on the record.  But once they

10   lodge their objection, you're required to answer the

11   question pending unless your lawyer has instructed you

12   not to answer.  If you need a break, please just say so.

13   The only thing I ask is that you wait until the end of

14   the line of questioning before asking for a break and

15   that you answer the pending question before we take a

16   break.  Do you have any conditions that may affect your

17   ability to provide truthful and accurate testimony

18   today?

19         A     No.

20         Q     Any conditions that may affect your memory?

21         A     No.

22         Q     Are there any medications that may affect

23   your ability to provide truthful and accurate testimony

24   today?

25         A     No.

Page 9

1          Q     Are there any medications that could affect

2    your memory today?

3          A     No.

4          Q     Is there anything else that may affect your

5    ability to provide accurate testimony or your memory?

6          A     No.

7          Q     Without telling me the contents of any

8    meeting, did you prepare for today's deposition with

9    attorneys?

10         A     Yes.

11         Q     How many times?

12         A     Once.

13         Q     Who was there?

14         A     Ms. Tara Barnett was there.

15         Q     What did you review in preparation for this

16   deposition?

17         A     We reviewed my conduct, the rules of the case,

18   the rules rather of the proceeding, and my own

19   recollections of the procedure regarding this matter.

20         Q     Did you review any documents?

21         A     No.

22         Q     Did you talk to any defendants in this case?

23         A     Excuse me.  I made a mistake.  We did review

24   one document.  The case of -- of the plaintiff against

25   the defendant.  We did look at that.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 10

1   Q   The complaint?

2   A   Yes.

3   Q   Okay. Did you talk to anyone about this case?

4   Any defendants in this matter?

5   A   No.

6   Q   Did you talk to anyone at Wexford or IDOC?

7   A   No.

8   Q   Okay. So where are you currently employed?

9   A   I'm employed at the Illinois Department of

10  Corrections at 555 West Monroe in Chicago, Illinois.

11  Q   What do you do?

12  A   I am executive secretary II to the medical

13  director for the Illinois Department of Corrections.

14  Q   Which facilities do you cover?

15  A   The facilities I cover are all the prison

16  facilities -- state facilities in the State of Illinois.

17  Q   Who do you supervise?

18  A   I do not supervise anyone.

19  Q   Are you responsible for training anyone?

20  A   No.

21  Q   And how long have you been at IDOC?

22  A   I have been at IDOC since August 16, 2019.

23  Q   So moving on to your familiarity with the

24  policies at IDOC. Who did you talk with at IDOC to

25  learn the policies and procedures discussed in the

Page 11

1   30(b)(6) notice?

2   A   Lisa Moss.

3   Q   What did you do to prepare the answers related

4   to topic 9 about who at IDOC received the June 7, 2019

5   letter from plaintiff's counsel to Steven Meeks?

6   A   I would have to look at that myself. I would

7   have to get it. May I go and get it, copy it, and print

8   it?

9   Q   What would you need to print? The document

10  you may have looked at?

11  A   The complaint --

12  Q   Oh, no. That's fine.

13  A   -- the complaint so I know -- all right.

14      MS. BARNETT: If I can -- sorry. If I can just

15  jump in. Edward, you're just asking to see what

16  number 9 says?

17      THE WITNESS: Yes.

18      MS. BARNETT: Okay.

19      MS. MAKAR: Oh, okay.

20      MS. BARNETT: I think we can probably just

21  reread it to you.

22  BY MS. MAKAR:

23  Q   Yeah, sure.

24  A   All right.

25  Q   I can read that to you. One moment. So topic

Page 12

1   9 says, "Who from IDOC received the June 7,

2   2019 letter from plaintiff's counsel to Steve Meeks.

3   Plaintiffs seek information about whether anyone at IDOC

4   or any other IDOC system was involved." So the question

5   was: What did you do to prepare your answers related to

6   that topic -- topic 9?

7   A   Very good. I went over e-mails relating to

8   that period in my e-mail section. Now, look --

9   Q   Who were the e-mails from and to?

10  A   They are from Lisa Moss, Steve Meeks --

11  Dr. Steve Meeks, and Dr. Steven Bowman.

12  Q   Did you read anything else to prepare for

13  topic 9?

14  A   Yes, I read the spreadsheet for inmate

15  complaints and letters. And there are several copies of

16  that, but one was given to me by Lisa Moss. E- mailed

17  to me. I looked over a few copies of that. I also

18  overlooked or looked at copies that I had made that were

19  more recent and that were in the style and structure

20  that was more clear to me.

21  Q   Can you tell me a little bit more about the

22  differences between the different copies of the

23  spreadsheet?

24  A   Yes.

25  Q   Thank you.

Page 13

1   A   Initially, it was the style of the script.

2   I made it larger, clearer. And that was the basic

3   change. It was style.

4   Q   Is any of the data different between the

5   different topics?

6   A   Not that I know of, no.

7   Q   So now I'll read topic 10. "The process for

8   receiving, maintaining, and distributing the June 7,

9   2019 letter from plaintiff's counsel. Plaintiffs seek

10  information about whether anyone at IDOC or any other

11  IDOC system was involved." What did you do to prepare

12  to answer questions related to that topic -- topic 10?

13  A   I looked at the spreadsheets that I had

14  regarding inmate complaints and letters.

15  Q   The same --

16  A   And I looked at -- go on.

17  Q   Is that the same spreadsheet you looked at for

18  topic 9?

19  A   Yes.

20  Q   Okay. Sorry. I interrupted you. Go on.

21  A   It's quite all right.

22  Q   Was there anything else you looked at in

23  preparation for topic 10?

24  A   Yes. The e-mails relating to that period of

25  time.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Kentuckiana
COURT REPORTERS

Page 14

1    Q   Were those e-mails from or to Ms. Moss?
2    A   Yes.
3    Q   Anyone else?
4    A   Yes.  Dr. Bowman -- Dr. Steven Bowman and
5  Dr. Steve Meeks.
6    Q   Now I'll read topic 11.  "Any follow-up taken
7  in response to plaintiff's counsel June 7, 2019 letter.
8  Plaintiff seeks information about whether anyone else at
9  IDOC or any other IDOC system was involved."  What did
10 you do to prepare your answers for topic 11?
11   A   I looked in the file cabinet where I keep the
12 letters of complaint from inmates to see if maybe it was
13 there as well as look in the spreadsheets for the inmate
14 complaints and letters as well as the e-mails that were
15 from and to me from Dr. Steven Bowman, Dr. Steve Meeks,
16 and Lisa Moss.
17   Q   And who is Dr. Steve Bowman?
18   A   Dr. Steven Bowman is the medical director for
19 the Illinois Department of Corrections.
20   Q   And you said that you keep some letters in a
21 file cabinet?
22   A   Yes.
23   Q   What do you consider -- what type of letters
24 do you put in that file cabinet?
25   A   Complaints, letters that are from the inmates

Page 15

1  that complain about their treatment, medication.  And
2  those are the letters that I keep in the filing cabinet.
3    Q   How do you determine whether a letter is
4  related to an inmate's complaint?
5    A   Well, first, I read the letter.  And if the
6  individual says that they have a problem relating to
7  medication, or medical treatment, or that they want to
8  be transferred to another facility where they can get
9  better treatment, that I consider to be a letter of
10 complaint.
11   Q   And does every letter of complaint go into
12 that file cabinet?
13   A   Yes.
14   Q   Did you review any policies or directives
15 related to receiving letters of concern from inmates'
16 attorneys related to medical issues in preparation for
17 this deposition?
18   A   No.
19   Q   Did you review any policies or directives
20 related to receiving complaints related to inmates'
21 medical issues?
22   A   Yes.
23   Q   What are they?
24   A   They are e-mail discussions that I had between
25 myself and Dr. Bowman regarding how the complaints

Page 16

1  should be handled.  Also, e-mails and conversation
2  between myself and the -- the constituent division
3  of IDOC.
4    Q   What's the constituent division of IDOC?
5    A   That was the Department of Constituent
6  Affairs.
7    Q   And what do they do?
8    A   What they do is: They speak to constituents
9  that is either the -- regarding the inmates or the
10 complaints -- or rather they speak to the friends or
11 family of constituents who have complaints or concerns
12 about individuals in custody.
13   Q   And who are the constituents?
14   A   The constituents are family of the inmates,
15 friends of the inmates, or legal representatives of the
16 inmates.
17   Q   And did you review any policies related to
18 receiving medical records from inmates' attorneys?
19   A   No.
20   Q   Are there any policies or directives related
21 to receiving medical records from inmates' attorneys?
22   A   There may be.
23   Q   Are there any policies or directives related
24 to receiving letters of concern from inmates' attorneys
25 related to their medical issues?

Page 17

1    A   I don't know.
2    Q   Did you review any policies or directives
3  related to getting medical records to Wexford or to the
4  Pinckneyville medical director?
5    A   No.
6    Q   Are there any policies of that sort?
7    A   I don't know.
8    Q   Do you know who would know about policy for
9  directives related to getting medical records to
10 Wexford?
11   A   Dr. Steven Bowman.
12   Q   Okay.  So turning to your personal involvement
13 with Mr. Antonio Hunter.  Did you ever meet Mr. Antonio
14 Hunter?
15   A   No, ma'am.
16   Q   Did you ever supervise him yourself?
17   A   No.
18   Q   Did you ever talk to anyone at IDOC about his
19 medical position?
20   A   No.
21   Q   Do you remember any conversations about
22 Mr. Hunter prior to preparing for this deposition?
23   A   No.
24   Q   Did you work with Dr. Meeks in 2019?
25   A   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 18

1  Q   Did you work with Dr. Bowman in 2019?
2  A   Yes.
3  Q   Does IDOC sometimes determine that they need
4  an inmate's prior medical records?
5      MS. BARNETT:  I'm going to object to the form.
6  You can still answer, Mr. Potash.
7  A   For what purpose, Ms. Makar?
8  Q   For any purpose.  For example, does IDOC ever
9  determine they need an inmate's prior medical records
10 because an inmate has a medical issue that they are
11 complaining about?
12 A   Yes.
13     MS. BARNETT:  Objection.
14 Q   When that happens -- when IDOC determines they
15 need an inmate's prior medical records, what does IDOC
16 do to get those records?
17 A   Say that again, please?
18 Q   When IDOC determines they need an inmate's
19 prior medical records, what does IDOC do to get those
20 records?
21     MS. BARNETT:  Again, object to the -- this is
22 outside the scope of the 30(b)(6) notice.
23 Q   You can answer.
24     MS. BARNETT:  You can still answer.
25 A   I don't know.

Page 19

1  Q   IDOC has a medical records team, correct?
2  A   Say again, please.
3  Q   Does IDOC have a medical records team?
4  A   I don't know.
5  Q   Do you know about any processes at IDOC to get
6  medical records to Wexford?
7  A   No.
8  Q   Is an inmate responsible for getting their own
9  records to Wexford?
10     MS. BARNETT:  I'm going to object again.
11 This is all outside the scope of the 30(b)(6)
12 notice.
13     MS. FRITZ:  I'm going to join.
14 BY MS. MAKAR:
15 Q   You can answer.
16 A   Can you ask the question again?
17 Q   Sure.  Is an inmate responsible for getting
18 their own medical records to Wexford?
19 A   I don't think so.
20 Q   Would they be able to get their records to
21 Wexford, an inmate?
22     MS. BARNETT:  Objection.
23 A   Perhaps --
24     MS. BARNETT:  Outside the scope.
25     MS. FRITZ:  I'm going to join.  I'm also going

Page 20

1  to say calls for speculation.
2  BY MS. MAKAR:
3  Q   Sorry, I didn't hear your answer.
4  A   Perhaps with the permission of the medical
5  personnel at the facility.
6  Q   Who would that be?
7  A   I would think it would be the health -- the
8  health -- I'm sorry.  The health unit in the -- the
9  health coordinator unit administrator.  The HCUA.
10 Q   So in the latter half of 2019, did Dr. Meeks
11 help with getting medical records for inmates?
12 A   Say again.  Doctor who?
13 Q   Meeks.
14 A   I don't know.
15 Q   How about Dr. Bowman?
16 A   I don't know.
17 Q   Okay.  What is the process when someone at
18 IDOC is made aware that an inmate has a medical issue?
19     MS. BARNETT:  Objection.  Outside the scope,
20 form, vague.
21 Q   You can answer.
22     MS. BARNETT:  You --
23     THE WITNESS:  I -- Tara, can I answer the
24 question?
25     MS. BARNETT:  You can answer.

Page 21

1      THE WITNESS:  Thank you very much.
2  A   My response first is: What mode?  Is it
3  letter?  Is it a telephone call?  Is it conversation
4  with the -- the constituent department?  What mode
5  would you be talking about, Ms. Makar?
6  BY MS. MAKAR:
7  Q   Let's start first if someone at IDOC is made
8  aware that an inmate has a medical issue via the inmates
9  on complaints.
10 A   Say again?  Via the what?
11 Q   The inmate.
12 A   Right.  By letter, by phone call, by what?
13 Q   Someone at IDOC's observations or
14 conversations with the inmate.
15 A   I don't believe that anyone at OHS has ever
16 had a direct conversation with --
17 Q   At IDOC.  Sorry.
18 A   All right.  I don't know.
19 Q   Okay.  What is the process when someone at
20 IDOC is made aware that an inmate has a medical issue
21 via a letter from the inmate's attorney?
22 A   Very good.  That letter is read.  Then I -- if
23 I received a letter, then e-mail the HCU, the health
24 coordinated -- I'm -- I'm not sure if that's the correct
25 way of HCUA, but that's the individual who coordinates

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 22

1  medical matters at the facility.  I then make an e-mail
2  to the HCUA, to Doctor -- no, hold on -- to the HCUA,
3  then to Janette Candido, who is -- I believe she's
4  the -- the office coordinator for facility matters --
5  for matters of facilities at whole -- as a whole and
6  then for the Department of Constituency members.
7  I send an e-mail to them saying this is the situation
8  that I've received, and do you have any information that
9  you can give me on this.
10      Q    Was that process you just described -- was
11 that also the process in June 2019?
12      A    I believe the process was slightly different.
13 I would also e-mail Dr. Steve Meeks and/or
14 Dr. Steve -- Steven Bowman.
15      Q    Was there any special process for the letters
16 other than what you just described?
17      A    Yes.  I would file the letter in the filing
18 cabinet.
19      Q    And is there any special process if the letter
20 was considered urgent?
21      A    I think that -- I think the process would be
22 simply to say in the e-mail that it was urgent.
23      Q    And was there a process for checking on the
24 inmate after receiving a letter?
25      A    Yes.  I would ask the contact at the facility,

Page 23

1  the HCUA -- oh, healthcare unit administrator.  That is
2  the proper name title.  I get -- I -- I believe.
3  I would ask them what had happened after a certain
4  amount of times, say, one or two weeks.
5      Q    And what's your process for updating the
6  inmate's medical records after receiving a letter?
7      A    Yes, there is a -- a spreadsheet for inmate
8  complaints and letters that I would use to put comments.
9  And the person who made the -- the comments -- the
10 replies in the spreadsheet.
11      Q    The person who replied to the letter?
12      A    Yes.
13      Q    Okay.  Who at IDOC received letters addressed
14 to Dr. Steve Meeks?
15      A    I received them and Lisa Moss received them.
16      Q    Do you or Ms. Moss forward those letters onto
17 anyone else?
18      A    No, I did not.  I don't know if Ms. Moss did.
19      Q    And where do you store those letters,
20 other than the filing cabinet?
21      A    That's it.  That's where I would store them.
22      Q    And where do you log the letters, other than
23 the spreadsheet?
24      A    I think that's the only place.
25      Q    And you mentioned already how long you've been

Page 24

1  working at IDOC?
2      A    Correct.
3      Q    So did you work at IDOC in June 2019?
4      A    No.
5      Q    When did you start working at IDOC?
6      A    August 16, 2019.
7      Q    Okay.  Thank you.  So starting in August 16,
8  2019, you maintained the log?
9      A    Yes.
10      Q    Who maintained the log in June 2019?
11      A    I believe it was Lisa Moss.
12      Q    So did you and Lisa Moss overlap in your
13 employment at IDOC?
14      A    Yes.
15      Q    When did you overlap?
16      A    From August 16, 2019 until -- I believe it was
17 September 30, 2021.
18      Q    And that was her last day --
19      A    I believe it was, yes.
20      Q    -- or yours?  Okay.  So during the time that
21 you overlapped, who maintained the spreadsheet?
22      A    I maintained the spreadsheet.
23      Q    Did anyone else edit the spreadsheet?
24      A    I believe Lisa Moss initially maintained the
25 spreadsheet, and then I took it over, I believe, maybe

Page 25

1  after two weeks or a month.
2      Q    So you may have taken it over around September
3  2019?
4      A    Correct.  Correct.
5      Q    Okay.  And Lisa Moss -- was she Dr. Meeks'
6  administrative assistant?
7      A    Yes.  She was his executive secretary.
8      Q    Did you check the log yourself for this
9  deposition?
10      A    I did.
11      Q    Did you see this letter in the log?
12      A    No.
13      Q    Are letters ever missed in the log?
14      MS. BARNETT:  Objection.  Speculation.  You can
15 still answer.
16      THE WITNESS:  Okay.
17      A    I don't think so, no.
18 BY MS. MAKAR:
19      Q    Dr. Meeks testified that something could have
20 been missed if the administrative assistant was off for
21 the day.  Would you agree with that?
22      A    No.  If a letter had arrived, it would've
23 stayed with the receptionist, and then either the person
24 who was the executive secretary would've picked up the
25 letters the next day, or the letters would've been given

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 26

1  to the executive secretary. I'm not saying it's
2  impossible. I'm just saying it's not likely.
3      Q    Would any letters not be included because
4  someone thought they didn't merit attention?
5      A    No.
6      Q    Are there any other IDOC systems or processes
7  involved when IDOC receives a letter addressed to
8  Dr. Steve Meeks?
9      A    No.
10     Q    And just to be clear, that process of logging
11 the letters -- is that for all letters or just letters
12 addressing an inmate's medical issues?
13     A    That's for letters addressing inmate's medical
14 issues.
15     Q    And is the process the same for letters
16 containing an inmate's medical record?
17     A    I'm sorry. Please clarify.
18     Q    The process you just described -- is that the
19 same for letters that address an inmate's medical issues
20 but also contain an inmate's medical records?
21     A    I don't know.
22     Q    Was special attention given to letters that
23 contained medical records?
24     A    I don't know of any letters that contained
25 medical records.

Page 27

1      Q    Is the process the same for letters that
2  addressed an inmate's medical issues and threatened
3  litigation?
4      A    Yes.
5      Q    Are there any additional steps taken for a
6  letter that threatens litigation?
7      A    No.
8      Q    Okay. I am going to share my screen.
9  I have one exhibit.
10          MS. MAKAR: If we could please mark this
11     Exhibit 1.
12          (EXHIBIT 1 MARKED FOR IDENTIFICATION)
13 BY MS. MAKAR:
14     Q    This is the June 7, 2019 letter from
15 plaintiff's counsel. Do you recognize this letter?
16     A    I do.
17     Q    Who at IDOC received this letter from
18 plaintiff's counsel to Steve Meeks?
19     A    I did, and Tara Barnett did.
20     Q    Did anyone else?
21     A    I don't know.
22     Q    And who did -- anyone who received the
23 letter -- who did they forward it to?
24     A    I don't know.
25     Q    Where --

Page 28

1      A    I didn't forward it to anyone.
2      Q    Where did the recipients of the letter store
3  it?
4      A    I got this letter in preparation for the
5  deposition. I am thinking. I believe I stored it in
6  the file cabinet if I did print it out.
7      Q    Did you see this letter prior to preparing for
8  the deposition?
9      A    No. I mean, I saw it, but just prior.
10 I didn't see it otherwise.
11     Q    So did you log this letter prior to this
12 deposition?
13     A    No.
14     Q    Did anyone at IDOC log this letter?
15     A    Not that I know of.
16     Q    Could this letter have been missed in the log?
17     A    This letter? I did not find in the log.
18     Q    Could it have been missed when IDOC received
19 it?
20     A    I don't think so.
21     Q    Were there any other letters regarding
22 Mr. Hunter in the log?
23     A    No. No.
24     Q    Are the letters in the log organized by date,
25 or by inmate, or some other way?

Page 29

1      A    The letters in the log, as I understand it,
2  are -- let me think. I think generally by date, by
3  chronology.
4      Q    Okay. How are they organized in the file
5  cabinet?
6      A    They're organized by the first letter of the
7  IDOC -- of the -- of the inmate's IDOC number.
8      Q    Okay. I'm going to stop sharing my screen.
9  So did you see the medical records attached to this
10 letter prior to --
11     A    No.
12     Q    -- preparing for the deposition?
13     A    No.
14     Q    Did you know that there was threatened
15 litigation in Mr. Hunter's case prior to preparing for
16 this deposition?
17     A    Yes.
18     Q    When did you first discover that there was
19 threatened litigation in Mr. Hunter's case?
20     A    I believe it was maybe a month ago. I
21 received a notice that I had answered a question about
22 Mr. Hunter in the negative in terms of finding him in a
23 log. And I was told therefore they were going to make a
24 deposition on this.
25     Q    And prior to that, did you know that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 30

1   Mr. Hunter was seeking medical care for his rectal
2   prolapse?
3       A   No.
4       Q   When did you first discover that Mr. Hunter
5   was seeking medical care for the rectal prolapse?
6       A   I believe a few days ago when I got the letter
7   and the notice.  That is the notice --
8       Q   Was it about --
9       A   Yes, go ahead.
10      Q   I'm sorry.  No, go -- you can finish.  Sorry.
11      A   Thank you.  I believe it was about three days
12  ago when I received the notice and the letter from Tara
13  Barnett.
14      Q   Was there a process at IDOC to become informed
15  of an inmate's medical condition?
16      MS. BARNETT:  Objection.  Vague.
17      A   Yes.
18      Q   What was that process?
19      A   The process was either a letter to Dr. Steven
20  Bowman or a healthcare representative at IDOC.  Also,
21  the process was to the Department of Constituent
22  Services who would receive in a kind of -- I don't know
23  the exact term but it was in an -- an e-mail system or
24  an -- or an e-mail procedure where they would receive
25  complaints about the care of the individual.

Page 31

1       Q   Where who would receive complaints?
2       A   The Department of Constituents.
3       Q   Was there a process at IDOC to become informed
4   of an inmate's threatened litigation?
5       A   Only the process for inmate letters
6   complaining of medical error -- medical problems.
7       Q   And did you become informed of those inmate
8   medical conditions every time?
9       A   Yes.
10      Q   Did you always take action?
11      A   Yes.
12      Q   What action did you take other than what we
13  discussed --
14      A   I would -- I would e-mail the healthcare unit
15  administrator at the facility or someone such as a
16  medical director or a -- a -- a supervisory nurse at
17  that facility by e-mail that there was this complaint.
18      Q   And what follow-up would you do after that to
19  determine what happened next within this medical care?
20      A   If I received a reply back, then I would thank
21  the individual who sent it, and I would make sure that
22  Janette Candido and representatives from the Department
23  of Constituents were also informed by CC'ing them on the
24  thank you to the individual who provided the
25  information.

Page 32

1       Q   What did you do when you didn't receive a
2   reply?
3       A   I did not do anything.
4       MS. MAKAR:  Okay.  I am almost done.  So if we
5   could take a five-minute break, and I'll just review
6   my notes quickly off the record.
7       THE WITNESS:  Thank you.
8       MS. MAKAR:  We can return at 9:45 Central Time.
9       THE WITNESS:  Very good.  Thank you very much.
10      (OFF THE RECORD)
11      COURT REPORTER:  We are back on the record.
12      MS. MAKAR:  That is everything I have.  Thank
13  you, Mr. Potash.  If you remember any answers to
14  questions that you didn't say today, please let your
15  attorney know.  Thank you.
16      THE WITNESS:  Excuse me.  There is something
17  I've been thinking of that I would like to add if I
18  can.
19      MS. MAKAR:  Yeah.
20      THE WITNESS:  When you asked me if I spoke to
21  somebody before, I did speak to Dr. Bowman briefly
22  about the fact I was making a deposition on Monday.
23  He said, you're making a deposition on Monday?  And
24  I said, yes.  And he said, just tell the truth.  I
25  don't know if that's material, but I thought I would

Page 33

1   add that in just to be complete.
2       MS. MAKAR:  Thank you.  Yes, that does help.
3   I did ask what conversations you had prior to this.
4   Thank you.
5       THE WITNESS:  Certainly.
6       MS. BARNETT:  Abbey, do you have anything?
7       MS. FRITZ:  No, I don't have anything.
8       MS. BARNETT:  Okay.  I just have a couple of
9   questions for you.
10      CROSS EXAMINATION
11  BY MS. BARNETT:
12      Q   Do you have -- in your role, do you have any
13  involvement in providing direct medical treatment to
14  individuals in custody?
15      A   No.
16      Q   Okay.  And I just wanted to confirm something.
17  I think we talked about the spreadsheet that's
18  maintained that records letters received about inmate
19  complaints.  Does that spreadsheet include any kind of
20  responses that are done in response to those letters or
21  complaints?
22      A   Yes.
23      Q   Okay.  Okay.  And then when we talked about
24  some policies, you said you reviewed e-mails between you
25  and Dr. Bowman.  Do you recall that?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckiana22reporters.com
www.kentuckianareporters.com

1    A    Yes.

2    Q    Okay.  Do you know of any written IDOC

3  policies on maintaining these communications?

4    A    No.

5         MS. BARNETT:  Okay.  I don't have any other

6  questions.

7         THE WITNESS:  Thank you.

8         MS. BARNETT:  Everybody else good?

9         MS. MAKAR:  Yep.

10        MS. BARNETT:  Okay.

11        COURT REPORTER:  We're off the --

12        MS. BARNETT:  So, Ed, you can --

13        COURT REPORTER:  Sorry.  Go ahead.

14        MS. BARNETT:  Oh, sorry.  I didn't know if you

15  want to do signature on the record or not.

16        COURT REPORTER:  It's okay.  Yeah, we can do it

17  on the record.  That's fine.

18        MS. BARNETT:  Okay.  Ed, you can get a copy of

19  the transcript and you can review it.  You can only

20  make grammatical changes -- like if something's

21  spelled wrong or something like that.  You can't

22  change a yes to a no.  Or you can just say that we

23  trust our court reporter here, that she got

24  everything correct, and you can waive your

25  signature.  But that's totally up to you.

1  THE WITNESS:  Thank you.

2  MS. BARNETT:  What would you like to do?

3  THE WITNESS:  I would like to receive a copy.

4  MS. BARNETT:  Okay.  So we will --

5  COURT REPORTER:  No problem.

6  MS. BARNETT:  -- sign.

7  COURT REPORTER:  Okay.  Off the record.

8    (DEPOSITION CONCLUDED AT 9:50 A.M. (CT))

1              CERTIFICATE OF REPORTER

2              STATE OF ILLINOIS

3

4  I do hereby certify that the witness in the foregoing

5  transcript was taken on the date, and at the time and

6  place set out on the Stipulation page hereof by me after

7  first being duly sworn to testify the truth, the whole

8  truth, and nothing but the truth; and that the said

9  matter was recorded by me digitally and then reduced to

10  typewritten form under my direction, and constitutes a

11  true record of the transcript as taken, all to the best

12  of my skills and ability. I certify that I am not a

13  relative or employee of either counsel, and that I am in

14  no way interested financially, directly or indirectly,

15  in this action.

16

17

18

19

20

21

22  MAGGIE PATTERSON,

23  COURT REPORTER/NOTARY

24  COMMISSION EXPIRES ON: 10/12/2023

25  SUBMITTED ON: 03/10/2023

MAGGIE PATTERSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Oct 12, 2023

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

Exhibit 1_
Potash 27:11, 12

_____

**1**

1 27:11,12

10 13:7,12,23

11 14:6,10

16 10:22 24:6,7, 16

_____

**2**

2019 10:22 11:4 12:2 13:9 14:7 17:24 18:1 20:10 22:11 24:3,6,8,10,16 25:3 27:14

2021 24:17

_____

**3**

30 24:17

30(b)(6) 11:1 18:22 19:11

311 6:16

_____

**5**

555 6:8 10:10

_____

**7**

7 11:4 12:1 13:8 14:7 27:14

_____

**9**

9 11:4,16 12:1, 6,13 13:18

9:45 32:8

9:50 35:8

_____

**A**

A.M. 35:8

Abbey 6:21 33:6

Aberdeen 6:16

ability 8:17,23 9:5

accurate 8:17, 23 9:5

action 31:10, 12

add 32:17 33:1

additional 27:5

address 26:19

addressed 23:13 26:7 27:2

addressing 26:12,13

administrative 25:6,20

administrator 20:9 23:1 31:15

Affairs 16:6

affect 8:16,20, 22 9:1,4

affirm 7:10

agree 7:5 25:21

ahead 30:9 34:13

amount 23:4

and/or 22:13

answers 11:3 12:5 14:10 32:13

Antonio 6:14 17:13

appearance 6:5

arrived 25:22

assistant 25:6, 20

assume 8:6

attached 29:9

attending 6:5, 7,12,15,19,22

attention 26:4, 22

attorney 21:21 32:15

attorneys 9:9 15:16 16:18,21, 24

August 10:22 24:6,7,16

avoid 8:3

aware 20:18 21:8,20

_____

**B**

back 31:20 32:11

Barnett 6:18 9:14 11:14,18, 20 18:5,13,21, 24 19:10,22,24 20:19,22,25 25:14 27:19 30:13,16 33:6, 8,11 34:5,8,10, 12,14,18 35:2, 4,6

basic 13:2

begin 7:15

behalf 6:13,18, 21

bit 12:21

Bowman 12:11 14:4,15,17,18 15:25 17:11 18:1 20:15 22:14 30:20 32:21 33:25

break 8:12,14,

16 32:5

briefly 32:21

_____

**C**

cabinet 14:11, 21,24 15:2,12 22:18 23:20 28:6 29:5

call 21:3,12

calls 20:1

Candido 22:3 31:22

care 30:1,5,25 31:19

case 9:17,22, 24 10:3 29:15, 19

CC'ING 31:23

Central 32:8

change 13:3 34:22

check 25:8

checking 22:23

Chicago 6:8, 17 10:10

chronology 29:3

civil 7:20

clarify 26:17

clear 12:20 26:10

clearer 13:2

comments 23:8,9

communications 34:3

complain 15:1

complaining 18:11 31:6

complaint 10:1 11:11,13

14:12 15:4,10, 11 31:17

complaints 12:15 13:14 14:14,25 15:20, 25 16:10,11 21:9 23:8 30:25 31:1 33:19,21

complete 33:1

concern 15:15 16:24

concerns 16:11

CONCLUDED 35:8

condition 30:15

conditions 8:16,20 31:8

conduct 9:17

confirm 33:16

considered 22:20

Constituency 22:6

constituent 16:2,4,5 21:4 30:21

constituents 16:8,11,13,14 31:2,23

contact 22:25

contained 26:23,24

contents 9:7

conversation 16:1 21:3,16

conversations 17:21 21:14 33:3

coordinated 21:24

coordinates 21:25



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

coordinator 20:9 22:4

copies 12:15, 17,18,22

copy 11:7 34:18 35:3

correct 19:1 21:24 24:2 25:4 34:24

Corrections 10:10,13 14:19

counsel 11:5 12:2 13:9 14:7 27:15,18

couple 33:8

court 6:3,24 7:4,8,14 32:11 34:11,13,16,23 35:5,7

cover 10:14,15

CROSS 33:10

CT 35:8

custody 16:12 33:14

## D

data 13:4

date 28:24 29:2

day 24:18 25:21,25

days 30:6,11

defendant 7:20 9:25

defendants 6:19,22 9:22 10:4

department 10:9,13 14:19 16:5 21:4 22:6 30:21 31:2,22

deposed 7:22

deposition 9:8,16 15:17 17:22 25:9

28:5,8,12 29:12,16,24 32:22,23 35:8

determine 15:3 18:3,9 31:19

determines 18:14,18

differences 12:22

direct 7:17 21:16 33:13

directives 15:14,19 16:20, 23 17:2,9

director 10:13 14:18 17:4 31:16

discover 29:18 30:4

discussed 10:25 31:13

discussions 15:24

distributing 13:8

division 16:2,4

Doctor 20:12 22:2

document 9:24 11:9

documents 9:20

## E

E- 12:16

e-mail 12:8 15:24 21:23 22:1,7,13,22 30:23,24 31:14, 17

e-mails 12:7,9 13:24 14:1,14 16:1 33:24

Ed 34:12,18

edit 24:23

Edward 6:7 7:2 11:15

employed 10:8,9

employment 24:13

end 8:13

error 31:6

exact 30:23

EXAMINATIO N 7:17 33:10

Excuse 9:23 32:16

executive 10:12 25:7,24 26:1

exhibit 27:9, 11,12

expressions 8:3

## F

facilities 10:14,15,16 22:5

facility 15:8 20:5 22:1,4,25 31:15,17

fact 7:5 32:22

familiar 7:24

familiarity 10:23

family 16:11,14

file 14:11,21,24 15:12 22:17 28:6 29:4

filing 15:2 22:17 23:20

find 28:17

finding 29:22

fine 11:12 34:17

finish 30:10

five-minute 32:5

follow-up 14:6 31:18

form 18:5 20:20

forward 23:16 27:23 28:1

friends 16:10, 15

Fritz 6:21 19:13,25 33:7

full 6:25

## G

generally 29:2

give 7:11 22:9

good 12:7 21:22 32:9 34:8

grammatical 34:20

## H

Hagy 6:10,12 7:6

half 20:10

hand 7:9

handled 16:1

happened 23:3 31:19

HCU 21:23

HCUA 20:9 21:25 22:2 23:1

head 8:2

health 20:7,8,9 21:23

healthcare 23:1 30:20 31:14

hear 20:3

hold 22:2

Hunter 6:14 17:13,14,22 28:22 29:22 30:1,4

Hunter's 29:15,19

## I

IDENTIFICATI ON 27:12

IDOC 6:19 10:6,21,22,24 11:4 12:1,3,4 13:10,11 14:9 16:3,4 17:18 18:3,8,14,15, 18,19 19:1,3,5 20:18 21:7,17, 20 23:13 24:1, 3,5,13 26:6,7 27:17 28:14,18 29:7 30:14,20 31:3 34:2

IDOC's 21:13

II 10:12

Illinois 6:9,13, 20 10:9,10,13, 16 14:19

important 7:25

impossible 26:2

Inaudible 6:10

include 33:19

included 26:3

individual 15:6 21:25 30:25 31:21,24

individuals 16:12 33:14

information 12:3 13:10 14:8 22:8 31:25

informed 30:14 31:3,7,23



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

**initially** 13:1
24:24

**inmate** 12:14
13:14 14:13
18:10 19:8,17,
21 20:18 21:8,
11,14,20 22:24
23:7 28:25
31:5,7 33:18

**inmate's** 15:4
18:4,9,15,18
21:21 23:6
26:12,13,16,19,
20 27:2 29:7
30:15 31:4

**inmates** 14:12,
25 16:9,14,15,
16 20:11 21:8

**inmates'**
15:15,20 16:18,
21,24

**instructed**
8:11

**interrupted**
13:20

**involved** 12:4
13:11 14:9 26:7

**involvement**
17:12 33:13

**issue** 18:10
20:18 21:8,20

**issues** 15:16,
21 16:25 26:12,
14,19 27:2

---

**J**

**Janette** 22:3
31:22

**join** 19:13,25

**judge** 8:8

**jump** 11:15

**June** 11:4 12:1
13:8 14:7 22:11
24:3,10 27:14

---

**K**

**kind** 30:22
33:19

---

**L**

**larger** 13:2

**lawyer** 8:8,11

**learn** 10:25

**legal** 16:15

**letter** 11:5 12:2
13:9 14:7 15:3,
5,9,11 21:3,12,
21,22,23 22:17,
19,24 23:6,11
25:11,22 26:7
27:6,14,15,17,
23 28:2,4,7,11,
14,16,17 29:6,
10 30:6,12,19

**letters** 12:15
13:14 14:12,14,
20,23,25 15:2,
15 16:24 22:15
23:8,13,16,19,
22 25:13,25
26:3,11,13,15,
19,22,24 27:1
28:21,24 29:1
31:5 33:18,20

**Lindsay** 6:12

**Lisa** 11:2
12:10,16 14:16
23:15 24:11,12,
24 25:5

**litigation** 27:3,
6 29:15,19 31:4

**location** 6:5

**lodge** 8:10

**Loevy** 6:16

**log** 23:22 24:8,
10 25:8,11,13
28:11,14,16,17,
22,24 29:1,23

**logging** 26:10

---

**long** 10:21
23:25

**looked** 11:10
12:17,18 13:13,
16,17,22 14:11

**loud** 8:1

**Louis** 6:23

---

**M**

**made** 9:23
12:18 13:2
20:18 21:7,20
23:9

**mailed** 12:16

**maintained**
24:8,10,21,22,
24 33:18

**maintaining**
13:8 34:3

**Makar** 6:11,15
7:7,16,18
11:19,22 18:7
19:14 20:2
21:5,6 25:18
27:10,13 32:4,
8,12,19 33:2
34:9

**make** 8:4 22:1
29:23 31:21
34:20

**making** 32:22,
23

**Maria** 6:15

**mark** 27:10

**MARKED**
27:12

**material** 32:25

**matter** 9:19
10:4

**matters** 22:1,4,
5

**medical** 10:12
14:18 15:7,16,
21 16:18,21,25
17:3,4,9,19
18:4,9,10,15,19

---

19:1,3,6,18
20:4,11,18
21:8,20 22:1
23:6 26:12,13,
16,19,20,23,25
27:2 29:9 30:1,
5,15 31:6,8,16,
19 33:13

**medication**
15:1,7

**medications**
8:22 9:1

**Meeks** 11:5
12:2,10,11
14:5,15 17:24
20:10,13 22:13
23:14 25:19
26:8 27:18

**Meeks'** 25:5

**meet** 17:13

**meeting** 6:8
9:8

**members** 22:6

**memory** 8:20
9:2,5

**mentioned**
23:25

**merit** 26:4

**missed** 25:13,
20 28:16,18

**Missouri** 6:23

**mistake** 9:23

**mode** 21:2,4

**moment** 11:25

**Monday** 32:22,
23

**Monroe** 6:8
10:10

**month** 25:1
29:20

**Moss** 11:2
12:10,16 14:1,
16 23:15,16,18
24:11,12,24
25:5

---

**moving** 10:23

**Murray** 7:2

**muted** 6:11

---

**N**

**negative** 29:22

**nod** 8:2

**North** 6:16

**notes** 32:6

**notice** 11:1
18:22 19:12
29:21 30:7,12

**number** 11:16
29:7

**nurse** 31:16

---

**O**

**Oak** 6:13

**object** 8:9
18:5,21 19:10

**objection** 8:10
18:13 19:22
20:19 25:14
30:16

**objections** 8:8

**observations**
21:13

**office** 6:16
22:4

**OHS** 21:15

**organized**
28:24 29:4,6

**overlap** 24:12,
15

**overlapped**
24:21

**overlooked**
12:18

---

**P**

**Park** 6:13



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

parties 6:4 7:4

pending 8:11, 15

Perfect 6:24

period 12:8 13:24

permission 20:4

person 23:9,11 25:23

personal 17:12

personnel 20:5

phone 21:12

phonetic 7:2

picked 25:24

Pinckneyville 17:4

place 23:24

plaintiff 6:13 7:19 9:24 14:8

plaintiff's 11:5 12:2 13:9 14:7 27:15,18

Plaintiffs 12:3 13:9

policies 10:24, 25 15:14,19 16:17,20,23 17:2,6 33:24 34:3

policy 17:8

position 17:19

Potash 6:7,25 7:3,5 18:6 32:13

preparation 9:15 13:23 15:16 28:4

prepare 9:8 11:3 12:5,12 13:11 14:10

preparing

17:22 28:7 29:12,15

present 6:4

print 11:7,9 28:6

prior 17:22 18:4,9,15,19 28:7,9,11 29:10,15,25 33:3

prison 10:15

problem 15:6 35:5

problems 31:6

procedure 9:19 30:24

procedures 10:25

proceeding 9:18

PROCEEDINGS 6:1

process 13:7 20:17 21:19 22:10,11,12,15, 19,21,23 23:5 26:10,15,18 27:1 30:14,18, 19,21 31:3,5

processes 19:5 26:6

prolapse 30:2, 5

proper 23:2

provide 8:17, 23 9:5

provided 31:24

providing 33:13

purpose 18:7, 8

put 14:24 23:8

**Q**

question 8:5,6, 7,11,15 12:4 19:16 20:24 29:21

questioning 8:14

questions 8:4, 9 13:12 32:14 33:9 34:6

quickly 32:6

**R**

raise 7:9

read 11:25 12:12,14 13:7 14:6 15:5 21:22

recall 33:25

receive 30:22, 24 31:1 32:1 35:3

received 11:4 12:1 21:23 22:8 23:13,15 27:17, 22 28:18 29:21 30:12 31:20 33:18

receives 26:7

receiving 13:8 15:15,20 16:18, 21,24 22:24 23:6

recent 12:19

receptionist 25:23

recipients 28:2

recognize 27:15

recollections 9:19

record 6:4 7:1 8:9 26:16 32:6, 10,11 34:15,17

35:7

records 16:18, 21 17:3,9 18:4, 9,15,16,19,20 19:1,3,6,9,18, 20 20:11 23:6 26:20,23,25 29:9 33:18

rectal 30:1,5

related 11:3 12:5 13:12 15:4,15,16,20 16:17,20,23,25 17:3,9

relating 12:7 13:24 15:6

remember 17:21 32:13

rephrase 8:6

replied 23:11

replies 23:10

reply 31:20 32:2

reporter 6:3,24 7:4,8,14 32:11 34:11,13,16,23 35:5,7

representative 30:20

representatives 16:15 31:22

required 8:10

reread 11:21

response 14:7 21:2 33:20

responses 33:20

responsible 10:19 19:8,17

return 32:8

review 9:15,20, 23 15:14,19 16:17 17:2 32:5 34:19

reviewed 9:17

33:24

role 33:12

rule 8:8

rules 7:24 9:17, 18

**S**

scope 18:22 19:11,24 20:19

screen 27:8 29:8

script 13:1

secretary 10:12 25:7,24 26:1

section 12:8

seek 12:3 13:9

seeking 30:1,5

seeks 14:8

send 22:7

sense 8:4

September 24:17 25:2

Services 30:22

shake 8:2

share 27:8

sharing 29:8

sign 35:6

signature 34:15,25

simply 22:22

sir 7:9

situation 22:7

slightly 22:12

solemnly 7:10

something's 34:20

sort 17:6

Southern 6:19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

speak 16:8,10 32:21

special 22:15, 19 26:22

speculation 20:1 25:14

spelled 34:21

spoke 32:20

spreadsheet 12:14,23 13:17 23:7,10,23 24:21,22,23,25 33:17,19

spreadsheets 13:13 14:13

St 6:23

start 21:7 24:5

starting 24:7

state 6:4,25 10:16

stayed 25:23

steps 27:5

Steve 12:2,10, 11 14:5,15,17 22:13,14 23:14 26:8 27:18

Steven 11:5 12:11 14:4,15, 18 17:11 22:14 30:19

stop 29:8

store 23:19,21 28:2

stored 28:5

structure 12:19

style 12:19 13:1,3

suit 7:20

supervise 10:17,18 17:16

supervisory 31:16

swear 7:10

system 12:4 13:11 14:9 30:23

systems 26:6

_____

**T**

talk 9:22 10:3, 6,24 17:18

talked 33:17,23

talking 21:5

Tara 6:18 9:14 20:23 27:19 30:12

team 19:1,3

telephone 21:3

telling 9:7

term 30:23

terms 29:22

testified 25:19

testimony 7:11 8:17,23 9:5

thing 8:13

thinking 28:5 32:17

thought 26:4 32:25

threatened 27:2 29:14,19 31:4

threatens 27:6

time 13:25 24:20 31:8 32:8

times 9:11 23:4

title 23:2

today 8:18,24 9:2 32:14

today's 9:8

told 29:23

topic 11:4,25 12:6,13 13:7, 12,18,23 14:6, 10

topics 13:5

totally 34:25

training 10:19

transcript 34:19

transferred 15:8

treatment 15:1,7,9 33:13

trust 34:23

truth 7:11,12 32:24

truthful 8:17, 23

turning 17:12

type 14:23

_____

**U**

uh-huh 8:3

uh-uh 8:3

understand 8:5 29:1

understood 8:7

unit 20:8,9 23:1 31:14

updating 23:5

urgent 22:20, 22

_____

**V**

vague 20:20 30:16

verbally 8:1

virtually 6:15, 19,22

voice 8:1

_____

**W**

wait 8:13

waive 34:24

wanted 33:16

weeks 23:4 25:1

West 6:8 10:10

Wexford 6:22 10:6 17:3,10 19:6,9,18,21

work 17:24 18:1 24:3

working 24:1,5

would've 25:22,24,25

written 34:2

wrong 34:21

_____

**Z**

Zoom 6:13



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com