IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antonio Hunter,<br><br>                Plaintiff,<br><br>v.<br><br>Illinois Department of Corrections, et al.,<br><br>                Defendants. | Case No. 21-cv-271-NJR |

**PLAINTIFF'S MOTION IN LIMINE
FOR AN ORDER CONFIRMING AVAILABLE ADA AND RA DAMAGES**

Pursuant to the Court's March 21, 2024 Order (ECF 134), Plaintiff Antonio Hunter, through his attorneys, Loevy & Loevy, respectfully moves the Court *in limine* to issue an order confirming that Mr. Hunter may seek damages under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") for his injuries sustained from the unhygienic means he was forced to use in order to defecate—namely, being forced to manipulate his rectum with his bare hands, and the soiling of his hands, his person, and his cell.

**FACTS**

During the time relevant to this case, Plaintiff Antonio Hunter had rectal prolapse. In a person with rectal prolapse, the muscles surrounding the anus weaken to the point that the rectum (the last portion of the large intestine) protrudes out of the anus. Mr. Hunter's doctors determined that Mr. Hunter required surgery to correct his rectal prolapse.

Mr. Hunter's rectal prolapse made defecation a disgusting ordeal. The protrusion of Mr. Hunter's rectum blocked the discharge of feces through defecation. To defecate, Mr. Hunter had to reach down and use his fingers to push his rectum back into his anus, and then further manipulate

his rectum with his fingers until it moved into such a position that his bowels would release. When that happened, feces would spray onto Mr. Hunter's fingers, his body, and his cell.

The procedure was so unsanitary that in 2018, IDOC doctors ordered that Mr. Hunter be put in a cell by himself to avoid exposing other prisoners to the spray of feces. But nothing was done to help ensure that Mr. Hunter could defecate in a hygienic manner. Mr. Hunter was not given gloves, sanitary wipes, or cleaning supplies. And most critically, Mr. Hunter was never given the surgery that was available to repair the prolapse, which would have resolved Mr. Hunter's defecation problem. As a result, Mr. Hunter was unable to defecate hygienically for years, and instead had to perform the procedure described above, often multiple times per day.

On September 28, 2023, the Court denied in relevant part Defendants' motions for summary judgment, allowing Mr. Hunter's ADA, RA, and Eighth Amendment claims to proceed to trial. ECF 118 at 24–25. Following the Court's decision, the Parties participated in a mandatory settlement conference. Plaintiff counsel's asserted that the unhygienic manner in which Mr. Hunter is forced to defecate is an injury cognizable under the ADA and RA, allowing him to ask the jury to award damages to compensate for those injuries if they find in his favor. IDOC's counsel disagreed. To facilitate settlement, the parties agreed to seek an early *in limine* adjudication of the question, and the Court has permitted them to do so. ECF 134. This motion *in limine* follows.

## ARGUMENT

Title II of the ADA, which applies to prisons, *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by

2

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Otherwise, the two statutes are "materially identical." *A.H. by Holzmuller v. Illinois High School Ass'n*, 881 F.3d 587, 591 (7th Cir. 2018).

To prevail under the ADA and RA, Mr. Hunter must prove that the IDOC denied him the benefits of IDOC's services, programs, or activities by reason of or because of his disability. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (identifying separately the elements for an ADA Title II and RA claims). A refusal to reasonably accommodate a disability is "tantamount to denying access." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

One of the "services" IDOC provides is hygienic toileting, meaning that IDOC provides all prisoners with a means to defecate in a hygienic manner. The Court of Appeals has described hygienic toileting as a "service" under the ADA in *Shaw v. Kemper*, 52 F.4th 331 (7th Cir. 2022), observing: "We have no difficulty concluding that a handicapped-accessible toilet for disabled prisoners amounts to a service, the denial of which could establish a claim under either statute." 52 F.4th at 334. Notably, *Shaw* grounded this "service" in the IDOC's general duty to ensure hygiene, relying on *United States v. Georgia*, 546 U.S. 151 (2006), which *Shaw* cited as "observing that the refusal to accommodate disability-related needs for 'hygiene' could constitute the denial of a service." *Shaw*, 52 F.4th at 334 (quoting *Georgia*, 546 U.S. at 157); *cf. Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009) (holding that "showering, toileting, and lavatory use" are programs and/or services under the ADA).

This basic service is normally provided simply by giving prisoners access to toilets and toilet paper. Sometimes, however, a physical limitation prevents a person from defecating hygienically using only these two devices. Under the ADA, that is a disability: a bodily limitation

3

that prevents or inhibits a person from accessing the benefits of a service—here, hygienic toileting via the means that the service is normally provided to others. A familiar example of such a disability is a person who cannot walk or use their legs and is wheelchair bound. That person cannot defecate hygienically unless accommodations are made to allow them to access a toilet, and courts have consistently held that accommodations of that disability must be made to enable that person to access that toileting. *See Dunmore v. Shicker*, No. 16-CV-171-MAB, 2020 WL 65057, at *15 (S.D. Ill. Jan. 7, 2020) (holding that reasonable jury could easily conclude disabled prisoners did not have equivalent access to toilet while on the yard where they had to get a guard to escort them back into cell house but non-disabled prisoners could use a porta potty); *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (holding prisoner did not have equivalent access to the jail's toilets and showers when he was housed in non-ADA-compliant cell but had access to around-the-clock nursing care because "the availability of staff assistance upon request does not constitute equivalent access" under Title II); *Roberts v. Dart*, No. 16-CV-5560, 2018 WL 1184735, at *4 (N.D. Ill. Mar. 7, 2018) (holding prisoners did not have equivalent access to the toilets at the jail when he was housed in non-ADA-compliant cell but could ask officers to let him out of his cell to use the toilet in the dayroom); *Tyler v. City of Manhattan*, 857 F. Supp. 800, 819 (D. Kan. 1994) (finding arrangement where disabled individual was required to request a key to use the only accessible bathroom did not comport with Title II).

Another example might be paraplegia that, aside from limiting access to a toilet, creates incontinence that prevents a person from defecating hygienically and requires access to cleaning supplies and services in order to ensure hygienic defecation. *See, e.g.*, *Phillips v. Dixon*, No. 3:22-CV-997-BJD-LLL, 2023 WL 5403436, at *4 (M.D. Fla. Aug. 22, 2023) (holding prisoner whose paralysis resulted in bladder and bowel incontinence stated a claim under the ADA for denial of

4

hygienic toileting where the Florida Department of Corrections failed to provide him with "five or more diapers per day (as needed), barrier cream, antiseptic soap, medical wipes, and replenish the same as they run out, and bathroom and shower passes" to permit the prisoner to perform toileting in a hygienic manner).

Yet another example might be a shoulder injury limiting a person's range of motion, and preventing them from cleaning themselves with toilet paper after defecation. Such a prisoner would not have limitations getting to the toilet, but because of their limited range of motion, they would not be able to take advantage of toilet paper to clean themselves afterwards, and without accommodation they would be deprived of hygienic defecation.

Mr. Hunter's physical limitation is analogous to these examples: Mr. Hunter is unable to benefit from the means of hygienic defecation offered by the IDOC—normally provided via toilets and toilet paper—because the muscles of his anus have weakened and deteriorated. This physical limitation prevents him from holding in both his lower intestine and controlling the time and place at which he must defecate. This physical limitation is different in form, but the same in kind, as more familiar physical limitations described above, because it has the same result: it prevents him from taking advantage of the service of hygienic defecation that the IDOC provides to most inmates by offering toilets and toilet paper.

In the examples outlined above, prisoners required accommodations to benefit from the IDOC's program of providing a hygienic means of defecation. In order to receive the benefits of the IDOC's service of providing a hygienic means to defecate, the prisoner in a wheelchair might require a lowered toilet with handrails that would allow him or her to move from the wheelchair to the toilet and sit on it. The paralyzed and thus incontinent prisoner in *Phillips* required diapers and more frequent shower passes. The prisoner with a limited range of motion due to a shoulder

5

injury might require a bidet to enable him to clean his anus after defecation—or shoulder surgery to regain a full range of motion that would permit him to clean his anus using toilet paper.

Mr. Hunter's disability required an accommodation to enable him to access the benefit of hygienic defecation as well. In Mr. Hunter's case, the obvious accommodation was to provide Mr. Hunter with the prolapse surgery that had been recommended for him, which would allow him to regain anal tone and allow him to control his bowel movements. Failing that, another (at least partial) accommodation might have been to provide Mr. Hunter with gloves and a variety of sanitary implements to allow him to defecate without inserting his bare hands into his anus, causing contamination, risk of infection, humiliation, and spraying feces on his hands and around his cell. But the IDOC provided no accommodation that could allow Mr. Hunter to enjoy the benefits of hygienic toileting services.

As a result, Mr. Hunter was denied equal access to the prison's provision of hygienic toileting because of his rectal prolapse. Other non-disabled prisoners enjoyed hygienic and painless access to the toilet in their cell. Because of his disability and IDOC's refusal to provide an accommodation, Mr. Hunter could not access the toilet without inserting his bare hands into his anus. This caused him serious pain, humiliation, and risk of infection, as well as the soiling of his person and cell. That unequal access to toileting is a violation of the ADA, for which Mr. Hunter may be compensated if he proves that claim to a factfinder. *See Jaros v. Illinois Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012) (holding that disabled prisoners must have the same level of access to services as other prisoners); *Golden v. Illinois Dep't of Corr.*, No. 12-CV-7743, 2016 WL 5373056, at *3–4 (N.D. Ill. Sept. 26, 2016) (holding that a prison violates the ADA when it provides a prisoner with accommodations that leave them in so much pain that the pain prevents

them from accessing services at the same level as other prisoners).[1] Mr. Hunter's resulting physical, mental, and emotional injuries are cognizable under the ADA and RA. *See* Seventh Circuit Pattern Jury Instructions 7.27 (Compensatory Damages in Prisoner Cases).

In sum, IDOC refused to provide gloves, wipes, or a surgical consult to accommodate Mr. Hunter's rectal prolapse. As a result, Mr. Hunter was forced to use his bare hands to defecate, causing pain, humiliation, risk of infection, contamination of his cell, and impairment of his ability to relieve himself. He is entitled to damages to compensate for those injuries.

## CONCLUSION

For the above reasons, Mr. Hunter respectfully moves for an order establishing that Mr. Hunter may seek damages for the injuries resulting from defecating with his bare hands.

Dated: April 12, 2024                                       Respectfully Submitted,

/s/ Maria Makar
*One of Plaintiff's Attorneys*

Arthur Loevy
Stephen H. Weil
Maria Makar
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
makar@loevy.com

*Attorneys for Plaintiff*

---

[1] The failure to provide Mr. Hunter with prolapse surgery also sounds in the Eighth Amendment's prohibition against deliberate indifference to serious medical need. This does not affect the ADA analysis, because the same act or omission can violate both the Eighth Amendment and Title II of the ADA simultaneously. *See Georgia*, 546 U.S. at 157 (endorsing argument that the "same conduct that violated the Eighth Amendment also violated Title II of the ADA").