## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTONIO HUNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-271-NJR |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ROBERT JEFFREYS, WEXFORD HEALTH SOURCES, INC., STEVE MEEKS and STEPHEN RITZ, | ) ) ) ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' MOTIONS *IN LIMINE*

NOW COME Defendants, THE ILLINOIS DEPARTMENT OF CORRECTIONS and STEVE MEEKS, by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and hereby file their Motions *in Limine*, stating as follows:

### Introduction

Plaintiff, Antonio Hunter, filed this action, through counsel, pursuant to 42 U.S.C. §1983, regarding a rectal prolapse. [d/e 1]. Plaintiff's claims are as follows:

**Count 1:** Eighth Amendment Deliberate Indifference against Dr. Ritz and Dr. Meeks;

**Count 2:** Violation of the ADA against IDOC and Wexford;

**Count 3:** Violation of the Rehabilitation Act by IDOC.

[d/e 118].

Defendants anticipate Plaintiff will attempt to introduce inadmissible evidence at trial and hereby file the following motions *in limine* in an effort to facilitate an orderly process at trial.

**I. PLAINTIFF AND HIS WITNESSES SHOULD BE BARRED FROM TESTIFYING AT TRIAL REGARDING THE CAUSATION OF ANY MEDICAL OR MENTAL HEALTH CONDITION.**

Defendants anticipate that Plaintiff may testify or attempt to elicit inadmissible testimony

as to the causation of any alleged medical or mental health conditions. Specifically, Defendants anticipate Plaintiff will attempt to testify that 1) the actions of Defendants caused Plaintiff's condition to deteriorate, 2) how a surgery would have helped Plaintiff's condition; and/or 3) that Plaintiff medically required surgery at a specific point in time.

Plaintiff is not a physician or psychiatrist and, therefore, any uninformed opinions or lay accounts proffered by him regarding the causation of any medical conditions should be barred. *See* Fed. R. Evid. 701. Expert testimony is necessary to explain the complex nature of any relationship between Plaintiff's injuries, the extent of the injuries, and any causation of long-term medical or mental health conditions. Under Federal law, a non-expert is not permitted to give expert testimony. Fed. R. Evid. 701. A person lacking any medical training is incompetent to testify to the causal relationship between an event and a subsequent medical condition. *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001). Without medical knowledge, skill, experience, training, and/or education, Plaintiff is not equipped to render conclusions or opinions about the cause of any medical conditions. Defendants agree Plaintiff can testify to his own experiences as a layperson but should not be able to testify regarding any long-term effects the alleged action or inaction of Defendants caused him.

Plaintiff has been permitted by the Court to disclose three non-retained experts out of time, namely: Defendant Dr. Meeks, Christine Brown and Glen Babich. (Doc. 124). However, Plaintiff's prior request to disclose a retained expert out of time was denied. (Doc. 118). In his Rule 26(a)(3) disclosures, Plaintiff disclosed a new medical provider, Dr. Poola, who performed rectal prolapse surgery on Plaintiff in May 2024. [d/e 146]. Defendants have objected to this witness in their Objections and Responses to Plaintiff's Rule 26(a)(3) Disclosures (Doc. 151) and on the record at the Final Pretrial Conference. To the extent that Plaintiff intends to call Dr. Poola as an expert witness, Defendants object to this witness as Dr. Poola was not previously disclosed and has not provided any report required by Federal Rule of Civil Procedure 26(a)(2). To the extent Plaintiff

seeks to introduce expert testimony or causation testimony through Dr. Poola, such testimony should be barred because no expert opinions were provided or timely disclosed.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from eliciting any testimony from any non-expert witness regarding the causation of any mental health or medical conditions.

## II. PLAINTIFF SHOULD BE BARRED FROM OFFERING THE INADMISSIBLE HEARSAY STATEMENTS OF ANY MEDICAL OR MENTAL HEALTH PROFESSIONALS.

Plaintiff should be barred from offering testimony at trial as to the statements of any treating medical professional. While Plaintiff's out-of-court statements *to* medical professionals for the purposes of treatment are admissible, the out-of-court statements made *by a medical professional* to the Plaintiff, not contained in admissible medical records, and offered by the Plaintiff are inadmissible hearsay. *See* Fed. R. Evid. 801, 802. No exception to the hearsay rules permits such statements to be used as evidence. *See* Fed. R. Evid. 803, 804. For example, Plaintiff should be barred from testifying that any medical professional told him 1) he needed surgery or a surgical intervention to repair a rectal prolapse, or 2) the only way to treat his rectal prolapse was surgery.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from suggesting, referencing, or eliciting any testimony regarding statements made by out-of-court medical professionals.

## III. PLAINTIFF SHOULD BE BARRED FROM OFFERING TESTIMONY OR OTHERWISE SUGGESTING THAT THE STATE OF ILLINOIS WILL INDEMNIFY DEFENDANTS.

Defendants are represented by the Attorney General pursuant to the State Employee Indemnification Act. 5 ILCS 350/2. Defendants may be indemnified by the State of Illinois for any damages awarded and court costs and attorney fees assessed as part of any final and unreversed judgment. 5 ILCS 350/2(d). The fact Defendants may be indemnified is inadmissible and the jury

should not be permitted to hear that they may be indemnified by the State. *Lawson v. Trowbridge*, 153 F. 3d 368, 379 (7th Cir. 1998) (*citing Larex v. Holcomb*, 16 F. 3d 1513, 1518 (9th Cir. 1994) ("It has long been the rule in our courts that evidence of insurance or other indemnification is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction"); *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967) ("Unless the fact that the plaintiff is insured or otherwise indemnified is a material issue in the case, or unless the prejudicial effect has been cured by an admonition or instruction to the jury to disregard it, it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal")).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from suggesting, referencing, or eliciting any testimony regarding statutory indemnification by the State.

### IV. PLAINTIFF AND HIS WITNESSES SHOULD BE BARRED FROM TESTIFYING AT TRIAL REGARDING WHETHER DEFENDANTS FOLLOWED ILLINOIS DEPARTMENT OF CORRECTIONS POLICIES AND PROCEDURES.

Defendants anticipate Plaintiff may testify or attempt to elicit testimony regarding policies and procedures of the Illinois Department of Corrections and whether Defendants followed those policies and procedures. The issue in this case is whether Defendants violated Plaintiff's Eighth Amendment rights and rights under the ADA and RA. Violation of a policy does not make it more or less likely Defendants' conduct violated Plaintiff's rights. *See*, *e.g.*, *Thompson v. City of Chicago*, 472 F.3d 44, 454 (7th Cir. 2006) (any deviation from internal policies "is completely immaterial as to the question of whether a violation of the federal constitutional has been established"). Introduction of the policies and procedures of the Department of Corrections will only serve to confuse the issues and/or mislead the jury. Fed. R. Evid. 403.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this

Honorable Court enter an order precluding Plaintiff from eliciting any testimony from any non-expert witness regarding whether Defendants followed Illinois Department of Corrections policies and procedures.

### V. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY OF OTHER LAWSUITS INVOLVING DEFENDANT MEEKS OR THE ILLINOIS DEPARTMENT OF CORRECTIONS.

Defendants request the Court bar reference to or inquiries about other lawsuits involving Defendants. Even if relevant, the danger of unfair prejudice, misleading the jury, and confusing the issues far outweigh the probative value of such evidence. Such testimony would not be relevant under Federal Rule 401 and constitutes inadmissible character evidence under Rule 404(b). *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 494-95 (7th Cir. 1990). Defendant Meeks works with and the IDOC houses a particularly litigious subset of the population. Allowing Plaintiff to suggest that because the Defendants have been sued in the course of their employment/operation by other individuals in custody, including others aside from Plaintiff, they mistreated Plaintiff in this instance is patently unfairly prejudicial and not authorized by the Federal Rules of Evidence.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from eliciting any testimony regarding other lawsuits involving the Defendants.

### VI. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY OF ANY MISCONDUCT, REPRIMAND, OR GRIEVANCE ISSUED AGAINST DEFENDANTS.

Defendants request the Court bar reference to any previous misconduct or inquiries regarding reprimands received by Defendants or grievances filed against Defendants as irrelevant, and even if relevant, the danger of unfair prejudice, misleading the jury, and confusing the issues far outweigh the probative value of such evidence. Such testimony would not be relevant under Federal Rule 401 and constitutes inadmissible character evidence under Rule 404(b).

In *Duran v. Town of Cicero*, 653 F. 3d 632 (7th. Cir. 2011), plaintiffs brought a §1983

complaint against the town and multiple officers alleging the officers used excessive force, falsely arrested them, deprived them of equal protection, and asserted state-law claims. *Duran*, 653 F. 3d at 635. One of the defendants, Officer Vitalo, moved to prevent the introduction and reference to prior misconduct complaints. *Id.* at 645. The district court granted the motion *in limine*. *Id.* During Officer Vitalo's testimony at trial, his attorney asked a series of questions that arguably opened the door to the misconduct complaints. *Id.* Plaintiff's counsel asked the judge to reconsider the motion *in limine* in light of the line of questioning and testimony by Officer Vitalo. *Id.* The district court judge again declined to allow the evidence stating "the danger of confusion and of unfair prejudice to the other defendants would outweigh the probative value as to the defendant Vitalo." *Id.* On appeal, the Seventh Circuit affirmed the exclusion of this evidence. *Id.* The Seventh Circuit noted that the district court has significant leeway when conducting an analysis under 404(b). *Id.* The Court further stated that, based upon the specific allegations of misconduct against Vitalo, "there was potential for prejudicial 'spillover' effect on all the defendants. *Id.* Finally, the Court stated that even though Vitalo arguably opened the door to the evidence, "the Rules of Evidence do not simply evaporate when one party opens the door on an issue." *Id.* (quoting *Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003)).

      In this case, allowing Plaintiff to suggest that, because Defendant Meeks may have received previous reprimands or had grievances filed against him related to previous alleged misconduct or the Department may have received reprimands or had grievances filed against it regarding previous alleged misconduct, shows they mistreated Plaintiff in this instance is unduly prejudicial, irrelevant, and not authorized by the Federal Rules of Evidence.

      WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from eliciting any testimony regarding any alleged misconduct, reprimand, or grievance issued against Defendants.

### VII. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY REFERENCING ANY "GOLDEN RULE" APPEAL.

Defendants request the Court bar any "Golden Rule" appeal including any argument or testimony that the jury place itself in Plaintiff's position or the damages be based on a scenario whereby jurors hypothetically sustain injuries or damages similar to that purportedly sustained by Plaintiff. *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982). "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (internal quotations omitted); see also *Tomao v. Abbott Labs., Inc.*, 2007 WL 141909 (N.D. Ill. Jan. 16, 2007) (Granting the defendant's motion *in limine* regarding "golden rule" appeal).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from eliciting any testimony referencing any "Golden Rule" appeal.

### VIII. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING HIS OWN GRIEVANCES, OR GRIEVANCES OF OTHER INDIVIDUALS IN CUSTODY, AS EVIDENCE.

Plaintiff should be barred from offering his own grievances as evidence at trial, as he would be offering them for their truth. Therefore, Plaintiff's grievances are inadmissible hearsay. *See* Fed. R. Evid. 801, 802. No exception to the hearsay rule permits such documents to be used as evidence. *See* Fed. R. Evid. 803, 804. Defendants may use Plaintiff's grievances to impeach his testimony, if his testimony contradicts his previous statements from his complaints and is, therefore, a prior inconsistent statement. In that situation, once it has been introduced by Defendants, Plaintiff may be able to use the grievance to show it contains consistent statements. Fed. R. Evid. 803, 804. Simply introducing the grievance as evidence in Plaintiff's case, however,

should be prohibited, as no exception to the hearsay rule applies. The same principles would apply to other incarcerated individuals who may testify on Plaintiff's behalf. Use of their grievances in Plaintiff's case-in-chief would constitute inadmissible bolstering, unless the grievance has been specifically used to attack their credibility in prior questioning. *See United States v. McKinney*, 951 F.2d 471, 478 (7th Cir. 1992).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from suggesting, referencing, or eliciting any testimony or evidence regarding the content of his grievances or the content of grievances authored by other witnesses and/or individuals in custody.

### IX. PLAINTIFF SHOULD BE BARRED FROM PRESENTING A SPECIFIC COMPUTATION OF ALLEGED DAMAGES.

Defendants previously filed an early motion in *limine* requesting that the Plaintiff be barred from presenting a specific computation of alleged damages. (Doc. 138). In response to such motion, Plaintiff indicated that he did not intend to suggest or request any specific dollar amount or range for his pain and suffering at trial and did not oppose Defendants' motion. (Doc. 142). Based on Plaintiff's assertion that that he did not plan to provide any such computation of damages to the jury, the Court denied Defendants' early motion in *limine* as moot. (Doc. 143). The Court further noted in its order, however, that if Plaintiff were to ask the jury to consider awarding a specific amount for each day or instance in which he was allegedly wronged, he would need to provide the basis of such figure to Defendants. (Doc. 143).

Subsequently, on June 6, 2024, Defendants were notified that Plaintiff intended to ask for damages in the range of $2 million to $12 million based on the "pain and suffering Plaintiff needlessly endured, compounded by the long duration of his suffering." Plaintiff should be barred from providing this specific calculation to the jury at trial.

As an initial matter, Defendants object to the specific calculation provided by Plaintiff as

he has failed to provide the basis or calculation for this figure. Simply stating that it is based on pain and suffering over a period of time, is not an adequate basis for which Defendants could conduct their own investigation before trial in order to rebut that basis. *Smith v. City of Chicago,* 2020 U.S. Dist. LEXIS 268439, 21-26 (N.D. Ill., 2020), citing *Sandoval v. American Building Maintenance Industries, Inc.,* 267 F.R.D. 257, 282-83 (D. Minn. 2007).

Further, Defendants object to Plaintiff providing a specific calculation to the jury at trial based on the late disclosure. As indicated in Defendants' early motion in *limine,* in a recent case before the Northern District of Illinois, the Court analyzed whether a Plaintiff could refuse to disclose a computation of non-economic damages to Defendants, while still ultimately requesting a specific amount of damages from the jury. *Smith,* 2020 U.S. Dist. LEXIS 268439 at 21-26. In *Smith*, the Court reviewed cases from a variety of districts, ultimately finding that if Plaintiff chose to decline to disclose a figure for non-economic damages to Defendants, they risk preclusion from doing so later. *Id.* at 25-26. In doing so, the Court relied on the reasoning in *Sandoval*, where the Court reasoned,

> "[I]f plaintiffs do intend to suggest a specific amount to the jury for emotional distress damages, plaintiffs shall be required to provide to defendants the basis for this figure. After all, if plaintiffs present a specific amount to the jury for compensatory damages, then presumably they have a basis and a means for arriving at the amount they are seeking. In short, in that situation, the calculation for emotional distress damages is not necessarily vague, and it would be unfair to defendants if plaintiffs could submit a specific dollar amount for damages to the jury without defendants having the opportunity to discover the basis for the claim and the opportunity before trial to rebut that basis. Further, this Court will not allow plaintiffs to wait until the eve of trial to provide defendants with this information."

*Sandoval,* 267 F.R.D. 257 at 282-83*; see also De Varona v. Disc. Auto Parts, LLC, No. 12-20714-Civ.,* 2012 U.S. Dist. LEXIS 191048, 2012 WL 2334703, at *2 (S.D. Fla. June 19, 2012) ("[I]f Plaintiff decides not to disclose a computation for noneconomic damages at the initial disclosure phase, then Plaintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial."). Although Plaintiff seems to believe that disclosure

of this amount at any point before trial complies with these principles, Defendants disagree. Plaintiff's disclosure less than two months before trial, coupled with the vague basis provided for the amount to be requested, will prejudice Defendants as they have been given no time or information necessary to rebut the requested damages.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from requesting a specific amount of economic damages from the jury based on an undisclosed calculation.

### X. PLAINTIFF SHOULD BE BARRED FROM ASKING FOR PUNITIVE DAMAGES RELATED TO HIS ADA/RA CLAIM AGAINST THE ILLINOIS DEPARTMENT OF CORRECTIONS.

In Plaintiff counsel's June 6, 2024, correspondence, it was also indicated that Plaintiff would be seeking punitive damages proportional to the range they will be seeking for compensatory damages, $2 million to $12 million. To the extent that the request relates to Plaintiff ADA/RA claim against the Illinois Department of Corrections, Plaintiff should be barred from seeking punitive damages. *See Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002) ("[B]ecause punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from requesting punitive damages related to his ADA/RA claim against the Illinois Department of Corrections.

### XI. PLAINTIFF SHOULD BE BARRED FROM OFFERING THE TESTIMONY OF DR. VENKETESWARA POOLA.

Defendants request the Court bar Plaintiff from offering any testimony by Dr. Poola in this matter. As discussed above, Plaintiff has recently identified Dr. Poola as a witness he plans to call. [d/e 146]. This matter concerns treatment provided at Pinckneyville Correctional Center between

2018 and 2022. [d/e 118]. As noted within their Objections to Plaintiff's pretrial disclosures, Dr. Poola was not properly disclosed within the proper time frame. [d/e 151]. Further, Defendants contend such proposed testimony is inadmissible based on the fact it is irrelevant, unfairly prejudicial, concerns a subsequent remedial measure, and/or contains inadmissible hearsay. *See* Fed. R. Evid. 401, 403, 407, 801, 802, 803.

Pursuant to Federal Rule of Evidence 401, evidence is relevant if it has a tendency to make a fact more or less probable than without the evidence and the fact is consequential in determining the action. Fed. R. Evid. 401. Here, Plaintiff contends Dr. Poola provided treatment and performed surgical repair of Plaintiff's rectal prolapse in May 2024 – two years after the relevant time frame in this case ended. Plaintiff asserts Dr. Poola's testimony is relevant to the claims at issue because "it bears on whether Plaintiff's condition was treatable and correctable." [d/e 164]. However, Dr. Poola met with, treated, and performed surgery in May 2024. As such, any proffered testimony by Dr. Poola bears no consequence on whether Defendants exhibited deliberate indifference to Plaintiff's medical needs between 2018 and 2022.

To the extent the Court finds such testimony may be relevant, it should still be deemed inadmissible pursuant to Rule 403 as any tenuous, limited probative value is substantially outweighed by unfair prejudice, confusion of the issues, wasting time, and misleading the jury. Fed. R. Evid. 403. Such proffered testimony and evidence would cause unfair prejudice, confuse the issues, waste time, and mislead the jury as it would be testimony from an individual identified as a treating medical provider who saw Plaintiff and provide surgery in May 2024. There is a large risk the jury would give undue weight to the testimony of medical provider, even though he was not previously disclosed or designated as an expert, and further, the parties would undoubtably be forced to go into extensive detail regarding what a rectal prolapse is, methods of treatment, and would, potentially, be placed in the position of having Dr. Poola opine on prior treatment and/or the prior condition of Plaintiff's rectal prolapse. This would not only waste an extensive amount

of time but would create an unfairly prejudicial effect upon the Defendants. Even a limiting instruction would not cure the unfair prejudice, confusion of issues, and misleading, as allowing the jury to hear testimony by a medical professional who saw Plaintiff two years after the applicable time frame in this case, found surgery was necessary, and completed such surgery. Here, as previously indicated, the probative value of a physician and medical provider testifying regarding Plaintiff's specific condition and surgery that took place at least two years *after* the applicable time frame in this lawsuit is extremely low as opposed to the very real danger of unfair prejudice, confusion, and misleading nature it presents. Fed. R. Evid. 403. As such, it should be barred.

Further, as previously noted, Plaintiff asserts Dr. Poola's testimony is relevant to the claims at issue because "it bears on whether Plaintiff's condition was treatable and correctable." [d/e 164]. However, there is no indication Dr. Poola treated Plaintiff during the relevant time frame. Therefore, to opine as to whether surgery was appropriate two years prior to their encounters would require Dr. Poola to review medical records and opine on such – placing him firmly within the category of expert witness, which in this matter, Plaintiff's lack of due diligence has prevented him from presenting.

The Federal Rules of Evidence distinguish lay witnesses--those who cannot provide opinion testimony based on scientific, technical, or other specialized knowledge--and experts who may. *Compare* Fed. R. Evid. 701 *with* 702. Federal Rule of Civil Procedure 26(a)(2) provides two different avenues to disclose the identity of a witness who will present evidence that may fall under the expert rules, Federal Rules of Evidence 702, 703, or 705. Accordingly, there are separate provisions under Rule 26 for those who do and do not need to provide written reports. Those who must provide written reports are those witnesses "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The report must contain certain provisions as provided for

within the rule. *Id.*

Conversely, subsection (C) requires a summary disclosure of opinions and facts for those not required to provide expert reports. *See* Fed. R. Civ. P. 26(a)(2)(C); *see also* 2010 Committee Notes. An individual who is not retained or specially employed for expert testimony may testify as both a fact witness and provide specialized, expert testimony. The Committee Notes give examples of "physicians or health care professionals and employees of a party who do not regularly provide expert testimony." 2010 Committee Notes. These individuals must be disclosed as non-retained witnesses and provide the summary disclosure required under subsection C. *Id.*

These are the types of experts contemplated by the Federal Rules as non-retained experts. Even physicians that are sought for treatment for injuries that are the subject of a lawsuit only cross over to a retained expert when asked to give opinions beyond the scope of their own observation. *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 236–37 (N.D. Ill. 2013). This logic has been extended beyond physicians to expert witnesses in general. *Id.* at 237, *citing United States v. Sierra Pac. Indus.,* No. 09 C 2445, 2011 WL 2119078, at *4 (E.D.Cal. May 26, 2011) (holding that the difference between retained and non-retained experts is that non-retained experts gain their information through percipient observations, while retained experts gain their information in any other manner) (parenthetical included in original text). In *Meyers*, the Seventh Circuit held "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-735 (7th Cir. 2010).

Dr. Poola, if at all, would only be able to testify that he treated Plaintiff for rectal prolapse in 2024 and that in 2024, he recommended and completed surgical repair. However, as Dr. Poola met with Plaintiff two years after the events in question concluded, and Plaintiff's release from

prison and subsequent re-incarceration, the only way he would be able to testify as to the condition of Plaintiff's rectal prolapse between 2018 and 2022, treatment options, whether surgery was an option at that time, and the likely success of surgery at that time would be upon his review of Plaintiff's medical records – placing him squarely within the applicable case law's description as a retained expert witness. As noted, Plaintiff has been barred from disclosing such and further, Plaintiff had not previously disclosed Dr. Poola or provided the requisite report.

Even to the extent Plaintiff contends Dr. Poola is a non-retained expert witness based on his personal experience with Plaintiff and the direct treatment he provided, such is limited to 2024 and further, the Federal Rules still require a non-retained expert to identify the subject matter on which they will present evidence and a summary of the facts and opinions he is expected to testify upon. *See* Fed. R. Civ. P. 26(a)(2)(C). That has not been done here. As Plaintiff concedes within his Response to Defendants' Objections to his 26(a)(3) disclosures, Dr. Poola was identified for the first time in the pretrial disclosures, which state, "Dr. Poola is expected to testify about the presentation of Plaintiff's rectal prolapse, the conduct of the surgery, and the results of the surgical procedure." [d/e 146, p. 2]. While Plaintiff contends Dr. Poola disclosed on June 2, 2024, a mere one month before the instant pleading and less than two months before trial, leaves incredibly little time for Defendants to have an opportunity to disqualify him, obtain a rebuttal expert, or hold his deposition. *See Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012). The presentation of a prolapse in 2024 is vastly different than the presentation of such in 2018 through 2022, and the conduct of the surgery is irrelevant to the applicable time frame. Further, the results of the surgical procedure bear no weight on whether Defendants violated Plaintiff's rights or had the requisite state of mind in 2018 through 2022. As such, not only is Dr. Poola's testimony irrelevant to the applicable time frame, it must be barred pursuant to Rule 37(c)(1) as he was not properly disclosed, which was not justified nor harmless, and any testimony should further be barred pursuant to Rule 403 as unfairly prejudicial and poses a large risk of confusing the issues and misleading the jury.

*See Tribble*, 670 F.3d.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from offering any testimony by Dr. Poola in this matter.

### XII. IN THE EVENT PLAINTIFF SEEKS TO INTRODUCE THE JUNE 7, 2019 ATTORNEY LETTER, CERTAIN PORTIONS MUST BE REDACTED.

Defendants anticipate that Plaintiff shall seek to introduce a letter from the Loevy & Loevy law firm dated June 7, 2019. [d/e 146]. Defendants objected to the use of the document as noted within their Response to Plaintiff's 26(a)(3) disclosures. [d/e 151]. One such objection to be addressed at trial is the foundation and authenticity of the letter. *Id*. As a practical matter, the letter was allegedly sent by the Loevy law firm to Wexford and Dr. Steve Meeks. As noted by the Court at summary judgment, Dr. Meeks testified he has no recollection of reading the letter, and there is evidence the letter was not ever logged as having been received pursuant to IDOC's practices. [d/e 118, p. 20]. Here, Plaintiff has not proffered a single witness to lay the foundation or establish such letter is authentic, and further, there are no disclosed or proffered witnesses to testify when such letter was sent to Dr. Meeks through U.S. Mail or how it was sent to Dr. Meeks via U.S. mail. [*See* d/e 146; Fed. R. Evid. 901]. However, questions of foundation and authenticity are best suited for resolution at trial.

That said, even in the event Plaintiff can establish the authenticity and foundation of the document and seeks to utilize it at trial, certain material must be redacted, namely: 1) the portion of the top of page 1 indicating it was sent via certified mail to Dr. Steve Meeks, Chief of Health Services for the Illinois Department of Corrections; 2) that IDOC previously settled a lawsuit for failing to treat prolapse, and 3) that IDOC was party to prior litigation concerning Plaintiff.

In *Lovelace*, the Seventh Circuit reviewed a District Court's decision to redact statements within a psychologist's note. *Lovelace v. McKenna*, 894 F.3d 845, 849-850 (7th Cir. 2018). There,

the Court found the note concerning the plaintiff's statement within the medical note constituted hearsay and was not admissible under any of the exceptions. *Id*. Here, at the top of page one of the proffered letter, the document indicates it was sent via certified mail to Dr. Steve Meeks; however, there is no one to authenticate or provide the foundation for such, and the indication that the letter was in fact sent to Dr. Meeks, which is contrary to Dr. Meeks testimony and the applicable record [*see* d/e 118], constitutes inadmissible hearsay. Therefore, at a minimum, the address block indicating the letter was sent to Dr. Meeks should be redacted.

Further, the letter contains additional information that must be redacted in the event such letter is introduced at trial. Specifically, any statements within the letter that reference IDOC was party to a prior lawsuit involving Plaintiff or that IDOC settled a prior lawsuit[1] regarding rectal prolapse should be redacted. First and foremost, any settlement negotiations should be barred pursuant to Rule 408. Fed. R. Evid. 408. Additionally, as laid out above, introduction of prior settlements or lawsuits are irrelevant, and even if relevant, the danger of unfair prejudice, misleading the jury, and confusing the issues far outweigh the probative value of such evidence. Fed. R. Evid. 403. Such testimony would not be relevant under Federal Rule 401 and also constitutes inadmissible character evidence under Rule 404(b). As such, such references within the letter should be redacted.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an Order requiring the redaction of certain material within the June 7, 2019 letter, if admissible at all, specifically: 1) the portion of the top of page 1 indicating it was sent via certified mail to Dr. Steve Meeks, Chief of Health Services for the Illinois Department of Corrections; 2) that IDOC previously settled a lawsuit for failing to treat prolapse, and 3) that IDOC was party to prior litigation concerning Plaintiff.

---

[1] It is unclear at the time of filing whether Plaintiff has in fact settled a prior case with the Illinois Department of Corrections; regardless, discussions of such should be redacted if the letter is introduced.

### XIII. PLAINTIFF SHOULD BE BARRED FROM OFFERING THE UNDISPUTED MATERIAL FACTS FROM DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS UNDISPUTED FACTS FOR TRIAL.

Defendants anticipate that Plaintiff may use the "Undisputed Material Facts" from Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment as facts deemed admitted by Defendants. Defendants object to the use of such facts as being deemed admitted for trial purposes.

Summary judgment and trial are different proceedings with different goals and standards of review. As the Seventh Circuit has recognized, "summary judgment is not a paper trial." *Prestwick Capital Management, Ltd. V Peregrine Financial Group, Inc.,* 727 F.3d 646,663 (7th Cir. 2013). To the extent that Defendants included a fact in their summary judgment pleading, it is not conclusively established for all purposes. It is important to point out as well, Plaintiff, in his Response to Defendants' Motion for Summary Judgment, disputed and/or denied a variety of the statements contained within Defendants' "Undisputed Statement of Facts." (Doc. 105).

Defendants' Motion for Summary Judgment was brought pursuant to Federal Rule of Civil Procedure 56. Defendants set forth a statement of facts in the light "most favorable to the nonmoving party." *Id*. The advisory committee notes to Federal Rule of Civil Procedure 56(g) specifically indicate that, while the court can consider disposing of a material fact not genuinely in dispute, the Court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. (Fed. R. Civ. P. 56(g), Advisory Committee Notes).

Additionally, Defendants do not plan to stipulate to these facts in the pretrial order and, in fact, did not stipulate to same in the proposed Final Pretrial Order submitted to the Court. In the alternative, if the Court considers this as a judicial admission for use at trial, Defendants seek to

withdraw the "judicial admissions."

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Honorable Court enter an order precluding Plaintiff from offering the Undisputed Material Facts from Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment as undisputed facts for trial purposes.

## CONCLUSION

Accordingly, Defendants seek a pretrial order to preclude Plaintiff, his attorneys, and his witnesses, from: (1) testifying at trial regarding the causation of any medical or mental health condition; (2) offering the inadmissible hearsay statements of any medical or mental health professionals; (3) offering testimony or otherwise suggesting that the state of Illinois will indemnify Defendants; (4) testifying at trial regarding whether Defendants followed Illinois Department of Corrections Policies and Procedures; (5) offering evidence or testimony of other lawsuits involving Defendant; (6) offering evidence or testimony of any misconduct, reprimand, or grievance issued against Defendants; (7) offering evidence or testimony referencing any "golden rule" appeal; (8) offering his own grievances or grievances of witnesses as evidence at trial, as he would be offering them for their truth; (9) presenting a specific computation of alleged damages to the jury; (10) requesting punitive damages from the jury related to his ADA/RA claims against the Illinois Department of Corrections; (11) barring, or limiting, the testimony of Dr. Poola; (12) requiring the redaction of the June 2019 Letter as stated herein (if admitted); and (13) from offering the Undisputed Material Facts from Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment as undisputed facts for trial purposes.

        Respectfully submitted,

        THE ILLINOIS DEPARTMENT OF
        CORRECTIONS and STEVE MEEKS,

            Defendants,

        KWAME RAOUL, Attorney General,
        State of Illinois,

            Attorney for Defendants,

Kyrstin Beasley #6323618
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea, IL 62226
(618) 236-8781 Phone         BY:  <u>s/Kyrstin Beasley</u>
Kyrstin.beasley@ilag.gov              Kyrstin Beasley
                                                          Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANTONIO HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-cv-271-NJR |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, ROBERT JEFFREYS, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| STEVE MEEKS and STEPHEN RITZ, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, the foregoing document, *Defendants' Motions in Limine,* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen H. Weil	weil@loevy.com
Maria Makar	makar@loevy.com
Julia T. Rickert	julia@loevy.com
Dennis S. Harms	dharms@sandbergphoenix.com
Kevin K. Peek	kpeek@sandbergpohenix.com

and hereby certify that on the same date, I caused a copy of the document to be mailed by United states Postal Service to the following non-registered participants:

None

By:  /s/Kyrstin B. Beasley\_\_\_
Kyrstin B. Beasley #6323618
Assistant Attorney General
Metro East Office
201 West Pointe Drive, Suite 7
Belleville, Illinois 62226
(618) 236-8781 Phone
(618) 236-8620 Fax
E-mail: kyrstin.beasley@ilag.gov