IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *ANTONIO HUNTER, #M33269,* | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:21-cv-00271-NJR |
| *ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SOURCES, INC., STEVE MEEKS, and STEPHEN RITZ,* | ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTIONS IN LIMINE

COMES NOW Defendant, Dr. Stephen Ritz, by and through his undersigned counsel, Sandberg Phoenix & von Gontard P.C., and for his Responses to Plaintiff's Motions in Limine (Doc. 168), hereby states as follows:

**1.   Motion in limine to exclude non-party witnesses from the courtroom.**

No objection. Defendant Ritz will remain at the Defendant's table with his counsel throughout the trial.

**2(a).   Motion in limine to bar evidence of the nature of Plaintiff's conviction and sentence.**

Plaintiff's Motion in limine #2 asks this Court to prohibit Defendants from providing evidence of Plaintiff's criminal history. If Plaintiff is called to testify, Defendant Ritz intends to impeach the credibility of the witness with his prior convictions pursuant to Federal Rule of Evidence 609. Specifically, Defendant seeks to elicit the crime charged, the date, and the disposition. *See Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990).

Fed. R. Evid. 609 expressly permits impeachment of a witness with criminal convictions:

(a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement.

The premise of Fed. R. Evid. 609 "whether right or wrong, is that criminals are more likely to testify untruthfully." *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992). Plaintiff was sentenced (more than once) for a period of time greater than one year during the events in question.

Specifically, Defendant Ritz intends to elicit testimony that Plaintiff was incarcerated at the relevant period of time for a felony; that he was charged with attempted armed robbery armed with a firearm. Plaintiff alleges that his medical condition caused him great pain and suffering, and that he was prohibited from normal activities. Plaintiff's criminal acts at the time he supposedly was suffering from his alleged condition are relevant and should not be barred from presentation to the jury.

Pursuant to Fed. R. Evid. 609(a)(1)(a), these prior convictions must be admitted unless their probative value is substantially outweighed by their prejudicial effect. The probative value of Plaintiff's conviction is not outweighed by any prejudicial effect.

<u>Probative Value:</u>

2

First, as the Seventh Circuit expressed in *Gora*, there is a belief that criminals are more likely to testify untruthfully. This inherently constitutes probative value. If there was no probative value for prior convictions, there would be no reason for Fed. R. Evid. 609. *Gora v. Costa,* 971 F.2d 1325 (7th Cir. 1992).

Second, this case involves deliberate indifference in the Plaintiff's medical treatment and care. As the Court is aware, one of the components of any medical history or physical exam will be subjective complaints and statements from the patient. Thus, the credibility of the patient is vital in the assessment of that patient by medical personnel, and their subsequent actions. Plaintiff's version of key events in the differs from that reflected in the medical records. Accordingly, anything that impacts the credibility of the patient has substantial weight in assisting the jury to understand the judgments that were made.

Prejudicial Effect with Respect to Plaintiff's Prior Convictions:

There is minimal prejudicial effect in admitting the evidence of his prior convictions. This case alleges deliberate indifference while Plaintiff was incarcerated within the Illinois Department of Corrections. Plaintiff will have to introduce into evidence that Plaintiff was an inmate at the time of these events. Therefore, the impact of the admission of the convictions will add minimal, if any, prejudice to the Plaintiff.

In *Romanelli v. Suliene*, 615 F.3d 847 (7th Cir. 2010) the Seventh Circuit upheld the trial court's decision that the probative value was not outweighed by the prejudicial effect based upon the finding that "the jury was already aware that the lawsuit was a prisoner's civil rights case." *Id.* 854. As demonstrated above, the probative value of evidence of Plaintiff's criminal convictions is not substantially outweighed by any prejudicial effect. As such, Defendant Ritz should be allowed to introduce evidence of the criminal convictions.

**2(b).   Motion in limine to bar prison disciplinary infractions and other "bad acts."**

Defendant Ritz does not intend to raise or introduce evidence of Plaintiff's disciplinary infractions or other "bad acts," unless Plaintiff opens the door to any such evidence. Further, Defendant Ritz requests that Plaintiff be barred from introducing evidence of any "bad acts" of Dr. Ritz, including, but not limited to, prior lawsuits, and/or any disciplinary infractions of Defendant Ritz. Subject to those provisions, Defendant Ritz raises no objection.

**3.   Motion in limine to bar references to Defendants' awards or other good character evidence.**

Defendant Ritz has no objection as long as he is able to testify to his professional credentials. For example, Defendant Ritz should be allowed to testify as to his education, training, and certifications to practice. This ruling should similarly apply to all parties and trial witnesses.

**4.   Motion in limine to bar any reference to jurors' pecuniary interests.**

No objection, unless Plaintiff opens the door to any such reference or evidence, and as long as the bar similarly applies to Plaintiff.

**5.   Motion in limine to bar reference to former claims, former Defendants, or third parties who should be defendants.**

Defendant Ritz does not object to Plaintiff's Motion insofar as it seeks to bar testimony or other evidence that Plaintiff made claims against the former defendants and/or the disposition of any such claim(s), as long as the bar similarly applies to Plaintiff. Defendant Ritz does, however, object to Plaintiff's Motion to the extent Plaintiff seeks to preclude Defendant Ritz from asking the jury to consider his conduct, and only his conduct, when rendering a verdict in this case. *See* § 7.02 - 7th Cir. Pattern Instructions.

However, Plaintiff goes further by seeking to bar references to any other employees of IDOC, Wexford, or any other entity. Defendant Ritz should be allowed to present such an

"empty chair" defense and reference Plaintiff's failure to name and sue certain individuals as necessary. *Johnson v. Maue*, No. 18-cv-2212-RJD, 2024 U.S. Dist. LEXIS 8760, at *8 (S.D. Ill. Jan. 17, 2024) (in response to a similarly filed Motion *in Limine*, the Court stated "The Court's order on Plaintiff's Motion #5 should not be interpreted in a way to prohibit Defendants' 'empty chair' defense, as Defendants correctly note that each of them can only be liable for his own conduct."). Defendant is entitled to present evidence refuting Plaintiff's claims, including causation elements. Defendant should not be barred from presenting evidence that the purported injury was the result of another cause. *Plyler v. Whirlpool Corp.*, No. 08 C 6637, 2012 U.S. Dist. LEXIS 17433, at *9 (N.D. Ill. Feb. 13, 2012). Therefore, Plaintiff's Motion *in Limine* No. 5 should be denied in this respect.

**6.   Motion in limine to bar the introduction of any evidence relating to settlement.**

No objection, unless Plaintiff opens the door to any such reference or evidence, and as long as the bar similarly applies to Plaintiff.

**7.   Motion in limine to bar argument or insinuation that a Plaintiff's verdict may have adverse consequences for Defendants.**

No objection, unless Plaintiff opens the door to any such reference or evidence, and as long as the bar similarly applies to Plaintiff.

**8.   Motion in limine to bar any reference to the individual Defendants' financial inability to pay a judgment for compensatory damages.**

No objection, unless Plaintiff opens the door to any such reference or evidence, and as long as the bar similarly applies to Plaintiff.

**9.   Motion in limine to bar Defendants and other IDOC witnesses from wearing uniforms or other correctional attire during the trial.**

The reasoning and arguments behind Plaintiff's Motion in Limine #9 are speculative in nature. Plaintiff urges this Court to control the attire of Defendants and witnesses. With respect

5

to Defendant Ritz, presumably Plaintiff is asking the Court to bar Dr. Ritz from dressing as a physician (white coat, etc.). Defendant Ritz has no intention of appearing at trial in a doctor costume. Dr. Ritz will appear at trial in a suit; his normal everyday attire. To the extent that Plaintiff's Motion seeks to bar Defendant Ritz from doing so, this Motion should be denied.

**10.    Motion in limine to bar argument that prisoners are litigious and reference to Mr. Hunter's prior civil suits.**

General Testimony Regarding The Litigiousness of Inmates

The portion of Dr. Ritz's deposition testimony cited in Plaintiff's Motion came as the result of Plaintiff's counsel's question: "And in this case, do you know if you were notified that Mr. Hunter had listed you as a defendant in his civil complaint?" Defendant Ritz truthfully responded that being sued by an inmate does not, in and of itself, raise alarm in his mind because civil claims from inmates are commonplace when practicing correctional medicine. If Plaintiff's counsel intends to develop a theme that the filing of this case and/or Plaintiff's Motion for Preliminary Injunction should have caused Defendant Ritz to take some specific action, then Plaintiff has opened the door to testimony similar to that offered at Dr. Ritz's deposition and this Motion should be denied. Otherwise, Defendant Ritz does not object to this Court barring any witness from testifying as to the general litigiousness of prison inmates.

Plaintiff's Prior Litigation

Aspects of the prior litigation between Plaintiff and Wexford Health Sources are relevant to the issues the jury will be asked to decide in this case. For example, a key issue in this case is Plaintiff's inability to name the provider who performed the 2012 surgery. Because Plaintiff could not name the provider, the records requested by Defendant Ritz during the May 2018 collegial review call could not be obtained. The fact that Plaintiff communicated with the firm

6

that represented Plaintiff in the prior lawsuit involving Plaintiff's rectal prolapse,[1] and could have asked them for the records or at least the name of the provider is probative of Plaintiff's claim that he was unable to obtain these prior records.

References to the existence of prior litigation may be allowed if probative of some issue in the pending litigation. *Burbach Aquatics v. City of Elgin*, No. 08 CV 4061, 2011 U.S. Dist. LEXIS 4418, at *6 (N.D. Ill. Jan. 18, 2011). Use of prior civil suits may be used for impeachment or other similar purposes. *McIntosh v. Lindsey*, No. 16-cv-927-DWD, 2021 U.S. Dist. LEXIS 107604, at *3 (S.D. Ill. Mar. 26, 2021).

The Court should deny Plaintiff's Motion at this time. Plaintiff's counsel can, of course, object to specific questions, but a blanket preclusion of questions related to the prior litigation is inappropriate and would prejudice Defendant Ritz.

**11.     Motion in limine to bar Defendants from referring to witnesses as "inmate," "prisoner," or "detainee," instead of their names.**

Given the type of lawsuit and the location of the alleged events, it will not be possible to keep out the use of the terms "inmate" and "prisoner" throughout the course of trial. During the depositions in this case Plaintiff's counsel repeatedly used these terms. With that said, Defendant Ritz intends to refer to Plaintiff a "patient," "Plaintiff," or "Mr. Hunter" throughout trial. With the understanding that the use of "inmate" and "prisoner" will not generally be banned from use during trial, Defendant Ritz has no objection to this motion in limine.

**12.     Motion in limine to bar details of Mr. Hunter's spine condition.**

Plaintiff plans to call Dr. Jerrod Noble as a witness at trial. Dr. Noble treated Plaintiff for pain related to the bullet in Plaintiff's spine. Presumably, Plaintiff wants to call Dr. Noble to testify

---

[1] Plaintiff's Counseling records demonstrate calls with Loevy & Loevy on February 27, 2018 and April 13, 2018, both prior to the date on which Plaintiff was presented with a medical record authorization to obtain the records from his prior surgery.

regarding his incidental finding that Plaintiff had rectal prolapse in May 2019. Plaintiff cannot call Dr. Noble as a witness and then seek to bar Defendant Ritz from exploring Dr. Noble's care.

Further, Plaintiff's medical records, from both Dr. Noble and from Saint Louis University, document Plaintiff's multiple complaints of pain that Plaintiff attributes to the bullet in his spine. A key aspect of Plaintiff's damages in this case is the pain he alleges he suffered due to the untreated rectal prolapse, and Plaintiff has the burden to prove that the rectal prolapse was the but-for cause of such pain. Defendant Ritz is permitted to offer evidence that a cause other than the one claimed by Plaintiff caused him pain, and that Plaintiff complained of pain from another source and not the condition that is the subject of this case.

Next, the fact that neither Dr. Noble nor Saint Louis University, both of whom noted the presence of Plaintiff's rectal prolapse, immediately referred Plaintiff for urgent or emergent evaluation from a colorectal surgeon is probative of the key issue in this case, i.e. whether Defendant Ritz consciously failed to take reasonable measures.

Fourth, the fact that Plaintiff has or had a bullet lodged in his spine could impact the efficacy of Plaintiff's recent surgery. If the Court overrules Defendant Ritz's objection to Plaintiff's designation of Dr. Poola as a witness, then Defendant Ritz should be able to question Dr. Poola about the long-term efficacy of the surgery in light of the spinal injury, especially considering the continuation of symptoms after the 2012 surgery.

Finally, Dr. Ritz approved the referral request for Plaintiff to receive the laminectomy at Saint Louis University to treat the sequelae of the bullet lodged in Plaintiff's spine. The fact that he approved the request is probative of Plaintiff's claim that Defendant Ritz denied the May 2018 surgical referral for non-clinical reasons.

All of that said, Defendant Ritz has no intention of asking Plaintiff to recount the story of how he came to have a bullet fragment in his body. However, related medical care, and the accompanying medical records documenting said care, during the relevant period of time of Plaintiff's allegations (2018-2022) should be presented to and considered by the jury.

**13.     Motion in limine to bar discussion of the content of any emails discussing Loevy's 2019 letter.**

As an initial point, it must be noted that Plaintiff's Rule 26(a)(3) disclosures designated Dr. Ritz's 30(b)(6) deposition testimony that includes reference to the email string that Plaintiff now seeks to preclude from evidence[2]. It is unclear whether Plaintiff is asking this Court to "bar discussion of the content of any emails discussing Loevy's 2019 letter" altogether, as stated in the title to Plaintiff's motion, or if Plaintiff seeks only to preclude reference to that part of the email string that may offer an explanation for Defendant Ritz's lack of action in response to the 2019 letter. If the latter, Plaintiff seeks to use the privileged email string as both a sword and a shield, not Defendant Ritz.

Defendant Ritz gave two depositions in this case, one as a party-defendant, and one as one of Wexford's 30(b)(6) witnesses. The testimony cited in Plaintiff's Motion about Dr. Lehman was offered by Defendant Ritz only while serving as a 30(b)(6) witness. Defendant Ritz's 30(b)(6) testimony is the only evidence in the record of this case that demonstrates that Defendant Ritz ever had any connection to the letter insofar as it demonstrates that he was one of seven recipients of an email discussing the letter.

---

[2] Plaintiff's designations only include page numbers, without line numbers, so it is a little unclear exactly what 30(b)(6) testimony Plaintiff seeks to introduce at trial, but many of the pages Plaintiff designated include reference to the email string. Plaintiff designated page 31 of the 30(b)(6) deposition. At the end of page 31, Defendant Ritz was asked: "And were there any steps taken in regards to this letter as related to Mr. Hunter's medical care?" Defendant Ritz's answer begins on line 23 of page 31, and his testimony regarding Dr. Lehman's email begins on line 25 of page 31.

9

26126212.v1

In an effort to avoid confusion of the jury, Defendant Ritz suggests that this Court permit Plaintiff to reference the email string so that Plaintiff can demonstrate that that Defendant Ritz was one of seven recipients of an email regarding the June 2019 letter, and permit Defendant Ritz to testify, based on his own personal customs and practices, why he did not personally respond to the letter even assuming that he saw the email, including reference to Dr. Lehman.

14. **Motion in limine to bar hearsay concerning cancelled appointment at Northwestern.**

This evidence is relevant to: (1) Defendant Ritz's conduct in requesting the records from Plaintiff's 2012 surgery before approving Plaintiff for surgery, and (2) Plaintiff's damages claims. Plaintiff was deposed after his parole in 2022. As is relevant to his claims of prolonged suffering due to the lack of treatment for his rectal prolapse, he was asked if he had sought any care for his rectal prolapse since being paroled. He testified that he had an appointment at Northwestern, but that Northwestern cancelled the appointment "because they wanted to have medical records of my procedure first." Plaintiff testified that this appointment at Northwestern was scheduled in August 2022 – Three years after Plaintiff's counsel sent Wexford a letter that purportedly contained records from the 2012 surgery, and while this case was pending. If the only thing precluding Plaintiff from receiving care at Northwestern was copies of his 2012 medical records, they were readily available to him.

Northwestern University making the same request as Defendant Ritz, before even scheduling an appointment, is strong support for Defendant's Ritz's decision making. *See Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) and § 7.17 - 7th Cir. Pattern Instruction. Plaintiff's claim that the requested records were not available to him flies in the face of other, relatively undisputed facts, that the jury will hear. Barring this highly probative evidence from trial would prejudice Defendant Ritz.

Additionally, this evidence is not hearsay and/or fits within an exception to the hearsay rule.

First, Defendant Ritz does not seek to introduce this testimony for the truth of the matter, i.e. that Northwestern refused to schedule Plaintiff for an appointment absent him producing the 2012 records, but rather only for the purpose of demonstrating that this statement was made. Because this testimony is not being offered for the truth of the matter, it is not hearsay. *See* Fed. R. Evid. 801(c).

Further, even if the statement is hearsay, Fed. R. Evid. 807 (formerly Fed. R. Evid. 803(24)) permits the admission of hearsay statements even if not specifically exempted from the hearsay rule by Fed. R. Evid. 803 or 804 as long as certain conditions are met: (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. *See Quinn v. Wexford Health Sources, Inc*., No. 3:17-CV-00669-NJR, 2020 U.S. Dist. LEXIS 30820, at *7 (S.D. Ill. Feb. 24, 2020) (holding that an IDOC report was admissible despite not qualifying as a business record pursuant to Fed. R. Evid. 807).

As to the first prong, the fact that Plaintiff is the genesis of defense counsel's knowledge of the statement demonstrates its trustworthiness. The statement against interest exception contained in Fed. R. Evid. 804(b)(3) is founded on the idea that there is an indicia of trustworthiness when a declarant makes a statement that could expose the declarant to civil or criminal liability. Here, there is similarly an indicia of trustworthiness because Plaintiff is reciting a statement of a declarant that weakens Plaintiff's claims against Dr. Ritz. Further, there is no reason to believe that a representative of Northwestern would make such a statement unless it were

11

true, and the demand for the records prior to scheduling surgery was consistently made by Dr. Glasgow at Washington University and Dr. Poola at HSHS. *See Estate of Chlopek by Fahrforth v. Jarmusz,* 877 F. Supp. 1189, 1195 (N.D. Ill. 1995).

As to the second prong, there is no other evidence that Defendant Ritz could offer through reasonable efforts to demonstrate that a representative of Northwestern refused to schedule Plaintiff for an appointment unless he had his 2012 records. As stated above, such evidence is highly probative to the issues the jury will be asked to decide.

The situation in this case is similar to that in *Prudential Ins. Co. v. Kaltofen*, 951 F.2d 352 (7th Cir. 1991)[3]. In that case, the parties disputed who was the proper beneficiary of a life insurance policy. *Prudential Ins. Co. v. Kaltofen*, No. 90-3750, 1991 U.S. App. LEXIS 30657, at *1 (7th Cir. 1991). One of the beneficiaries (Kaltofen) argued that a change of beneficiary form entitled Kaltofen to the proceeds of the policy. *Id.* at *4. The change of beneficiary form was found in a postmarked envelope. *Id.* at *5. The date of the post mark was consistent with other evidence demonstrating that the decedent executed the change of beneficiary form and allocated the proceeds of the policy to Kaltofen. *Id.*

Kalofen's opponent challenged the use of the postmark as evidence, claiming that the postmark was hearsay. *Id.* at *20-21. The Seventh Circuit agreed that the postmark was hearsay, but held that because the postmark was reliable it was a "perfect candidate" for the residual hearsay exception. *Id.* at 21. Analyzing the factors test used to evaluate Rule 803(24), the precursor to Rule 807, the Seventh Circuit reasoned that the purpose of the hearsay rules was to "promote justice by preventing the admission of evidence that is inherently unreliable, not to frustrate justice

---

[3] This case was originally an unpublished opinion pursuant to Seventh Circuit Rule 53. Rule 53 was rescinded, and this case has been reported as a Table Case as cited above.

by preventing the admission of reliable probative evidence." *Id.* at *22. *See also Beale v. Kurtz,* 381 B.R. 727, 733 (S.D. Ind. 2008), citing *Prudential Ins. Co. v. Kaltofen.*

That is exactly the case here. For the reasons stated above, the statement of the employee of Northwestern is inherently reliable. There is no reason at all to think that this statement was false. It would frustrate justice to exclude this evidence and allow Plaintiff to avoid the import of this highly probative evidence that Plaintiff put into the record of this case.

Finally, Plaintiff faults Defendant Ritz for not locating the person at Northwestern that made the statement so that Defendant Ritz could depose this person and eliminate any hearsay concern. This would be possible only if Plaintiff somehow remembered the name of the person that made the statement, which is highly improbable.

**15.    Motion in limine to bar evidence and argument that Mr. Hunter was released and reincarcerated.**

Plaintiff actions while on parole vs. his actions while incarcerated are highly probative of his damages claims. Plaintiff claims that his rectal prolapse caused him a great deal of pain and embarrassment. A failure on his part to seek care while a not incarcerated has a tendency to make that claim less probable than it would be without the evidence, and is of consequence in determining the action. *See* Rule 401. The jury will already know that Plaintiff has been incarcerated, so the highly probative nature of this evidence is not outweighed by a danger of unfair prejudice. *See* Rule 403.

Plaintiff was released from prison in 2012 and had the prior rectal prolapse surgery shortly thereafter. He was reincarcerated in 2013. While reincarcerated, he filed a grievance (in 2014) complaining that he needed to see a surgeon because he was again having difficulty with his rectal prolapse. Specifically, the grievance claims that he was "still having problem bleeding got to used my hands to help me use the bathroom." That is exactly what Plaintiff claims in this case.

13

He was paroled in November 2016. Despite having filed a grievance two years prior complaining that his rectal prolapse was causing bleeding and requiring him to use his hands to defecate, he did not seek any care for his condition prior to be reincarcerated in November 2017 – The incarceration that is the subject of this case. Plaintiff told multiple health care providers that his rectal prolapse did not recur until late 2017 or early 2018 after he had been reincarcerated. After being paroled in 2022 after the incarceration that is the subject of this case, Plaintiff's only effort to seek care was calling Northwestern for an appointment as more fully discussed above.

Plaintiff's lack of effort to obtain care for his rectal prolapse after 2014, especially during the periods when he was not incarcerated, makes his damages claims in this case less probable. Thus, such evidence is relevant. It is not reasonably possible to explain to the jury the import of this evidence without laying out the timeline of Plaintiff's incarcerations and releases.

Finally, Plaintiff's effort to analogize the relevancy of his 2024 operation to evidence of his prior incarcerations and releases is misplaced. The 2024 surgery is not relevant because no admissible testimony can demonstrate that Plaintiff's condition from 2017-2022 was the same as his condition in 2024 when the surgery occurred. Admissible evidence, i.e. Plaintiff's 2014 grievance, demonstrates that his condition was the same then as what he claims is was during the subject incarceration.

**16.    Motion in limine to bar reference to the time taken to file the complaint and seek preliminary injunction in this case.**

Plaintiff wants to introduce the 2019 letter and the 2021 Complaint to demonstrate notice, but seeks to bar Defendant Ritz from making any argument about the lapse of time between these events and Defendant Ritz's conduct in May 2018. Plaintiff cannot have it both ways. If Plaintiff is going to argue that he was subjected to unnecessary pain and suffering because it took so long

14

for him to get surgery, then certainly his conduct, and the conduct of those acting on his behalf, is relevant to the jury's analysis of Plaintiff's damages claims.

Further, Plaintiff's Motion states: "Plaintiff also intends to introduce the 2022 motion for preliminary injunction (and the defendants' quick response thereafter) to show that Defendants ignored Plaintiff's lawsuit until they realized that they would shortly face scrutiny from a court." Because there is no evidence that Defendant Ritz played any role in Plaintiff being referred to a colorectal surgeon following the 2022 Motion for Preliminary Injunction, such argument should be precluded. It also must be noted that the IDOC no longer required Wexford to perform collegial review in 2022.

**17.     Motion in limine to bar evidence, testimony, or argument about whether certain employees have roles in ADA coordination.**

Presumably this Motion was directed toward the IDOC defendants. Plaintiff did not include any information in the Final Pre Trial Order about the ADA claim against Wexford. Following the Pre-Trial conference at which this issue was discussed, defense counsel emailed Plaintiff's counsel and asked for confirmation that Plaintiff was dismissing the ADA claim against Wexford. Plaintiff's counsel replied to that email the next day, and stated, "confirmed." Defense counsel followed up with Plaintiff's counsel multiple times since then requesting a formal dismissal of that claim, even sending a proposed dismissal pleading per Plaintiff's counsel's request, but the ADA claim against Wexford has not been dismissed. The ADA claim against Wexford should be dismissed, and this Motion should be denied as moot.

WHEREFORE, Defendant Dr. Stephen Ritz respectfully prays that the Court deny Plaintiff's Motions in Limine as more fully set forth above, and for such other and further relief as this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____
Dennis S. Harms, #6291610
Kevin K. Peek, #6328823
701 Market Street, Suite 600
St. Louis, MO  63101
314-231-3332
314-241-7604 (Fax)
dharms@sandbergphoenix.com
kpeek@sandbergphoenix.com

*Attorneys for Defendants Wexford Health Sources, Inc. and Stephen Ritz, M.D.*

**Certificate of Service**

I hereby certify that on this 15th day of July, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Stephen H. Weil
Maria Makar
Julia Rickert
Loevy & Loevy
weil@loevy.com
makar@loevy.com
julia@loevy.com
*Attorneys for Plaintiff*

_____

26126212.v1