**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANTONIO HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00271-NJR |
| | ) | |
| STEPHEN RITZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT RITZ'S MOTIONS *IN LIMINE***

Plaintiff, Antonio Hunter, by and through his attorneys of Loevy & Loevy, hereby respond to Defendant Ritz's Motions *In Limine* as follows:

1.      **Motion *in limine* to preclude any and all argument and evidence of medical treatment provided to other inmates.**

**RESPONSE:** Plaintiff does not oppose this Motion.

2.      **Motion *in limine* to preclude all argument and evidence of Defendant Ritz's insurance or insurance policy.**

**RESPONSE:** Plaintiff does not oppose this Motion.

3.      **Motion *in limine* to preclude any and all statement, testimony or argument about Wexford Health Sources, Inc. being a for-profit corporation or a "big" corporation or company.**

**RESPONSE:** This motion should be denied as premature. Plaintiff does not intend to introduce evidence that Wexford is a "big" for-profit corporation as an abstract proposition.

1

However, Wexford's status as a contractor to the IDOC is relevant for the jury to understand the context of Dr. Ritz's involvement in the case. That Wexford contracts with the IDOC to provide healthcare to prisoners, and that the Wexford employs Dr. Ritz as part of that contract. Wexford's status as a for-profit corporation is also relevant because it goes to motive for delaying care. This case revolves in large part around Dr. Ritz's denial of Mr. Hunter's surgery as part of Wexford's "utilization management" process. Dr. Ritz testified at his deposition that Wexford's utilization management program is intended among other things to control costs. Ritz Dep. at 13:9-13 (noting that utilization management includes consideration of cost). Plaintiff may seek to elicit testimony from Dr. Ritz that Wexford pays for such outside medical care, which is circumstantial evidence of a motive for Dr. Ritz, in service of his employer, to find reasons to deny it. Finally, Wexford's value may relate to Dr. Ritz's wealth, to the extent Dr. Ritz has an ownership interest in Wexford. For all these reasons, the Defendant's motion in limine should be denied.

4.       **Motion *in limine* to preclude any and all argument or evidence requiring specialized knowledge, education, or training from witnesses not qualified as experts.**

**RESPONSE:** Plaintiff agrees with Defendant that neither party should be permitted to offer any testimony requiring specialized knowledge from any witness who is not qualified to give such testimony. Plaintiff thus does not oppose this motion, provided the resulting ruling applies equally to both sides.

Plaintiff further notes that he will offer testimony requiring specialized knowledge from his treating physicians and from the expert witnesses he disclosed under Rule 26(a)(2). *See* ECF 115 (Plaintiff's Motion for Leave to Serve Non-Retained Expert Disclosures Out of Time); ECF 124 (Order Granting ECF 115). Defendants, by contrast, made no expert witness disclosures whatsoever and thus may not offer any expert testimony during this trial. For example, Defendants

2

are prohibited from offering any opinion that Plaintiff would not have received rectal prolapse surgery even if Defendant Ritz had approved a surgical consult in 2018. Additionally, both Plaintiff and Defendant must be permitted to ask the jury to draw common sense conclusions from the documentary and testimonial evidence presented during trial. *See, e.g.*, *United States v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000) (observing that "[J]uries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict," and that "common sense should be used to evaluate what reasonably may be inferred" from the evidence presented at trial (quotation omitted)).

5. **Motion *in limine* to exclude any and all reference to any other litigation or claims in which any Defendant or Wexford is or has been involved.**

**RESPONSE:** Plaintiff does not oppose this motion, so long as it applies with equal force to both sides. Plaintiff, however, anticipates that Defendant Ritz will attempt to deny he had knowledge in 2021 of Plaintiff's rectal prolapse, despite the filing of this lawsuit that year, by testifying that prisoners sue him too often for him to pay any attention to their allegations and claims. He so testified during his deposition. *See* Ritz Dep. 64:10-18. The Court should rule that, if Defendant or defense counsel make any similar statement during trial, they will have opened the door to Plaintiff's questioning of Dr. Ritz about the actual number and content of the lawsuits that were filed against him during the relevant period. *See Gomez v. Schoenbeck*, No. 3:16-CV-291-NJR-GCS, 2019 WL 3887128, at *2–3 (S.D. Ill. Aug. 19, 2019) (noting various circumstances in which party may open the door to the introduction of evidence).

6. **Motion *in limine* to preclude any instruction from Plaintiff or his counsel to the jury to send a message to Defendants or act as the conscience of the community.**

**RESPONSE:** Plaintiff opposes this Motion. The type of instruction Defendant seeks to bar is allowed where, as here, punitive damages are recoverable.

District courts within the Seventh Circuit have held that "'send a message' arguments are permissible when punitive damages are relevant to a party's claim." *K & C Properties, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 421CV00039TWPKMB, 2023 WL 2500451, at *7 (collecting cases). This Circuit's jury instruction for punitive damages explains that the purpose of punitive damages is to "serve as a . . . warning to Defendant and others" and directs the jurors to consider "the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made." *See* Seventh Circuit Pattern Jury Instruction 7.28. Accordingly, Plaintiff may properly argue that the jury should "send a message." *See Parker v. Ritz*, 2022 WL 769232 at *4 (S.D. Ill. March 14, 2022). The Court should deny Defendant's motion.

7.       **Motion *in limine* to preclude any documents, testimony, or other evidence not expressly produced in written discovery.**

**RESPONSE:** To the extent Defendant seeks to bar all "testimony" not produced in written discovery, Plaintiff opposes this Motion. Non-expert witnesses, of course, need not disclose their testimony in written discovery.

Plaintiff does not otherwise oppose this Motion, so long as it applies with equal force to both sides. Plaintiff, however, requests that the Court caution Defendant that he may not evade a bar on introducing documentary evidence that was not produced in discovery by having a witness testify to the content of documents not produced. Such testimony violates the Fed. R. Evid. 1002 (the "best evidence" rule) and would constitute hearsay in violation of Rule. 802 For example, Dr. Babich, a Wexford representative, testified in his deposition that Wexford's collegial review process relied on guidelines used by insurance companies, such as "Millman" and "InterQual."

Babich 30(b)(6) Dep. at 63:4-64:24, 66:2-67:10. Because Defendant never produced any such guidelines during discovery, and because their purported contents are hearsay, Defendant may not rely on the supposed content of these guidelines during trial.

8.    **Motion *in limine* to preclude Plaintiff from introducing any news articles, media stories (any medium), and opinion pieces (any medium)**.

**RESPONSE:** Plaintiff does not oppose this Motion.

9.    **Motion *in limine* to preclude Plaintiff's counsel from describing themselves as "specialists in § 1983 litigation," informing the jury of their verdict or settlement record in prisoner medical cases, or stating that they only accept "valid" claims or otherwise implying this case is meritorious based on their involvement.**

**RESPONSE:** Plaintiff does not oppose this Motion.

10.    **Motion *in limine* to preclude Plaintiff from introducing any grievances, responses to grievances, or letters**.

**RESPONSE:** Plaintiff opposes this Motion. Defendant seeks to bar Plaintiff from introducing his grievances and grievance responses at trial on the grounds that they constitute inadmissible hearsay. But Plaintiff must be permitted to introduce the grievances and grievance responses to show Defendant had notice of his pleas for medical care. *Harden v. Marion County Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015) ("Evidence that is 'used only to show notice' is not hearsay."). The grievances and grievance responses may also be admissible non-hearsay under Rule 801(d)(1), as prior consistent statements if Defendant accuses Plaintiff of recent fabrication or implies as much. Finally, to the extent the grievances contain hearsay, the grievances and

5

grievance responses fall within the hearsay exceptions for (1) business records and (2) statements made for diagnosis and treatment. *Stone v. Morris*, 546 F.2d 730, 738 (7th Cir. 1977) ("A prison is clearly a business within the meaning of the term in the statute and the rule, and inasmuch as the memorandum was prepared by a member of the staff at [the prison] and was lodged in the official prison files, we conclude that it was made in the regular course of prison activity. The fact that the memorandum was retained as part of Plaintiff's prison file indicates that it is the type of document routinely relied upon by prison officials."); Fed. R. Evid. 803(4).

11.     **Motion *in limine* to preclude Plaintiff's counsel from asking questions related to standard of care.**

**RESPONSE:** Plaintiff opposes this Motion for the reasons given below in response to Defendant's Motion In Limine No. 12.

12.     **Motion *in limine* to preclude Plaintiff's non-retained expert(s) from offering testimony of "criticisms" that do not rise to the level of deliberately indifferent medical care or, in the alternative, medical negligence.**

**RESPONSE:** Plaintiff opposes this Motion. Defendant is seeking to prevent testimony by medical experts that criticizes his acts and omissions unless those "concerns or criticisms rise to the level of deliberate indifference," because such testimony would be irrelevant and prejudicial. But this argument misunderstands the manner in which deliberate indifference (a jury question) is typically proven. As the Seventh Circuit has explained,

> Rarely if ever will an official declare, "I knew this would probably harm you, and I did it anyway!" Most cases turn on circumstantial evidence, often originating in a doctor's failure to conform to basic standards of care.

*Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016). This observation

6

is reflected in the Seventh Circuit's pattern jury instructions, which note that deliberate indifference can be inferred from a medical professional's "departure from accepted professional judgment, practice or standards" sufficient to infer indifference to the patient's medical needs. *See* Seventh Cir. Pattern Jury Instruction 7.17.

Criticisms by medical professionals of Dr. Ritz's acts and omissions would be offered in precisely the register deemed relevant by the Seventh Circuit: whether his acts and omissions departed from what medical professionals are supposed to do. Whether such problems with Dr. Ritz's conduct rise to the level of deliberate indifference is a question for the jury to decide, and Plaintiff must not be barred from offering some of the most probative evidence on this question.

13.    **Motion *in limine* to preclude Plaintiff from offering evidence or making the argument that Wexford and/or Defendant Ritz is responsible for the actions of its employees or the medical unit at Pinckneyville in general.**

**RESPONSE:** Plaintiff opposes this Motion. Defendant Ritz is improperly seeking to take away from the jury a basic question in this case: the extent to which he bears responsibility for the four-year delay in obtaining a surgical consult for Mr. Hunter, particularly for the lack of follow-up after Dr. Ritz originally denied the surgical consult request. ECF 167 at 8. But Dr. Ritz cites no rule or ruling that has taken any of these questions off the table. Moreover, Ritz himself has testified that he could have ensured follow-up care for Mr. Hunter but decided not to. Ritz Dep. at 51:1-25.

The arguments Defendant seeks to bar with this Motion are basic questions that must be developed through the evidence at trial, and indeed they go to the primary factual dispute for which the Court granted a trial in the first place. *See* ECF 118 (Court's Summary Judgment Opinion) at 15-16 (noting Dr. Ritz's lack of follow-up as a reason for denying summary judgment). The Court

should not prevent Plaintiff—or Dr. Ritz—from offering evidence going to the question of his responsibility for follow-up on his denial of a surgical consult. And it should emphatically be left to the jury to decide the question of Dr. Ritz's responsibility at trial.

14.     **Motion in Limine to preclude Plaintiff from asking the jury for damages using a *per diem* formula.**

**RESPONSE:** Plaintiff opposes this Motion. In it, Defendant Ritz seeks to preclude Plaintiff "from asking the jury for damage using a *per diem* formula" that names any specific amount for each day. ECF 167 at 9. Defendant does not explain why the *per diem* construct in particular is objectionable, and his motion should be denied for failing to develop an argument. He merely cites to the Court's May 17, 2024, Order on the early motion *in limine* regarding ADA damages, ECF 143. But that order denied the IDOC's motion in limine as moot because at the time Plaintiff had not noted an intention to identify a particular amount. *Id.* Instead, in light of Plaintiff's position at the early motion *in limine* stage, the Court held that "if [Plaintiff] plans to ask the jury to consider awarding a specific amount . . . . he should provide [the defendants] with the basis for that figure." ECF 143 at 9.

Plaintiff has done so. On June 6, as Plaintiff prepared for trial, Plaintiff determined that he would ask for a specific amount. In compliance with the Court's order, Plaintiff counsel informed defense counsel as follows:

> [A]s we come closer to trial, we have determined that Plaintiff will ask the jury to award a specific amount of damages. The Court's denial of Defendants' early MIL on this subject provides that if we plan to ask the jury for a specific amount, we should disclose the basis for that amount to you. ECF 143 at 4.
>
> I write now to notify you that we will be asking the jury for a specific amount, in the range of $2M-$12M. We will also seek proportional punitive damages. The basis for this amount is the pain and suffering Plaintiff needlessly endured, compounded by the long duration of his suffering.

June 6, 2024, email from J. Rickert to defense counsel.

This was a sufficient disclosure and in no way hides the ball. At the time defendants filed the early motion *in limine*, fact discovery in this case had long been closed, and no defendant had sought a basis for Plaintiff's noneconomic damages. The rule they then asked the Court to adopt in this case—that parties seeking noneconomic damages nevertheless had to identify a specific computation under Rule 26(a)(1)—was an outlier in the Seventh Circuit. The only Seventh Circuit case that defendants identified—*Smith v. City of Chicago*, No. 15 CV 3467, 2020 WL 13599000, at *1 (N.D. Ill. Nov. 4, 2020) (McShain, M.J.)—was an unpublished decision by a solitary magistrate judge. And *Smith* itself cited multiple decisions in the Seventh Circuit holding the opposite—that Rule 26(a)(1) did not require disclosure of a "computation" of noneconomic damages. *See Smith*, 2020 WL 13599000, at *4 (collecting multiple Seventh Circuit district court cases holding that Rule 26(a)(1) does not require computation of noneconomic damages). A solitary, unpublished by a magistrate judge identifying a novel disclosure requirement—contradicted by multiple district court decisions in this circuit holding that no such requirement existed—could hardly establish a rule of disclosure that Plaintiff was on notice he had to obey at the risk of losing a common argument made at trial. Given that novelty, the Court should not countenance Defendant's current motion.

In any event, Plaintiff has complied with the Court's May 17 Order and has provided a specific number range to the Defendants. That figure will arise from argument by Plaintiff's counsel—while noneconomic damages can be *suggested* by counsel, they are, as one of the district courts cited by *Smith* notes, subjective arguments about what is fair. *See Stevens v. DeWitt Cty., Ill.*, No. 11-cv-3162, 2013 WL 819372, at *4 (C.D. Ill. Mar. 6, 2013) ("Some damage categories are not capable of computation, such as pain and suffering and other noneconomic damages.") (cited in *Smith*, 2020 WL 13599000, at *4). Having disclosed this figure, Plaintiff counsel should be permitted to suggest it to the jury, whether through a *per diem*, gross, or other argumentative construct.

15. **Motion in Limine to preclude Plaintiff from referencing, introducing, or discussing *Lippert* and/or *Rasho* expert reports, consent decrees, or any other documents related to opinions or findings regarding prisoner medical care or mental health care in another case.**

**RESPONSE:** Plaintiff opposes this Motion as premature. Defendant Ritz is seeking to prevent Plaintiff from introducing or referencing other litigation, including the *Lippert* and *Rasho* class actions, on grounds that introducing such evidence would be inadmissible hearsay and that it would lack foundation.

This request is premature. Plaintiff agrees that introducing pleadings in another case for the truth of the matters asserted in those pleadings would likely run afoul of the rules against hearsay. But court proceedings and filings can be introduced for other purposes, including notice or impeachment. Introduction for those purposes is not hearsay. *Harden*, 799 F.3d at 861 ("Evidence that is 'used only to show notice' is not hearsay."). Any question of authentication, meanwhile, is premature. Whether, how, and to what extent introduction of evidence about other litigation, whether it is introduced in documentary or testimonial form, and thus whether authentication will be required, should be resolved at the time of introduction.

16. **Motion in Limine to preclude Plaintiff from offering into evidence Wexford, IDOC, or Pinckneyville directives, policies, or protocols.**

**RESPONSE:** Plaintiff opposes this Motion in part. Although Plaintiff agrees that violation of a policy is not equivalent to the violation of the Constitution, deliberate indifference can be shown in many ways, including that the Defendant did not follow protocols. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) ("A prison official's failure to follow prescribed protocols or policies can be indicative of deliberate indifference if it demonstrates that the official disregarded a known or

obvious risk that was so substantial that it should have been apparent to the official."); *Hope v. Pelzer*, 536 U.S. 730, 745 (2002). Deliberate indifference is different in this way than excessive force, which was at issue in the authority relied upon by Defendant.

Additionally, the story of this case simply cannot be told without discussion of Wexford and IDOC protocols. The collegial review process, administered by Defendant Ritz, must be explained for the jury to understand his role in Mr. Hunter's medical care.

17.    **In line with the previous Motion in Limine, Plaintiff should be barred from referencing, suggesting, introducing, or presenting in any manner the idea that collegial review is unconstitutional, that Defendants engaged in any cost-saving measures through collegial review or in this matter, or any other form of presentation of a *Monell*-type claim.**

**RESPONSE:** Plaintiff does not oppose this Motion to the extent that the motion seeks to exclude argument that a policy is unconstitutional in the abstract. However, whether Dr. Ritz attempted to use the procedures of collegial review to discourage or delay Mr. Hunter's surgery is a factual question that is subject to the evidence that will be presented at trial. Certainly, the question of whether collegial review, in the abstract, is "unconstitutional on its face," as Dr. Ritz emphasizes, ECF 167 at 12, does not speak to whether the collegial review process could be employed or abused to save money. While the dispute in this case focuses on the question of deliberate indifference, a cost-saving motivation for indifference is circumstantial evidence supporting the proposition that deliberate indifference occurred. Plaintiff should not be barred from seeking to elicit evidence tending to shows a cost-saving motivation for denying Mr. Hunter's surgery.

18.    **Motion to bar Plaintiff's attorney letter dated June 7, 2019 (ECF 105-30;**

**Plaintiff's Pretrial Disclosure Exhibit #24).**

**RESPONSE:** Plaintiff opposes this Motion. The June 2019 letter from counsel is crucial evidence of notice. *Harden*, 799 F.3d 857, 861 (7th Cir. 2015) ("Evidence that is 'used only to show notice' is not hearsay."). Moreover, Defendant Ritz and his employer admit that they were notified of the letter, and thus they have no basis to dispute its authenticity. *See* Ritz 30(b)(6) Dep. at 16:21-17:10. Plaintiff concedes that certain redactions may be appropriate.

To the extent, however, that any authenticity issue does exist (which Plaintiff denies), Plaintiff would seek leave to call as a witness Plaintiff's former counsel, Sarah Grady, who is no longer with Loevy & Loevy and no longer represents Mr. Hunter. Her testimony would be limited to authenticating the letter and would in no way create the attorney/witness confusion Defendant raises.

19.    **Adoption of Co-Defendants' Motions in Limine**

**RESPONSES:**

*Response to IDOC Motion In Limine I*

Plaintiff opposes this Motion. Plaintiff may seek to offer testimony that there are many potential causes of rectal prolapse to provide context and to prevent distracting the jury or prejudicing Mr. Hunter by allowing the jury to make false assumptions about the cause of Mr. Hunter's rectal prolapse. Fed. R. Ev. 403.

*Response to IDOC Motion In Limine VII*

Defendant requests the Court bar any "Golden Rule" appeal, including any argument or testimony that the jury place itself in Plaintiff's position. Plaintiff may properly ask the jury to draw upon their own experiences, and the Court should deny Defendant's overbroad and vague motion.

First, the Court should deny Defendants' motion because it is too broad and speculative. *See Stinebower v. Scala*, 331 F.2d 366, 367–68 (7th Cir. 1964) (recognizing Fed. R. Civ. P. 7(b)(1)'s particularity requirement for motions). Numerous district courts have considered motions *in limine* to bar these arguments and have denied the motion or declined to rule on it. *See, e.g., Shirrell v. Billing*, No. 17-CV-0567-MJR-DGW, 2018 WL 7252824, at *2 (S.D. Ill. May 11, 2018) (denying the motion as "illegible, unnecessary, speculative, overboard, and downright bizarre" and instructing that "Rule 401 will govern the admissibility of the evidence"); *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863–64 (M.D. La. 2017) ("The Court is being asked to rule on abstract and generalized hypotheticals. In the absence of something more specific, the Court is unable and unwilling to grant their motion.").

Second, the Court should deny the motion because Defendants seek to preclude vague "trial tactics" rather than specific evidence "that clearly ought not be presented to the jury," because it is "inadmissible for any purpose." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir.1997). Third, Defendants' motion *in limine* incorrectly suggests that the limitations on "golden rule" arguments traditionally apply to witness testimony. *Lund v. Jed Prod. Co.*, 295 F.2d 264, 266 (7th Cir. 1961) (distinguishing between "the improper allusions were made by counsel for plaintiff" and witness testimony "spoken inadvertently and without improper intent").

The Seventh Circuit does not apply a bright-line rule to "golden rule" argument. Instead, courts consider "the nature of the remarks, their number and repetition," and whether "in light of the record as a whole . . . there was a deliberate appeal to the jury to substitute sympathy for judgment." *Shroyer v. Kaufmann*, 426 F.2d 1032, 1034 (7th Cir. 1970). The Seventh Circuit "has been loathe [sic] to find that improper comments made during closing argument rise to the level of reversible error." *Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013) (citing *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011) ("We have stated repeatedly that improper comments during

13

closing argument rarely amount to reversible error.")).

Such was the case in the opinions cited by Defendant. *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984) (finding golden rule argument was harmless error where argument was not repeated and "jury was properly instructed concerning the law it should apply in determining liability and damages"); *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) ("Although we find that the prosecutor's comment was improper, we believe that it was not so prejudicial as to deprive the defendant of his right to a fair trial . . . . [T]his remark lasted for only a brief moment during an hour-long rebuttal argument.").

Such is also the rule in many other Circuits and state courts. For example, while a plea to the jurors' sympathy may be improper, appeals to the jurors' common sense are proper. *Bankers Tr. Co. v. Publicker Indus., Inc.*, 641 F.2d 1361, 1366 (2d Cir. 1981) (distinguishing *Klotz* and holding that plaintiff's summation was not improper for using the word "you" ten times in six sentences where such statements were not prejudicial but were an appeal to jurors' common sense"); *see also Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 1041-42, 510 N.E.2d 1208, 1211 (1987) ("[P]laintiffs' counsel told the jury that a million dollars is certainly substantial, but that horses, paintings and computers are bought and sold for that much. These arguments did not exceed the bounds of fair argument.").

Accordingly, Plaintiff may properly ask jurors to draw on their own experiences and common sense to understand what Mr. Hunter experienced, and to comprehend the impact of his injuries on his life. Jurors may also draw upon their experiences to assess credibility and persuasiveness. The Court should deny Defendants' motion to bar testimony or comments asking the jurors to put themselves in Mr. Hunter's shoes. In the alternative, the Court should decline to rule on the motion now and take up any issues as they may arise at trial.

14

*Response to IDOC Motion in Limine XI*

Plaintiff opposes this Motion to bar the testimony of Dr. Poola, who performed Plaintiff's rectal prolapse repair earlier this year. If Dr. Poola were not allowed to testify that he repaired Mr. Hunter's rectal prolapse, Plaintiff would be severely prejudiced in multiple ways.

First, without allowing the jury to hear that Mr. Hunter's prolapse was successfully repaired, the jury will not understand how he is able to sit through the trial without constant bathroom breaks. His truthful testimony about what his life was life before the repair would be severely undermined. Second, if Plaintiff cannot introduce testimony about his successful prolapse repair, the jury may be led to believe that repair was impossible, which is simply false. While it is true that neither side has disclosed an expert who can say definitively that the prolapse was or was not repairable from 2018 to 2022, the jury should be permitted to hear testimony that the prolapse has now been repaired and draw common sense, non-expert conclusions from that information.

20.      **Defendant Ritz respectfully requests leave of Court to file additional Motions *in Limine* as necessary and as allowed by this Court's standing Case Management Procedures.**

**RESPONSE:** Plaintiff does not oppose this Motion. Plaintiff respectfully requests the same leave.


Dated: July 15, 2024

/s/ *Julia Rickert*
One of Plaintiff's Attorneys

Arthur Loevy
Julia Rickert
Stephen H. Weil
Maria Makar

15

LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
julia@loevy.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Response to Defendant Ritz's Motions *In Limine* to be served on all counsel of record via the Clerk of the Court's electronic filing system on July 15, 2024.


/s/      *Julia Rickert*