IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTONIO HUNTER,

                    Plaintiff,

v.                                                    Case No. 3:21-CV-271-NJR

WEXFORD HEALTH SOURCES, INC.,
and STEPHEN RITZ, M.D.,

                    Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are Motions *in Limine* filed by Defendants, Wexford Health Sources, Inc., and Dr. Stephen Ritz,[1] (Doc. 167) and Plaintiff Antonio Hunter (Doc. 168). The Court also has reviewed objections to the parties' Rule 26(a)(3) disclosures (Docs. 157, 164, 176). The Court rules as follows.[2]

## I.   Defendants' Objections to Plaintiff's Rule 26(a)(3) Disclosures and Supplemental Disclosures

### a.   Dr. Venketeswara Poola

In both their objections to Hunter's Rule 26(a)(3) disclosures and in their Motions *in Limine*, Defendants object to Hunter's disclosure of Dr. Venketeswara Poola as a witness to be called at trial. Dr. Poola performed surgery to repair Hunter's rectal

---

[1] Although Hunter has indicated he no longer is pursuing his ADA claim against Wexford Health Sources, Inc., because Wexford has not been formally dismissed, the Court refers to Wexford and Dr. Ritz collectively as "Defendants." The Court recognizes that there is no deliberate indifference claim remaining against Wexford.

[2] Objections to specific exhibits will be taken up at trial.

prolapse in May 2024. Defendants argue that, not only was the disclosure late, but Hunter also has failed to provide sufficient information about Dr. Poola's anticipated testimony.

Defendants further argue that Dr. Poola's testimony about Hunter's 2024 surgery is not relevant because it bears no consequence on whether Dr. Ritz exhibited deliberate indifference to Hunter's medical needs between 2018 and 2022. Defendants claim that Dr. Poola would inevitably opine on rectal prolapses generally and prior treatment, as well as the prior condition of Hunter's rectal prolapse specifically. But, allowing Dr. Poola to opine on whether surgery would have been appropriate two years earlier would require Dr. Poola to review medical records and opine on such—placing him firmly within the category of a retained expert witness.

In response, Hunter argues that the disclosure of Dr. Poola is not late given that he was disclosed one week after the surgery occurred. Upon learning of the surgery, counsel promptly subpoenaed Hunter's medical records from the surgery and produced them to Defendants. Thus, the disclosure of Dr. Poola after the close of discovery is "substantially justified" under Rule 37(c)(1). Hunter also contends that Defendants are not prejudiced by the disclosure of Dr. Poola, as they also have the medical records from Hunter's surgery and could have moved to depose Dr. Poola prior to trial—but did not. Finally, Hunter argues that Dr. Poola's testimony is relevant and necessary to show that his condition was treatable and repairable, as well the effect surgery had on his prolapse. Hunter asserts that if he is unable to introduce testimony that his prolapse was repaired, the jury may incorrectly believe that repair was impossible.

The Court agrees with Hunter that counsel timely disclosed Dr. Poola given the circumstances. Moreover, Dr. Poola's testimony regarding Hunter's 2024 surgery is relevant to whether his condition was treatable. The jury should also be able to hear that Hunter's prolapse has now been repaired and to draw common sense conclusions from that fact. Therefore, Dr. Poola will be allowed to testify as a treating physician at trial pursuant to Rule 26(a)(2)(C).

b. Plaintiff's Supplemental Rule 26(a)(3) Disclosures

Defendants object to Hunter's Supplemental Rule 26(a)(3) Disclosures because they are untimely and seek to introduce materials that are not appropriate trial exhibits. Specifically, Defendants object to Hunter's disclosure of (1) a "demonstrative exhibit of prolapse photograph;" (2) Hunter's Motion for Preliminary Injunction along with fifteen exhibits (including a letter from Dr. David Shapiro); (3) Defendants' Response to Hunter's Motion for Preliminary Injunction; and (4) the May 6, 2022 Preliminary Injunction Motion Hearing—Testimony of Dr. Percy Myers.

With regard to the motion and response that Hunter seeks to introduce, it's axiomatic that these documents are *arguments* made by counsel, not *evidence*. With regard to the exhibits attached to Hunter's preliminary injunction motion, the Court has already barred Dr. Shapiro from testifying; Hunter cannot now slip his opinions through the back door. And at least one other exhibit attached to the motion is a document disputed in the parties' motions *in limine*. The motion, the response, and the exhibits shall be excluded.

As for the testimony of Dr. Percy Myers, Defendants argue that this testimony discussed Hunter's immediate need for a consultation in 2022, whereas the alleged events

involving Dr. Ritz occurred much earlier. Furthermore, Dr. Myers does not mention Dr. Ritz whatsoever in his testimony. The Court agrees this disclosed exhibit is late, irrelevant, and should be excluded.

Finally, with respect to the demonstrative exhibit of a rectal prolapse, the Court reserves ruling until trial. If Hunter is able to lay foundation for the exhibit, it may be admissible.

In sum, Defendants' objections to Hunter's late disclosure of the preliminary injunction motion and exhibits, Defendants' response, and the testimony of Dr. Percy Myers are **SUSTAINED**. The Court **RESERVES RULING** on Defendants' objection to the rectal prolapse photograph.

## II.     Plaintiff's Objections to Defendants' Rule 26(a)(3) Disclosures

### a.   Heather Davis, Bobby Blum, and Dr. Glasgow

Hunter objects to Defendants' disclosure of Heather Davis, Bobby Blum, and Dr. Sean Glasgow as witnesses they may call at trial because these witnesses were not disclosed by name in their initial disclosures or any supplemental disclosure. Hunter claims he would be prejudiced by their surprise testimony.

In response, Defendants argue that their initial disclosures named witnesses including "… individuals named within the documents produced herewith and Plaintiff's medical records." Because these three individuals were named in Hunter's medical records, they were properly disclosed. Furthermore, Hunter did not request the deposition of any witness prior to the discovery cutoff, so he cannot now claim he is

prejudiced by the witnesses' "surprise" testimony—especially since Defendants disclosed the scope of the subject matter to which the witnesses would testify.

While the Court agrees that Defendants should have supplemented their disclosures to specifically name these witnesses, they were disclosed in Defendants' initial disclosures as individuals named within Hunter's medical records. Hunter had these documents and could have deposed any of these witnesses prior to the close of discovery. Hunter cannot now claim surprise or prejudice by the witnesses' testimony. All three witnesses will be permitted to testify at trial.

III.   **Defendants' Motions _in Limine_**

**Motion _in Limine_ No. 1:** To preclude any and all argument and evidence of medical treatment provided to other inmates.

Plaintiff has no objection; accordingly, this motion _in limine_ is **GRANTED**.

**Motion _in Limine_ No. 2:** To preclude all argument and evidence of Dr. Ritz's insurance or insurance policy.

Plaintiff has no objection; accordingly, this motion _in limine_ is **GRANTED**. _See Lawson v. Trowbridge_, 153 F. 3d 368, 379 (7th Cir. 1998) (citing _Larex v. Holcomb_, 16 F. 3d 1513, 1518 (9th Cir. 1994)) ("[E]vidence of insurance or other indemnification is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction.").

**Motion _in Limine_ No. 3:** To preclude any and all statements, testimony or argument about Wexford Health Sources, Inc., being a for-profit corporation or a "big" corporation or company.

In response, Hunter argues this motion should be denied as premature. While he does not intend to introduce evidence that Wexford is a "big" corporation as an abstract proposition, its status as a contractor to IDOC is relevant for the jury to understand the context of Dr. Ritz's involvement. Furthermore, Hunter argues, Wexford's status as a for-profit corporation that pays for inmates' outside medical care is relevant because it goes to motive for delaying care and controlling costs. Finally, Hunter states that Wexford's value may relate to Dr. Ritz's wealth, to the extent Dr. Ritz has an ownership interest in Wexford.

The Court agrees that evidence of Wexford's status as an IDOC contractor and a for-profit corporation could be relevant. Therefore, the Court **RESERVES RULING** on this motion.

**Motion *in Limine* No. 4:** To preclude any and all argument or evidence requiring specialized knowledge, education, or training from witnesses not qualified as experts—including, but not limited to precluding Hunter from offering causation testimony that surgery would have occurred had Dr. Ritz approved the referral request for a surgical consultation and/or that surgery would have successfully resolved his rectal prolapse.

In response, Hunter agrees that neither party should be permitted to offer testimony requiring specialized knowledge from any witness not qualified as an expert. Accordingly, this motion *in limine* is **GRANTED**.

**Motion *in Limine* No. 5:** To exclude any and all reference to any other litigation or claims in which any Defendant or Wexford is or has been involved.

Plaintiff does not oppose this request and agrees it should apply in equal force to both sides. Accordingly, the motion *in limine* is **GRANTED**.

Hunter argues, however, that if Dr. Ritz denies knowledge in 2021 of his rectal prolapse despite the filing of this lawsuit due to prisoners suing him often, then he will have opened the door to questions about the number of lawsuits filed against him during the relevant period. Because this such testimony is speculation at this point, the Court **RESERVES RULING** on Hunter's request.

**Motion *in Limine* No. 6:** To preclude any instruction from Hunter or his counsel to the jury to send a message to Defendants or act as the conscience of the community.

Plaintiff opposes this motion, arguing that "send a message" arguments are permissible when punitive damages are relevant to a party's claim. Hunter also points to the Seventh Circuit Pattern Instruction for punitive damages, which explains that the purpose is to serve as a warning to Defendant and others. *See* Seventh Circuit Pattern Jury Instruction 7.28. If the jury receives this instruction, the Court agrees that Hunter should be allowed to make this argument. Accordingly, the Court **RESERVES RULING** on this motion.

**Motion *in Limine* No. 7:** To preclude any documents, testimony, or other evidence not expressly produced in written discovery.

Hunter does not object to this motion, so the motion is **GRANTED.** Hunter also asks the Court to caution Defendants not to introduce documentary evidence that was not produced in discovery by having a witness testify to the contents of the documents, pursuant the "best evidence" rule, Federal Rule of Evidence 1002. Specifically, Hunter

notes that Dr. Babich testified that Wexford's collegial review process relied on guidelines used by insurance companies, such as "Millman" and "InterQual." Because these guidelines were never produced and their contents are hearsay, Defendants should not be allowed to rely on the supposed content of these guidelines.

The Court will not caution Defendants in a pretrial order to follow the Federal Rules of Evidence. If Defendants attempt to introduce improper evidence, Hunter may object at that time.

**Motion *in Limine* No. 8:** To preclude Hunter from introducing any news articles, media stories, or opinion pieces about Wexford and/or its employees.

Plaintiff has no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion *in Limine* No. 9: T**o preclude Hunter's counsel from describing themselves as "specialists in § 1983 litigation," informing the jury of their verdict or settlement record in prisoner medical cases, or stating that they only accept "valid" claims or otherwise implying this case is meritorious based on their involvement. Defendants argue such statements would be highly prejudicial and must be barred.

Hunter has no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion *in Limine* No. 10:** To preclude Hunter from introducing any grievances, responses to grievances, or letters. Defendants argue the grievances contain statements of inadmissible hearsay, for which no exception to the rule against hearsay applies. Defendants assert, however, that they could use the grievances to impeach Hunter *or* for the truth of the matter asserted, because such statements would be offered by a party opponent and are admissible under Federal Rule of Evidence 801(d)(2).

Hunter opposes this motion, arguing that the grievances may be admissible as non-hearsay or under several exceptions to the hearsay rule. The Court agrees that the grievances may be admissible under the Federal Rules of Evidence and, thus, **RESERVES RULING** at this time.

**Motion** *in Limine* **No. 11:** To preclude Hunter's non-retained experts from offering testimony of "criticisms" that do not rise to the level of deliberately indifferent medical care or, in the alternative, medical negligence. Defendants argue that "concerns" or "criticisms" about the care Hunter received without regard to whether those concerns or criticisms rise to the level of deliberate indifference would prejudice them.

In response, Hunter argues that deliberate indifference—a question for the jury—is typically proven by circumstantial evidence and can be inferred from a medical professional's "substantial departure from accepted professional judgment, practice or standards" sufficient to infer indifference to the patient's medical needs. *See* Seventh Circuit Pattern Jury Instruction 7.17. Thus, his non-retained experts should be able to offer their criticisms of Dr. Ritz's acts and omissions so that the jury can decide whether the conduct rose to the level of deliberate indifference. The Court agrees and **DENIES** this motion.

**Motion** *in Limine* **No. 12:** To preclude Hunter's counsel from asking questions related to standard of care. Dr. Ritz argues this is not a negligence case; thus, the standard of care is inapplicable to any claim or defense and will only confuse the jury.

Hunter objects to this motion for the reasons stated above in response to Motion *in Limine* No. 11. While the Court agrees that Hunter's non-retained experts should be

able to offer their criticisms of Dr. Ritz, the Court finds that questions specifically related to the "standard of care" may confuse or mislead the jury. For this reason, the Court **GRANTS** Defendants' motion *in limine* as it specifically pertains to questions regarding the "standard of care."

Motion *in Limine* **No. 13:** To preclude Hunter from offering evidence or making the argument that Wexford and/or Dr. Ritz is responsible for the actions of its employees or the medical unit at Pinckneyville in general. Defendants argue that the introduction of any such evidence or argument is irrelevant and unfairly prejudicial under Rules 401 and 403. They further contend that any suggestion that Dr. Ritz should have followed-up with Pinckneyville medical providers, or that he is responsible for those providers' failure to follow up, should be barred.

In response, Hunter argues that Dr. Ritz is improperly seeking to take away from the jury a basic question in this case: the extent to which he bears responsibility for the four-year delay in obtaining a surgical consult for Hunter, particularly for the lack of follow-up after Dr. Ritz originally denied the surgical consult request. Hunter asserts that the answer to this question must be developed through the evidence at trial. The Court agrees. Defendants have not provided any explanation as to how this evidence is unfairly prejudicial, and Dr. Ritz's role within Wexford is relevant to the question of his responsibility. As such, this motion *in limine* is **DENIED**.

Motion *in Limine* **No. 14:** To preclude Hunter from asking the jury for damages using a *per diem* formula. Defendants argue that Hunter has not provided them with any basis for such a figure, as required by the Court's Order of May 17, 2024.

Hunter disagrees and states that on June 6, 2024, he notified defense counsel that he would be requesting between $2 million and $12 million from the jury, as well as proportional punitive damages, based on the pain and suffering he endured, compounded by its long duration. Hunter makes further arguments claiming that the case cited by the IDOC Defendants and the Court in its May 17, 2024 Order on the parties' early motions *in limine* is an outlier in the Seventh Circuit and that he should not have to abide by an unpublished opinion by a magistrate judge.

Hunter could have made these arguments in response to the IDOC Defendants' early motion *in limine*, but instead he told the Court that he did not plan to offer any specific dollar amount or range of dollars for his pain and suffering at trial. He explained that, rather than make a per diem argument, he may suggest that the jury consider different ways to think about what they should award. Now he implies that the Court was wrong to require him to disclose the basis for a specific noneconomic damage award, but, in any event, states that he has provided a specific range to Defendants.

In its May 17, 2024 Order, the Court found that per diem arguments are permissible under Seventh Circuit law if an appropriate cautionary instruction is given. The Court further instructed Hunter that if he decided to ask for a specific amount from the jury, he should provide Defendants with the basis for that figure. Hunter has now done so and will be permitted to make a per diem argument to the jury. The Court will instruct the jury that any such figures proposed by counsel are not evidence but merely arguments that they are free to disregard. Thus, Defendants' motion is **DENIED**.

**Motion** *in Limine* **No. 15:** To preclude Hunter from referencing, introducing, or discussing *Lippert* and/or *Rasho* expert reports, consent decrees, or any other documents related to opinions or findings regarding prisoner medical care or mental health care in another case.

Hunter argues this request is premature. While admitting the reports for the truth of their contents would be hearsay, Hunter asserts that they could be introduced for other purposes, such as notice or impeachment. Furthermore, any question of authentication should be addressed at the time of introduction. The Court agrees and **RESERVES RULING** on this motion.

**Motion** *in Limine* **No. 16:** To preclude Hunter from offering into evidence Wexford, IDOC, or Pinckneyville policies, protocols, or directives. Defendants aver that such evidence is irrelevant, substantially more prejudicial than probative, and constitutes inadmissible hearsay. Even if Dr. Ritz violated any such provisions, that does not create a reasonable inference that Dr. Ritz is liable for Hunter's claim.

Hunter agrees that while a violation of a policy does not equal a Constitutional violation, deliberate indifference can be demonstrated in many ways, including that the defendant did not follow protocols.

The Court **RESERVES RULING** on this motion until it is clear what policies, protocols, or directives Hunter may seek to introduce at trial.

**Motion** *in Limine* **No. 17:** To bar Hunter from referencing, suggesting, introducing, or presenting the idea that collegial review is unconstitutional, that Defendants engaged in any cost-saving measures through collegial review, or any other

form of presentation of a *Monell*-type claim. Defendants note that the Court previously dismissed the *Monell* claim against Wexford, and the Seventh Circuit has previously held that Wexford's collegial review process is not facially unconstitutional. To the extent Hunter suggests that the refusal to send him off-site for a surgical consultation was a cost-saving measure, this argument is unsupported by any evidence and will only confuse the jury.

Finally, Defendants assert that Hunter should be barred from eliciting testimony from witnesses not knowledgeable of the collegial review process. For example, Hunter questioned Dr. Meeks (an IDOC employee) at length during his deposition regarding the collegial review process, even though Dr. Meeks indicated he was not directly involved, forcing Dr. Meeks to offer speculative testimony. Such testimony by Dr. Meeks, and any other witness unfamiliar with the collegial review process, should be barred as it is speculative and will only confuse the jury.

Hunter does not oppose the exclusion of any argument that a policy is unconstitutional in the abstract. But whether Dr. Ritz used collegial review to discourage or delay Hunter's surgery is a factual question for the jury. Even if the collegial review process is not facially unconstitutional, Hunter argues, it still could have been abused to save money—and cost-savings could be motivation for the deliberate indifference alleged to have occurred here. The Court agrees and **DENIES** this portion of the motion *in limine*. Hunter did not respond to Defendants' argument that testimony by Dr. Meeks or any other witness unfamiliar with collegial review should be barred, and so that portion of the motion is **GRANTED.**

**Motion** *in Limine* **No. 18:** To bar Plaintiff's counsel's letter dated June 7, 2019. Defendants suggest the entire letter lacks foundation and is inadmissible hearsay not subject to any exception. Furthermore, the letter contains counsel's interpretation of facts that the jury will be asked to decide in this case. For example, the letter states that Hunter has been requesting medical attention for rectal pain and bleeding since early 2018. Dr. Ritz argues that fact is very much in dispute in this case. Moreover, in addition to the letter itself being a hearsay statement, it contains statements that also constitute hearsay and inadmissible opinion testimony.

In response, Hunter argues the June 2019 letter is "crucial evidence of notice." Moreover, Defendants admit they were notified of the letter and have no basis to dispute its authenticity. Hunter admits, however, that certain redactions may be appropriate.

The Court agrees the letter is admissible for the purpose of notice, not for the truth of its contents. However, the Court **RESERVES RULING** on this motion at this time and **ORDERS** the parties to prepare the appropriate redactions.

**Motion** *in Limine* **No. 19:** To bar Hunter and his witnesses from testifying at trial regarding the causation of any medical or mental health condition. Defendants argue Hunter is not a physician or psychiatrist, so his lay opinions about the cause of his medical conditions should be barred. Furthermore, while Hunter has been permitted to disclose non-retained experts Dr. Meeks, Christine Brown, and Glen Babich out of time, he should not be permitted to elicit testimony causation testimony.

Hunter opposes this motion and indicates he may seek to offer testimony about the many potential causes of rectal prolapse to provide context and to prevent the jury from making false assumptions about the cause of his prolapse.

While Hunter himself cannot provide lay opinions about the many causes of rectal prolapse, Hunter's non-retained experts may testify as to his medical care and their own knowledge of Hunter's rectal prolapse based on their treatment of his condition. However, as non-retained experts, Hunter's witnesses may not testify as to causation. Accordingly, Defendants' motion *in Limine* is **GRANTED**.

**Motion *in Limine* No. 20:** To bar Hunter from offering evidence or testimony referencing any "Golden Rule" appeal, *i.e.*, asking the jury to place itself in Hunter's position or base damages on a scenario whereby jurors hypothetically sustain injuries or damages similar to that purportedly sustained by Hunter.

Hunter claims this request is too broad and speculative and that the Court should deny it because Defendants seek to preclude vague trial tactics rather than specific evidence. Hunter also avers that the Seventh Circuit does not apply a bright-line rule to "Golden Rule" arguments and instead instructs courts to consider whether the statements as a whole appeal to the jury to substitute sympathy for judgment. Hunter points to cases where a golden rule argument was found to be harmless error where the jury was properly constructed concerning the law it should apply, and he argues he should be able to ask jurors to draw on their own experiences and common sense to understand what he experienced.

It is certainly permissible for jurors to be told to use their common sense and life experiences when considering the evidence in the case. *United States v. Friedman*, 971 F.3d 700, 714 (7th Cir. 2020) ("Juries are permitted to draw upon their own life experiences and common sense in reaching their verdicts."). What counsel cannot do is ask the jurors to put themselves in Hunter's shoes. *Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876, 891 (7th Cir. 2024) ("Of course, '[a]n appeal to the jury to imagine itself in the plaintiff's position is impermissible . . . .'") (quoting *Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985)); *see also Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984) ("A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.") (quotation omitted); *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (holding that the district court correctly granted the government's motion *in limine* precluding defendant from making a "Golden Rule" appeal to the jurors).

Accordingly, Defendants' motion is **GRANTED**. Hunter is barred from specifically asking the jurors to put themselves in Hunter's position or making any "Golden Rule" arguments. Hunter may ask the jurors to draw on their own life experiences, however, and to use their common sense when evaluating the evidence.

## IV. Plaintiff's Motions *in Limine*

**Motion *in Limine* No. 1:** To exclude non-party witnesses from the courtroom prior to their testimony.

Defendants have no objection; accordingly, this portion of the motion is **GRANTED**. Counsel will be responsible for policing the presence of non-party witnesses in the courtroom and promptly notifying the Court if there is an issue.

**Motion** *in Limine* **No. 2:** To bar Defendants from introducing Hunter's criminal convictions and prison disciplinary record. Hunter argues that Rule 404(b) prohibits the introduction of prior bad acts to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(2). And even when bad-acts evidence has a non-propensity purpose, it may not be introduced at trial if that relevance is substantially outweighed by the likelihood of unfair prejudice, confusion, or wasted time. *See* FED. R. EVID. 403.

In response, Defendants indicate that if Hunter testifies, they intend to impeach his credibility with his prior convictions pursuant to Rule 609. Specifically, Defendants will elicit testimony that Hunter was incarcerated at the relevant time for attempted armed robbery with a firearm. Defendants argue the probative value of this evidence outweighs its prejudicial effect considering Hunter's criminal acts occurred at the time he claims his medical condition caused him great pain and prohibited him from conducting normal activities. And Hunter's credibility is important both to the jurors' evaluation of his testimony and their understanding of how medical personnel assessed Hunter. Defendants do not intend to introduce evidence of Hunter's prison disciplinary records or other "bad acts" unless Hunter opens the door to such evidence.

Under Rule 609, evidence of a felony conviction "must be admitted, subject to Rule 403, in a civil case." FED. R. EVID. 609(a)(1)(A). Rule 403 allows the Court to exclude

relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Evidence of prior convictions is not admissible to "stink up" a witness's character, but only "to shed light on the witness's credibility." *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir. 1992).

Here, while armed robbery is not normally a crime that sheds any light on a person's credibility, the fact that Hunter committed the crime while allegedly suffering from a debilitating condition has probative value. At the same time, the fact that Hunter was convicted of attempted armed robbery with a firearm may cause the jury to see him as a "bad person" not because he is a liar but because he attempted to commit a dangerous crime. *See Coles v. City of Chicago*, No. 02 C 9246, 2005 WL 1785326, at *3 (N.D. Ill. July 22, 2005) (allowing evidence of the defendant's armed robbery conviction would "expose plaintiff to the risk that a jury would reject his claim not because of doubts about his truthfulness, but because of conduct that has nothing to do with the events in question").

For these reasons, the Court will allow Defendants to elicit testimony regarding the fact of his felony conviction and the time period in which it occurred. Defendants will not be permitted to reference or elicit testimony regarding the details of Hunter's conviction, including that it was for attempted armed robbery with a firearm. Nor may Defendants reference any conviction prior or subsequent to the relevant time period. The Court will address specific objections to questions or testimony as they arise during trial. Accordingly, the Court **GRANTS** the motion **in part and RESERVES RULING in part**.

**Motion** *in Limine* **No. 3:** To bar Defendants from introducing evidence of their own good character, including commendations and awards. Hunter argues that such evidence is entirely irrelevant and prohibited by Rule 404(a).

Defendants have no objection as long as Dr. Ritz can testify as to his professional credentials including education, training, and certifications. Accordingly, this motion is **GRANTED** subject to each witness being allowed to testify to their credentials.

**Motion** *in Limine* **No. 4:** To bar any reference to jurors' pecuniary interests as taxpayers.

Defendants have no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion** *in Limine* **No. 5:** To bar any reference to claims that are no longer in the case, individuals who are no longer Defendants, or individuals who should be Defendants. Hunter argues the jury should not hear that the Court granted summary judgment for IDOC and Wexford on some claims, nor should it hear evidence suggesting that some other employees of IDOC or Wexford should have been a party, *i.e.*, an "empty chair defense."

Dr. Ritz agrees evidence that Hunter made claims against the former defendants and/or the disposition of those claims should be barred. However, Dr. Ritz argues that he should be able to instruct the jury to consider his conduct, and only his conduct, when rendering a verdict. He also contends he is entitled to an "empty chair" defense and may reference Hunter's failure to name and sue certain individuals.

The Court **GRANTS** this motion **in part and DENIES it in part**. No evidence or testimony shall be elicited regarding Hunter's claims against the former defendants or

the disposition those claims. However, Dr. Ritz will be permitted to present evidence that another party was the proximate cause of Hunter's injuries. *See Plyler v. Whirlpool Corp.*, No. 08 C 6637, 2012 WL 469883, at *3 (N.D. Ill. Feb. 13, 2012) ("Both Illinois courts and federal courts sitting in diversity have held that such evidence may establish that the proximate cause of the alleged injury was not the defendant but was in fact a third entity not party to the lawsuit, including prior parties that have since settled with the plaintiff.").

**Motion** *in Limine* **No. 6:** To bar evidence relating to settlement.

Defendants have no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion** *in Limine* **No. 7:** To bar any suggestion that a jury verdict against Defendants may have an adverse employment, licensing, or criminal consequence for them. Hunter argues Defendants should not be permitted to elicit sympathy by insinuating to the jury that a finding of liability against them will cause them to lose their jobs or professional licenses or to be charged criminally.

Defendants have no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion** *in Limine* **No. 8:** To bar any reference to individual Defendants' financial inability to pay a judgment for compensatory damages.

Defendants have no objection; accordingly, this motion *in limine* is **GRANTED**.

**Motion** *in Limine* **No. 9:** To bar Defendants and other IDOC witnesses from wearing uniforms or other correctional attire during the trial. Hunter asserts that if Defendants and other IDOC witnesses appear in correctional uniforms or attire, the jury

may be subtly influenced to credit their testimony over the testimony of Hunter's witnesses.

Dr. Ritz indicates he "has no intention of appearing at trial in a doctor costume" but rather will appear in a suit, which is his normal everyday attire. The Court also will not direct any IDOC witness to wear certain clothing. Accordingly, this motion *in limine* is **DENIED**.

**Motion *in Limine* No. 10:** To bar argument that prisoners are litigious and any reference to Hunter's prior civil suits. Hunter asserts that a suggestion that he, or prisoners generally, are litigious, injects prejudice against prisoners into the trial and invites the jury to assume that this case lacks merit because Hunter is a prisoner. It also could imply that Dr. Ritz was entitled to ignore Hunter's lawsuit.

Defendants oppose this motion to the extent Hunter intends to develop a theme that the filing of this case should have caused Dr. Ritz to take some specific action. If that is the case, they argue, Hunter will have opened the door to Dr. Ritz's testimony that civil claims from inmates are commonplace when practicing correctional medicine and do not cause him alarm.

Because this motion is highly dependent on the testimony that has been elicited and the evidence sought to be admitted, the Court **RESERVES RULING** at this time.

**Motion *in Limine* No. 11:** To bar Defendants from referring to people as "offender," "inmate," or any similar such label, instead of by their names.

Defendants argue it will be impossible not to use the words inmate or prisoner throughout the trial, but they note that Dr. Ritz intends to refer to Hunter as "patient," "Plaintiff," or "Mr. Hunter."

This motion is **GRANTED in part and DENIED in part.** Defendants may reference Hunter as an inmate or prisoner where necessary but may not use other labels or descriptions such as felon, convict, or criminal.

**Motion *in Limine* No. 12:** To bar details of Hunter's spinal condition, including that he had surgery because a bullet was lodged in his back that posed a risk to his spine.

In response, Defendants assert that Hunter intends to call Dr. Jerrod Noble as a witness. Dr. Noble treated Hunter for the bullet lodged in his spine and incidentally found that Hunter had a rectal prolapse. Defendants argue that Hunter cannot call Dr. Noble as a witness and then seek to bar Defendants from exploring the care that he provided, particularly when Hunter's medical records document the bullet in his spine. Defendants further argue that they should be permitted to offer evidence that a cause other than the rectal prolapse caused Hunter pain, that neither Dr. Noble nor Saint Louis University immediately referred Hunter for emergent evaluation by a colorectal surgeon, that the bullet in Hunter's spine could impact the efficacy of Hunter's most recent surgery, and that Dr. Ritz approved the referral request for Hunter to receive the laminectomy at Saint Louis University to treat the sequelae of the bullet lodged in his spine, which is probative to Hunter's claim of deliberate indifference with regard to his rectal prolapse.

For all the reasons cited by Defendants, the Court agrees that evidence of Hunter's spinal condition and treatment is relevant and admissible. This motion *in limine* is **DENIED**.

**Motion *in Limine* No. 11:** To bar discussion of the content of any emails discussing counsel's 2019 letter. Hunter argues that Dr. Ritz testified vaguely that an email concerning the 2019 letter contained some suggestion that Dr. Lehman, the then-medical director of Wexford, would address Hunter's situation. But since Dr. Ritz asserted attorney-client privilege over the communication in question and never produced the email, Dr. Ritz should be barred from relying on the supposed communication from Dr. Lehman as an excuse for his inaction.

In response, Defendants note that Hunter designated this page of Dr. Ritz's testimony in his Rule 26(a)(3) disclosures. Furthermore, the testimony was offered while Dr. Ritz was serving as Wexford's Rule 30(b)(6) witness, not during his deposition as a party-defendant. To avoid confusing the jury, Dr. Ritz suggests that Hunter be allowed to reference the email string so that Hunter can demonstrate that Dr. Ritz was a recipient of an email regarding the June 2019 letter, and then permit Dr. Ritz to testify, based on his own personal customs and practices, why he did not personally respond to the 2019 letter. The Court finds this to be suggestion appropriate and thus **DENIES** Hunter's motion *in limine*.

**Motion *in Limine* No. 11:** To bar hearsay evidence concerning Hunter's canceled appointment at Northwestern after his parole in 2022. During his deposition, Hunter testified that an unnamed person from Northwestern informed him that an appointment

to treat his rectal prolapse would have to be rescheduled because Northwestern had not yet received his medical records. Hunter asserts this testimony is hearsay and must be barred, particularly because Defendants could have sought to depose the unknown Northwestern representative but did not, and they also failed to seek any medical records from Northwestern.

Defendants argue this evidence about Hunter's scheduled appointment at Northwestern is relevant to (1) Dr. Ritz's conduct in requesting the records from Hunter's 2012 surgery before approving Hunter for surgery, and (2) Hunter's damages claims. That is, if Northwestern wanted Hunter's prior medical records, such evidence is relevant to Dr. Ritz also wanting his records before approving care. They further assert such evidence is not hearsay or fits within an exception.

The Court disagrees that such testimony is not hearsay—Defendants claim it is not being offered for the truth of the matter, but that's exactly what Defendants want to offer it for. They want to show that Northwestern also would not schedule an appointment for Hunter without first reviewing his prior medical records.

Even if it is hearsay, Defendants argue, Rule 807 permits hearsay if certain conditions are met. Rule 807, the "residual exception," allows hearsay if the statement is (1) supported by sufficient guarantees of trustworthiness and (2) it is more probative on the point for which it is offered than any other evidence the proponent can obtain through reasonable efforts. FED. R. EVID. 807. Defendants assert that there is a sufficient guarantee of trustworthiness because Hunter's statement actually weakens his claim against Dr Ritz. Thus, there is no reason for him to lie about it. Defendants also claim they could

not obtain any other evidence through reasonable efforts that Northwestern refused to schedule Hunter's appointment unless they had his prior records.

The Court finds it curious that Defendants want to introduce evidence of Hunter's prior convictions because it could demonstrate his lack of credibility, while also claiming he is credible enough for the Court to admit his hearsay statement under the residual exception rule. Defendants cannot have it both ways. The Court also finds that Defendants could have at least sought Hunter's medical records from Northwestern. For these reasons, the Court finds that Rule 807 does not apply, and Hunter's motion *in limine* is **GRANTED**.

**Motion *in Limine* No. 15:** To bar evidence and argument that Hunter was released and reincarcerated. Hunter asserts the fact that he was incarcerated prior to 2017, along with his release and reincarceration in 2022, would either confuse the jury or prejudice them against him as a repeat offender. Moreover, such evidence is not relevant to whether Defendants were indifferent to his medical needs.

Hunter also asserts that although his surgery occurred in 2024, that fact is not admissible and should not be disclosed to the jury. He claims the jury will be confused about the intervening period.

In response, Defendants argue that Hunter's actions while on parole versus his actions while in prison are highly probative of his damages claims because, although he filed a grievance in 2014 about his prolapse symptoms returning, he sought no medical care for it between November 2016 (when he was paroled) and November 2017 (when he was reincarcerated). Defendants argue that Hunter's lack of effort to obtain care for his

rectal prolapse after 2014, especially during the periods when he was not incarcerated, makes his damages claims less probable.

While the Court agrees that evidence of Hunter's failure to obtain medical care between 2016 and 2017 while he was on parole has some probative value, that value is outweighed by the prejudice Hunter would suffer if the jury was made aware of his release and reincarceration. Accordingly, this portion of Hunter's motion *in limine* is **GRANTED**.

With regard to Hunter's surgery occurring in 2024, Defendants argue the evidence should be barred for a different reason: no admissible testimony can establish that his condition in 2024 was the same condition he suffered from between 2017 and 2022. The Court **RESERVES RULING** on this issue until it can review the evidence admitted at trial.

**Motion *in Limine* No. 16:** To bar reference to the time taken to file the complaint and seek a preliminary injunction. Hunter intends to introduce evidence of his 2019 letter from counsel and his 2021 complaint to show that Defendants had notice of his rectal prolapse but did nothing to address it. He also wishes to introduce his 2022 motion for preliminary injunction (and Defendants' quick response thereafter) to show that Defendants ignored his lawsuit until they realized they would shortly face scrutiny from a court.[3] Hunter argues, however, that Defendants should not be permitted to counter

---

[3] As discussed above, pleadings are not evidence. The motion will not be admitted into evidence.

that he was slow to file suit or move for an injunction. He claims such timing evidence and argument is irrelevant to Defendants' liability, and it is likely to confuse the jury.

Defendants argue that Hunter cannot have it both ways. He cannot claim he was subjected to unnecessary pain and suffering because it took so long for him to get surgery, while also precluding Defendants from making any argument about the lapse of time between Dr. Ritz's conduct in 2018 and the filing of the 2019 letter and 2021 complaint.

The Court agrees this evidence is relevant to the issue of damages, and the likelihood of confusing the jury is low. Thus, Hunter's motion is **DENIED**.

**IT IS SO ORDERED.**

DATED:   July 18, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**