## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

Antonio Hunter,

          Plaintiff,

v.

                            Case No.  21-cv-271-NJR

Stephen Ritz,

          Defendant.

### PLAINTIFF'S MOTION *IN LIMINE* REGARDING DEFENDANT'S COMMUNICATIONS RELATING TO 2019 LOEVY & LOEVY LETTER

Plaintiff Antonio Hunter, by and through his undersigned counsel, respectfully moves the Court *in limine* for an order compelling Dr. Ritz to produce the email string concerning a 2019 letter about Plaintiff's medical condition. Alternatively, Plaintiff asks the Court to clarify or reconsider its ruling that would allow Dr. Ritz to testify about a statement purportedly made by Dr. Lehman in these emails, the specifics of which have been withheld as privileged. Dr. Ritz's anticipated testimony is self-exonerating, and Plaintiff should be permitted to impeach him with the actual content of the communications. In support of his motion, Plaintiff states as follows:

Plaintiff brings this motion in the wake of the Court's ruling on Plaintiff's motion *in limine* No. 13.  ECF 177 at 23. Motion *in limine* No. 13 concerned internal Wexford communications about a letter Loevy & Loevy had sent to Wexford in June 2019, alerting Dr. Ritz that Mr. Hunter's prolapse still had not been fixed and that Mr. Hunter was still suffering from it.  ECF 168 at 10.

At his Rule 30(b)(6) deposition in this case, Dr. Ritz testified that he and other Wexford executives exchanged multiple emails about this letter. Plaintiff counsel asked Dr. Ritz what was said in these communications, but defense counsel asserted that they were covered by the attorney-client privilege, and Dr. Ritz refused to discuss them. Or rather, he refused to discuss all the communications except one: during the deposition, Dr. Ritz volunteered that in one of the emails

regarding the letter, Dr. Thomas Lehman, a Wexford executive who is now dead, said he would

"take care of" the issues that the letter raised:

> Q    [W]ere there any steps taken in regards to this
> [2019 Loevy] letter as related to Mr. Hunter's medical
> care?
> A    I didn't see any specific evidence of any steps
> taken that was documented.· It doesn't mean it didn't
> happen.· ***There was an e-mail that -- from Dr.
> Lehman that alluded to that he was going to
> communicate something to someone that he was, I
> think, was going to take care of it.***

**Ex. 1** at 31:20-32:3. When Plaintiff counsel followed up and asked for more detail about ***that***

communication, Dr. Ritz's attorney re-asserted privilege, and Dr. Ritz refused to say more:

> Q.  And did you have any indication that Dr. Lehman
> was going to do anything specifically related to Mr.
> Hunter's medical care?
> A.   Other than what I attested to earlier, his e- mail
> that just alluded acknowledging his communications
> with Mr. Ebbitt and that ***he was going to take some
> form of action****. . . .*
> Q.  And did his e-mail indicate that he was going to
> do anything specifically related to Mr. Hunter's
> medical care?
> MS.  FRITZ:   ***I'm going to object because that's
> attorney-client privilege.***
> Q.   Okay.  Are you going to take your attorney's
> advice and not answer?
> A.        ***Yes***.

**Ex. 1** at 42:3-21.  This line of questioning appears on pages 13 through 45 of Dr. Ritz's 30(b)(6)

deposition. *See* **Ex. 1**. So circumscribed, Dr. Ritz's deposition testimony will permit him to testify

at trial that he reasonably believed Mr. Hunter's medical needs were being addressed.

Dr. Ritz's selective assertion of privilege is classic sword-and-shield abuse:  a party asserts

that a series of communications about a potentially damaging letter are privileged—except one of

those communications that appears, without context, to absolve him. Because of this abuse,

Plaintiff's motion *in limine* No. 13 sought to bar Dr. Ritz's testimony about Dr. Lehman's statements entirely.  ECF 168 at 11-12.

 In in opposition to Plaintiff motion *in limine* No. 13, Dr. Ritz responded as follows:

> Defendant Ritz suggests that this Court permit Plaintiff to reference the email string so that Plaintiff can demonstrate that that Defendant Ritz was one of seven recipients of an email regarding the June 2019 letter, and permit Defendant Ritz to testify, based on his own personal customs and practices, why he did not personally respond to the letter even assuming that he saw the email, ***including reference to Dr. Lehman***.

ECF 173 at 10 (emphasis added).  The Court appears to have adopted Dr. Ritz's position—though the Court did not specifically endorse Dr. Ritz's reference to testimony about Dr. Lehman's email:

> Dr. Ritz suggests that Hunter be allowed to reference the email string so that Hunter can demonstrate that Dr. Ritz was a recipient of an email regarding the June 2019 letter, and then permit Dr. Ritz to testify, based on his own personal customs and practices, why he did not personally respond to the 2019 letter. The Court finds this to be suggestion appropriate and thus DENIES Hunter's motion *in limine*.

ECF  177 at 23.

 In light of the Court's ruling on motion *in limine* No. 13, Plaintiff respectfully submits that several matters regarding Wexford's response to the 2019 letter should be resolved before trial.

 ***First***, Plaintiff seeks clarification about whether the Court intended specifically to adopt Dr. Ritz's proposal that he be permitted to give his self-exonerating testimony about Dr. Lehman's purported statement that Lehman would "take care of" the issue, or whether the Court is permitting Dr. Ritz to testify simply about his custom in responding to communications like the 2019 Loevy letter. Plaintiff respectfully suggests the Court should not permit discussion of Dr. Lehman's communication, as that would enable Dr. Ritz to perpetuate the exact sword-and-shield abuse that courts guard against.

**Second**, to the extent that the Court did intend to permit Dr. Ritz to offer the self-exonerating testimony about Dr. Lehman's statement, Plaintiff respectfully submits that any privilege that might exist over the remaining communications should now be considered waived, and that defense counsel produce all the communications about the 2019 letter that Dr. Ritz reviewed for his Rule 30(b)(6) deposition.[1] That is an appropriate remedy. *See Appleton Papers, Inc. v. E.P.A.,* 702 F.3d 1018, 1024 (7th Cir. 2012) ("Generally, a party that voluntarily discloses part of a conversation covered by the attorney-client privilege waives the privilege as to the portion disclosed and to all other communications relating to the same subject matter"). That remedy is called for by Federal Rule of Evidence 502, which provides that when a party in a federal proceeding waives the attorney-client privilege or work-product protection, the waiver extends to undisclosed communications or information if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. *See* Fed. R. Evid. 502(a).[2]

**Third**, according to Dr. Ritz's testimony, the various emails responding to the 2019 Loevy letter may have had an intertwined legal and medical purpose. There is no privilege over such "dual purpose" documents, and they should be disclosed for that reason alone.

Communications about a *legal* response to a notice like the 2019 Loevy letter may sometimes be privileged as attorney-client communications. Communications about a *medical* response are not. And, it does not save the privilege of a communication to assert that it had both a legal and a non-legal (here, medical) purpose. Such communications are "dual-purpose"

---

[1]    Such production would be easy: at Plaintiff's the request, counsel for Dr. Ritz has agreed to make the other emails about the 2019 letter available for the Court's inspection at trial.

[2]    Without these documents, it would additionally violate the best evidence rule for Dr. Ritz to testify about the contents of documents that exist—*i.e.*, the email chain—but that would not be introduced at trial. Fed. R. Evid. 1002.

4

communications, and courts are uniform in holding that such documents are not privileged, and are subject to discovery. *See, e.g.*, *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84-cv-5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987) ("Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged.")

In his Rule 30(b)(6) deposition, Dr. Ritz repeatedly indicated that many of the communications about the 2019 Loevy letter had a dual purpose:

> A: There were communications via the e-mails that we've been discussing that apprised the regional medical directors and the administrative leadership of the state of the case, I suppose I could say. That – that's how I can answer that to the best of my abilities.
> Q: The state of the medical case?
> A: By--I'm talking the state administrative leadership for the -- our state of Illinois operational leadership. That's what I was referring to.
> Q: Okay. That informed them about the state of the medical case or the state of a potential legal case?
> A: ***There was information that referenced both***.

**Ex. 1** at 31:8-19.  Indeed Dr. Ritz testified that the medical and legal issues were intertwined:

> Q . . . . [W]hat did the e-mails do to try to address Mr. Hunter's medical care?
> A    As I attested earlier, they notified the regional medical directors and the clinical operations staff in Illinois about the legal and medical issues that were communicated through Mr. Ebbitt.
> Q   And what did they do only related to the medical issues?
> . . . .
> A · · They communicated the -- it's very hard to -- I cannot separate those two issues because of, I think, apparent previous litigation involved from this inmate. ***The two were very much intertwined***, so I can't really separate the two.

**Ex. 1** at 40:14-41:3. Dr. Ritz's testimony indicates that the communications constituted dual-purpose communications.  (Dr. Ritz suggested this was true of Dr. Lehman's "take care of it" email as well, *see* **Ex. 1** at 42:3-13.)

These are classic dual-purpose communications which, as dual-purpose communications, are not privileged. And notably, the purported dual-purpose nature of the communications absolves Dr. Ritz:  it would implicate Dr. Ritz if he and other Wexford executives had no *medical* response to the 2019 Loevy letter and instead treated it strictly as a strictly *legal* problem. Testimony that their response was both legal and medical helps Dr. Ritz—but it also means that the communications are not privileged and must be disclosed.

*      *      *

For the above reasons, Plaintiff respectfully requests that the Court compel Defendant Ritz to produce the emails or prevent Dr. Ritz from testifying about the purported email from Dr. Lehman, or in the alternative, prevent Dr. Ritz from testifying about the purported email from Dr. Lehman.  An *in camera* review of the emails to determine if they qualify as privileged may be warranted.

Respectfully submitted,

By:  /s/ Stephen Weil

*One of Plaintiff's Attorneys*

Julia Rickert
Stephen Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
weil@loevy.com