IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antonio Hunter, | |
| Plaintiff, | |
| v. | Case No. 21-cv-271-NJR |
| Stephen Ritz, | |
| | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RENEWED MOTION FOR A DIRECTED VERDICT**

Defendant Stephen Ritz's renewed motion for a directed verdict (Dkt. 189) should be denied. He contends that no reasonable jury could find in Plaintiff's favor, making judgment under Fed. R. Civ. P. 50(b) appropriate. But Defendant's entire motion is premised on mischaracterizations of the evidence, irrelevancies, and a failure to acknowledge his own admissions at trial.

To prevail on Plaintiff's deliberate-indifference claim, he needed to show "he suffered from an objectively serious medical condition and that the individual defendant was deliberately indifferent to that condition." *Hunter v. Illinois Dep't of Corr.*, No. 3:21-CV-271-NJR, 2023 WL 6311474, at *7 (S.D. Ill. Sept. 28, 2023). According to Defendant, "Plaintiff cannot show that he had a serious medical need, cannot show that Dr. Ritz consciously failed to take reasonable measures to provide treatment for a serious medical need, and cannot show that as a result of Dr. Ritz's actions or inaction, Plaintiff was harmed." Dkt. 189 ¶ 6.

Defendant's first contention—that Plaintiff cannot show he had a serious medical need—must be rejected out of hand. Defendant conceded at trial that this element was satisfied. *See* Dkt. 208 (Trial Transcript, Day 4) at 642:1–3. And even if he had not made this concession,

1

Plaintiff's rectal prolapse (ultimately corrected through surgery) clearly required treatment, which is all that is needed to satisfy the "serious medical need" element of a deliberate indifference claim. *See Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019).

The second contention—that the evidence is insufficient to show Defendant consciously failed to take reasonable measures to provide treatment to Plaintiff—is also belied by Defendant's own concessions at trial. While on the stand, Defendant himself admitted that the "alternative treatment plan" he created included no treatment. *See* Dkt. 207 (Trial Transcript, Day 3) 419:17–23. Rather than provide treatment, he directed that past surgical records be obtained, but he put no deadline in place and never followed up, though he concedes he could have done so. Then when he was reminded in 2019 and 2021 that Plaintiff was still suffering and had received no treatment, he still failed to act. That Defendant failed to take reasonable measures is plain.

Defendant's third contention—that the evidence was insufficient to show Plaintiff was harmed by Defendant's action or inaction—is also flatly wrong. Defendant denied Plaintiff a surgical consult, and the evidence at trial showed that when Plaintiff finally got such a consult in 2022 (when Defendant was no longer in a position to stand in the way), surgery was recommended and eventually provided, correcting his prolapse. A jury could easily find that Defendant's denial of the surgical consult his colleagues requested in 2018—and his failure to correct course when he was repeatedly reminded of Plaintiff's situation—left Plaintiff to suffer needlessly.[1]

---

[1] Defendant attempts to blame Plaintiff for the failure to obtain his past records, asserting that Plaintiff intentionally hid them by saying "I don't know" when asked where the records could be found. Dkt. 189 ¶ 13. But the evidence at trial showed that Plaintiff was unsure what he was being asked and that he nevertheless correctly told Pinkneyville officials that his surgical records should be obtainable from Lincoln Correctional Center. In any event, the reason the records were

In sum, this Court's assessment at summary judgment of what a jury could find still holds:

> In 2018, Dr. Ritz knew that Hunter was in pain and discomfort due to his rectal prolapse, and he knew that both Dr. Myers and Dr. Butalid recommended a surgical consult. Dr. Ritz denied the referral for a colorectal surgery consult, in part, due to the lack of medical records from Hunter's 2012 surgery. While the ATP indicated that his case would be re-presented at collegial review once those records were obtained, when Dr. Ritz received the records in June 2019, he did nothing with them. He did not revisit Hunter's care in the collegial review process. He did not provide the records to Dr. Butalid or Dr. Myers so they could resubmit the referral for a surgical consult to collegial review. And he did not follow up with Dr. Lehman, Wexford's Chief Medical Officer, who he thought might be taking care of the issue. As a result, *three years* passed before Hunter saw a colorectal surgeon. A jury hearing this evidence could conclude that Dr. Ritz turned a blind eye to Hunter's serious medical needs in violation of the Eighth Amendment.

*Hunter*, 2023 WL 6311474, at *7. Defendant contends this assessment is wrong, asserting that he was justified in believing the staff at Pinkneyville would provide appropriate care. Dkt. 189 ¶ 17. But the staff at Pinkneyville had already let Defendant know that the care Plaintiff needed was beyond their ability to provide when they asked him in 2018 to approve a surgical consult.

Finally, Defendant argues that punitive damages are not warranted in this case because the evidence, he contends, does not show callousness or knowledge of wrongdoing. But a reasonable jury hearing Defendant's testimony and reviewing the documentary evidence could find that Defendant's failure to take action—even when repeatedly reminded that Plaintiff was suffering needlessly—was callous in the extreme.

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's renewed motion for a directed verdict.

---

not obtained in 2018 is irrelevant: Defendant would not be justified in denying Plaintiff medical treatment on the basis that decade-old medical records could not be found.

Respectfully submitted,

**ANTONIO HUNTER**

By: /s/ Julia Rickert

*One of Plaintiff's Attorneys*

Jon Loevy
Julia Rickert
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
julia@loevy.com