IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *ANTONIO HUNTER, #M33269,* )<br><br>                 Plaintiff, )<br><br> v. )<br><br> *ILLINOIS DEPARTMENT OF*<br>*CORRECTIONS, WEXFORD HEALTH*<br>*SOURCES, INC., STEVE MEEKS,*<br>*and STEPHEN RITZ,* )<br><br>                 Defendants. ) | Case No. 3:21-cv-00271-NJR |

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS AND DEFENDANT'S MOTION FOR SANCTIONS**

COMES NOW Defendant, Dr. Stephen Ritz, by and through his attorneys, and for his Response to Plaintiff's Motion for Sanctions and Motion for Sanctions respectfully submits as follows:

### **Introduction**

Plaintiff's Motion for Sanctions is dilatory and based on misstatements of fact and assumptions. It should be denied and Defendant should be awarded fees and costs in defending against it.

### **Procedural and Factual Background**

Plaintiff filed his Complaint in March 2021. *See* Doc. 1. On October 8, 2021, the Court entered a Scheduling Order requiring the completion of all discovery by August 22, 2022. *See* Doc. 51.

After Plaintiff failed to seek or conduct any discovery whatsoever by the discovery deadline, Plaintiff sought additional time to conduct discovery via the filing of a Motion for an

extension of time. *See* Doc. 69. The Motion was filed on the discovery deadline. *See* Doc. 69. The Court granted Plaintiff's Motion on August 26, 2022. *See* Doc. 74. While expressly noting Plaintiff's lack of diligence, the Court permitted Plaintiff "a short extension . . . for Plaintiff's counsel to receive updated medical records, schedule depositions of Defendants, and produce Plaintiff for deposition." [Doc. 74]. Plaintiff ignored the clearly limited scope of the Court's Order and attempted to circumvent the Court's benevolence by requesting the depositions of 10 fact witnesses in addition to the depositions of the parties. *See* Docs. 75 & 76-1, p. 3. Defendant was required to incur legal fees to enforce the scope of the Court's Order and file a Motion to Clarify on August 31, 2022. *See* Doc. 75. The Court granted the Motion to Clarify and confirmed that the extension granted by the Court permitted only the depositions of the parties. *See* Doc. 81.

On September 2, 2022, Plaintiff, in complete disregard of the Court's limited discovery extension that had since been reinforced via the Order granting the Motion to Clarify, disclosed Dr. David Shapiro as an expert pursuant to Rule 26(a)(2)(B). *See* Doc. 85. Defendant was again forced to incur unnecessary legal fees to file a Motion to Exclude. *See* Doc. 85. The Court, recognizing the untimeliness of this effort, agreed with Defendant and granted Defendant's Motion to Strike. *See* Doc. 118.

Plaintiff again disregarded the Scheduling Order by seeking leave to file an Amended Complaint on September 14, 2022. *See* Doc. 80. The proposed Amended Complaint included a totally new theory of liability – a state law negligence claim. *See* Doc. 80-1. This Motion was filed less than forty-eight hours prior to Plaintiff's deposition. Again, Defendant was forced to unnecessarily incur legal fees to oppose the Motion for Leave. *See* Doc. 83. The Court, again,

recognized the untimeliness of this filing and denied the Motion for Leave. *See* Doc. 118. In the

Order denying the Motion for Leave, the Court noted Plaintiff's continued dilatory conduct:

> The Wexford Defendants oppose the motion, noting that the deadline to amend the complaint was November 1, 2021, and Hunter never sought to extend that deadline. (Doc. 83). Moreover, the deadline to complete discovery was August 22, 2022. Prior to that date, Hunter failed to serve any requests for admissions, interrogatories, depositions, or conduct any expert discovery. Instead, on August 22, 2022, Hunter filed a Motion for Extension of Time to Complete Discovery. (Doc. 69). The Court gave Hunter "a short extension . . . for Plaintiff's counsel to receive updated medical records, schedule depositions of Defendants, and produce Plaintiff for deposition." (Doc. 74). Plaintiff instead tried to schedule depositions for 10 fact witnesses and attempted to notice a deposition for an expert witness. Defendants sought clarification of the discovery order, and the Court clarified that Hunter was only given an extension to depose Defendants. (Doc. 81).

> * * *

> This is not a case where Hunter proceeded pro se and was appointed counsel after discovery was well under way. Retained counsel filed the original complaint and could have completed discovery in a timely manner. Instead, they waited until the discovery deadline to request an extension of time, then attempted to complete discovery in a matter of two months. Moreover, the deadline to amend the complaint passed more than 10 months before Hunter sought leave to amend.

*See* Doc. 118, pp. 2 – 4.

Defendant was deposed on February 8, 2023, both as an individual defendant and as a

corporate designee for Wexford, which was still then a party-defendant. *See* transcript of the

deposition of Dr. Stephen Ritz attached hereto and incorporated herein by reference as Exhibit A

and transcript of the deposition of Wexford Health Sources, Inc. attached hereto and

incorporated herein by reference as Exhibit B.

Defendant disclosed during both depositions that he reviewed emails related to Mr.

Hunter as part of his preparation for the depositions, and that these emails related to Mr. Joe

Ebbitt's receipt of Plaintiff's counsel's June 2019 letter. *See* Exhibit A, pp. 69:19-70:25 and

Exhibit B, pp. 12:17 – 13:9. As a 30(b)(6) witness, Defendant testified, "[T]hese were the e-

mails that were generated through this process initially that the majority of them, I believe had counsel copied of them." *See* Exhibit B, p. 13:3-5. Because the purpose of the initial email was to gather facts so that counsel, who was copied on these emails, could render legal advice, Defendant's counsel asserted privilege but allowed Defendant to testify, on behalf of Wexford, that Defendant was a recipient of the emails regarding the June 2019 letter so that the record was clear that Defendant had at least some notice of Wexford's receipt of the June 2019 letter. *See* Exhibit B, generally.

On July 2, 2024, Plaintiff filed a Motion in Limine seeking to exclude any mention of these emails from trial, despite having designated for trial portions of Defendant's deposition wherein he discussed the emails. *See* Doc. 168. In Plaintiff's Motion in Limine, Plaintiff wrote, "Defendant Ritz admitted during a deposition in this case that he was notified of Plaintiff's 2019 letter from counsel concerning Defendants' ongoing failure to treat Plaintiff's rectal prolapse," citing a portion of Defendant's deposition. *See* Doc. 168. In other words, Plaintiff acknowledged Defendant's admission that he had at least some notice of the June 2019 letter.

The Court, recognizing that these emails were necessary for Plaintiff to demonstrate that Defendant had notice of the June 2019 letter (and thus make the June 2019 letter relevant at trial after Wexford was granted summary judgment), denied Plaintiff's Motion in Limine and accepted Defendant's suggestion that reference to the email string come into evidence so that Plaintiff can demonstrate that Defendant had notice of the June 2019 letter. *See* Doc. 177.

Despite knowing that these emails existed on February 8, 2023, Plaintiff took no action to further discover their contents until July 20, 2024 – 17+ months (528 days) later by filing a Motion in Limine seeking an order compelling production of the emails. *See* Doc. 180. This Motion in Limine was filed two days before trial, on a Saturday, and after the Court had already

ruled on the parties' various Motions in Limine. When this issue was presented to the Court, after the trial had started due Plaintiff's last-minute Motion in Limine, defense counsel agreed that Defendant was not going to reference Dr. Lehman but expressed serious concern about the form of Plaintiff's counsel's questions at trial potentially requiring Defendant's trial testimony to differ from his corporate designee testimony. *See* Doc. 205, pp. 12:4-24, 13:3-6 & 14:5-6. Ultimately, Defendant complied in all respects with the Court's Order by not mentioning Dr. Lehman at any point while the jury was present.

After the mistrial of this matter, the Court denied this Motion in Limine as moot. *See* Doc. 221. Instead of immediately seeking disclosure of the emails after the mistrial, Plaintiff waited until April 1, 2025, 8+ months (249 days) after the mistrial and 2+ months (76 days) after the Motion in Limine was denied as moot, to file a Motion to Compel. *See* Doc. 226.

The Court granted Plaintiff's Motion to Compel on May 20, 2025, requiring Defendant to produce the email strings by May 30. *See* Doc. 233. As stated in Plaintiff's Motion for Sanctions, Defendant produced the email strings on May 29. Defendant produced the emails a day before the deadline set by the Court at the request of Plaintiff's counsel so that Plaintiff's counsel could see the email strings prior to the Settlement Conference ordered by the Court. *See* Doc. 234.

The email strings are consistent with how Dr. Ritz described them at his corporate designee deposition in February 2023. Dr. Ritz testified that Joe Ebbitt sent an email to Defendant, Dr. Tom Lehman, Dr. Roderick Matticks, Dr. Arthur Funk and Shanis Stock-Jones after he received Plaintiff's counsel's June 2019 letter. *See* Exhibit B, pp. 16:21 – 17:10. While Dr. Ritz forgot a few recipients of the emails, all of the listed people were recipients. *See* email strings attached hereto and incorporated herein by reference as Exhibit C.

During his corporate designee deposition, Defendant also testified that, "There was communication made via e-mail regarding the letter that would've been to the aforementioned individuals that I stated earlier, including Dr. Lehman and myself. There was -- excuse me, no documentation or evidence of any further actions taken regarding the case." *See* Exhibit 18:16-21. Defendant admitted that there was no evidence that neither he nor anyone else reacted to the letter in way that resulted in Plaintiff receiving care for rectal prolapse.

Most pertinent to Plaintiff's Motion, Defendant testified, as Wexford's corporate designee:

Q. Okay. And were there any steps taken in regards to this letter as related to Mr. Hunter's medical care?

A. I didn't see any specific evidence of any steps taken that was documented. It doesn't mean it didn't happen. There was an e-mail that -- from Dr. Lehman that alluded to that he was going to communicate something to someone that he was, I think, was going to take care of it. But -- and customarily, as I attested many times, these things would've been handled and discussed verbally. It wouldn't necessarily have had any documentation. So I guess the point being that the fact that there's not formal documentation noted anywhere doesn't mean that it didn't happen. It may have happened. Unfortunately, Dr. Lehman is deceased, so he's not able to attest to that.

Q. Okay. And what was Dr. Lehman's role?

A. He was the chief medical officer.

Q. For Wexford?

A. Yes.

Q. And so he said that he was going to take care of it from a medical care perspective?

A. I can't attest to what he meant by that.

Q. He just said, "I'm going to take care of it"?

A. Yeah. This is my interpretation of what he was alluding to based upon our customary processes.

*See* Exhibit B, p. 32:11 - 23 (objection excluded)

Comparing Defendant's testimony to Dr. Lehman's email demonstrates the accuracy of Defendant's corporate designee testimony:

| **Defendant's Testimony** | **Dr. Lehman's Email** |
|---|---|
| "There was an e-mail that -- from Dr. Lehman that alluded to that *he was going to communicate something to someone* that he was, I think, was going to take care of it."<br><br>(Emphasis Added) | Steve and I are handling this issue.<br><br>Thanks<br><br>Tom<br><br>Dr. Tom Lehman, CCHP, CCHP-P<br>Corporate Medical Director<br>Wexford Health<br>662-347-9587 |

Defendant's testimony, that Dr. Lehman "was going to communicate something to someone," is accurate. Dr. Lehman indicated that "Steve and I" are handling this issue. The "Steve" Dr. Lehman was referring to was Dr. Steve Meeks, the IDOC representative to whom Plaintiff's counsel addressed the letter. Defendant understood the import of Dr. Lehman's email to be that Dr. Lehman was going to communicate with Dr. Steve Meeks about the letter, and testified accordingly. In other words, and exactly as Defendant testified, Dr. Lehman was, on behalf of Wexford, "going to take care of it." It must be noted that this testimony was given on behalf of Wexford, and that Defendant was clear that his testimony, as a corporate designee, was an interpretation of Dr. Lehman's email correspondence. *See* Exhibit B, p. 32:11 – 23.

At trial, Defendant never testified, based on these emails, some other specific person was going to take action in response to the June 2019 letter. *See* Doc. 207, pp. 397 – 541. The only time the word "Lehman" is included in the transcript of Dr. Ritz's testimony is from a sidebar. *See* Doc. 207, pp. 466 & 473. Dr. Lehman was also not referenced during defense counsel's closing argument. *See* Doc. 208, generally. Instead, Defendant repeatedly testified that based

on the customary practices at Wexford he did not take action in response to the June 2019 letter and instead deferred to his colleagues.  *See* Doc. 207, p. 475:10-13, 481, p. 481:6-18, 482:18-19, 487:4-9, 524:10-18.  This is exactly what was discussed and agreed when the issue was brought up after the trial started.  *See* Doc. 205, pp. 12:4-24, 13:3-6 & 14:5-6.

Pertinent to the current dispute, Defendant admitted the following:

- Defendant admitted that he was a recipient of the email regarding the June 2019 letter.  *See* Doc. 207, p. 465:1-3.

- Defendant admitted that he was notified of the existence of the letter.  *See* Doc. 207, p. 477:11-17.

- Defendant admitted that he sent Joe Ebbitt an email about the June 2019 letter.  *See* Doc. 207, p. 475:10-13.

- Defendant admitted that there was no evidence that he took any action related to the letter.  *See* Doc. 207, p. 477:21-23.

Thus, the jury heard Defendant admit that he was aware of the June 2019 letter, and heard Defendant admit that he took no action in response to the letter.  Defendant's explanation for the latter, that he took no action because of his customary practice, was consistent in his deposition and trial testimony.  Plaintiff's Motion boldly presumes that the outcome of the trial would have been altered had the jury seen the actual email strings.  This ignores that Plaintiff's counsel cross-examined Defendant extensively about the emails during the first trial and referenced them multiple times during closing argument.

Plaintiff's motion is largely based on an incorrect assumption that could have been cleared up had a collegial communication occurred prior to the filing of the Motion for Sanctions.  Plaintiff assumes that when Dr. Lehman stated in his email that "Steve and I are handling this issue" means that Defendant (i.e. Stephen "Steve" Ritz) and Dr. Lehman were going to respond to Plaintiff's counsel's June 2019 letter.  However, and as more fully stated in

Defendant's Affidavit, attached hereto and incorporated herein by reference as Exhibit D, Defendant's consistent deposition and trial testimony and trial testimony demonstrates that the "Steve" in Dr. Lehman's email is Dr. Steve Meeks.

In the context of Dr. Lehman's job duties as the Corporate Medical Director at that time, the custom and practice would have been for Dr. Lehman to communicate with Dr. Steve Meeks, the person to whom the letter was addressed. Further, the custom and practice of the Wexford corporate management team in 2019 was for state level management to handle patient care issues, even if they related to utilization management. If there were a complaint from a patient or a patient's family about the utilization management process, that was handled by state or facility level management. Dr. Lehman, as the Medical Director, would have been the one to communicate with state and/or facility level management regarding claims such as those made in the June 2019 letter, including Dr. Steve Meeks.

Plaintiff fails to mention that the June 2019 letter was addressed to Dr. *Steve* Meeks. *See* June 2019 letter attached hereto and incorporated herein by reference as Exhibit E. Not "Stephen" Ritz, but "Steve" Meeks. Plaintiff makes a giant and speculative leap in assuming that the "Steve" mentioned in Dr. Lehman's email is "Stephen" Ritz. Plaintiff appears to assert this as their most damning evidence, but it is nothing more than an unfounded assumption. Plaintiff should have reviewed their own letter before filing the Motion for Sanctions.

Dr. Lehman was Wexford's Corporate Medical Director. Dr. Steve Meeks was IDOC's Chief of Health Services. They were the top officials for the two entities to whom the letter was sent. It makes perfect sense that they would discuss the June 2019 letter. Plaintiff either: (1) carelessly failed to recognize that they addressed the letter to someone with the name "Steve" before alleging malfeasance on the part of Defendant and defense counsel in a Motion for

Sanctions, or (2) knowingly failed to acknowledge this when alleging malfeasance on the part of Defendant and defense counsel in a Motion for Sanctions. Either is fatal to Plaintiff's Motion for Sanctions and warrants sanctions against Plaintiff.

<u>**Law and Argument**</u>

A.    Legal Standard for Sanctions

Federal Law includes three paths through which a party may be sanctioned – Fed.R.Civ.Pro. 11, Fed.R.Civ.Pro. 37 and 28 U.S.C § 1927. *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 811 (7th Cir. 2003). Plaintiff seeks the harshest sanction possible without even bothering to notify the Court of the rule or statute under which they believe such a sanction is warranted.

Rule 11 motions assert that the party that signed a pleading did so for an improper purpose, that a claim or defense asserted in a pleading was frivolous, and/or that factual contentions or denials of such contentions lack evidentiary support. *See* Fed.R.Civ.Pro. 11(b). Prior to filing a Motion under Rule 11, the party seeking sanctions must be sent to the party against whom sanctions are sought at least twenty-one days before the motion is filed in court. *See* Fed.R.Civ.Pro. 11(c)(2). Plaintiff did not send the Motion for Sanctions to Defendant prior to filing it. Defendant recognizes that there were less than twenty-one days between the production of the email string and the trial date, but Plaintiff made no effort to comply with Rule 11 even on a shortened timeframe.

Rule 37 relates to sanctions for evasive or incomplete answers in discovery. *See* Fed.R.Civ.Pro. 37. Rule 37 requires the movant to attempt in good faith to obtain the discovery sought before filing to compel. *See* Fed.R.Civ.Pro. 37(a). This Court's local rule similarly requires a pre-motion meet and confer process. *See* L.R. 26.1(c)(2). Had Plaintiff made an

effort to collegially communicate with counsel they could have learned that the "Steve" in Dr. Lehman's email is not Defendant.

28 U.S.C. § 1927 permits an award of sanctions against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." To make an award under this section, the Court must find that the attorney acted both unreasonably and vexatiously. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). Vexatious conduct can only be found where there is evidence of subjective or objective bad faith. *Id.* Plaintiff's Motion does not specifically allege that either occurred.

      B.      Plaintiff's Motion Should Be Denied Because Of Plaintiff's Dilatory Actions In Seeking Discovery And Seeking Sanctions

As more fully stated above, Plaintiff did not conduct any discovery prior to the discovery deadline. Defendant was deposed, both as an individual and as a corporate designee, only because the Court granted an extension of time. After receiving the benefit of the Court's extension, Plaintiff abused the Court's benevolence by attempting to seek more discovery than the Court had permitted, by attempting to endorse a retained expert and by seeking to assert new claims via the filing of an Amended Complaint mere hours before Plaintiff's deposition. The Court's restraint when describing this conduct in the Order denying the Motion for Leave is admirable.

Further, after learning of the existence of the email string that is the basis for the Motion for Sanctions in February 2023, Plaintiff waited over a year, and until the eve of the first trial, to ask for its production. After the mistrial, Plaintiff waited an additional eight months before again seeking their production. Plaintiff again seeks to abuse the Court's patience by asserting misleading claims in a Motion for Sanctions and basing the claims in the Motion for Sanctions

on assumptions without even bothering to learn whether there is any basis to support these assumptions.

The Court has broad discretion in ruling on Plaintiff's Motion for Sanctions. *See Bell v. Vacuforce, LLC,* 908 F.3d 1075, 1082 (7th Cir. 2018). Defendant asks that this Court exercise this discretion and deny Plaintiff's dilatory Motion for Sanctions. If any party in this case is guilty of unreasonable and vexatious conduct that has unnecessarily increased the cost of this litigation, it is clearly Plaintiff. The entirety of the issue presented in Plaintiff's Motion is the result of trying to cram the normal discovery period into a sprint due to Plaintiff's dilatory conduct, followed by further, and repeated, dilatory conduct.

C.     Neither Defendant Nor Defense Counsel Misrepresented The Content Of The Email String

   1.  Defendant's deposition and trial testimony regarding the content of the email string was consistent

Defendant's deposition and trial testimony is consistent. Defendant acknowledged that he received an email regarding the June 2019 letter during his deposition and at trial. *See* Exhibit B, pp. 16:15 – 17:10 & Doc. 207, p. 464:1-10. Defendant admitted that he sent a reply email. *See* Exhibit B, p. 25:5-9 & Doc. 207, p. 475:10-13. Defendant admitted that he did not take action after receiving the email. *See* Exhibit B, p. 18:14-21 & Doc. 207, p. 476:24 – 477:23.

   2.  Defendant's deposition and trial testimony regarding the content of the email string is an accurate reflection of the content of the email string

Defendant testified at his deposition that it was his interpretation after reviewing the email string that Dr. Lehman was indicating that he was going to "take care of" responding to the June 2019 letter. *See* Exhibit B, pp. 31:20 – 32:23. In the email string, Dr. Lehman wrote, "Steve and I are handling this issue." *See* Exhibit C. Because the June 2019 letter was addressed to Dr. Steve Meeks, and customarily Dr. Lehman was the primary person at Wexford that

communicated with Dr. Steve Meeks, Defendant concluded, on behalf of Wexford, that the "Steve" in Dr. Lehman's email was Dr. Steve Meeks after reviewing both the letter and the email string prior to prepare to serve as a corporate designee. Defendant's deposition testimony that it was his interpretation that Dr. Lehman was taking the lead on handling any response to the letter was and is reasonable and is an accurate reflection of the content of the email string. Defendant testified, "There was an e-mail that -- from Dr. Lehman that alluded to that he was going to communicate something to someone that he was, I think, was going to take care of it." *See* Exhibit B, p. 32. This testimony references communication between Dr. Lehman and another party, i.e. Dr. Steve Meeks.

At trial, Defendant testified that he responded to Mr. Ebbitt's email. *See* Doc. 207, p. 524:7-9. The email string demonstrates that Defendant did, in fact, respond to Mr. Ebbitt's email. *See* Exhibit C.

At trial, Defendant testified, "I got the email and I think the letter was referenced. If it was attached and copied and I reviewed that, I'm not sure." *See* Doc. 207, p. 477:19-20. He never testified that the letter was or was not attached to the email because he was, based on his review of a PDF of the email string, not sure.

      3.   Defense counsel's actions during trial regarding the email string did not misrepresent the email string

During defense counsel's examination of Defendant at trial, counsel asked Defendant whether Defendant did "anything in response to being one of the seven people that was on this e-mail chain." *See* Doc. 207, p. 524:5-6. Defendant testified that he "responded, I think, to Mr. Ebbitt regarding acknowledging it, but in terms of specific actions, I don't recall." *See* Doc. 207, p. 524:7-9. The testimony elicited by defense counsel accurately reflects the email string because Defendant's only action demonstrated by the email string was responding to Mr. Ebbitt. *See*

Exhibit C. Plaintiff's quarrel appears to be Defendant's use of the word "acknowledge." *See* Doc. 241, p. 7. However, Defendant specifically testified at his deposition that he replied to Mr. Ebbitt's email. *See* Exhibit B, p. 25:12-13. Defendant also admitted at trial that responded to Mr. Ebbitt's email about the June 2019 letter. See Doc. 207, p. 475:10-13. The jury was well aware that Defendant received the email and replied to it. If Plaintiff's counsel wanted to highlight this activity for the jury they had more than sufficient pre-trial knowledge of Defendant's reply to have done so.

Defense counsel briefly addressed the June 2019 letter during closing argument. *See* Doc. 208, p. 652:6 – 24. Counsel acknowledged that Defendant received the email about the letter and stated that Defendant deferred to his colleagues to follow-up. *Id.* There is nothing inaccurate about that, and it is perfectly consistent with the Court's limitations when the matter was discussed after the trial started due to Plaintiff's dilatory conduct.

      D.      Plaintiff's Motion for Sanctions Misrepresents The Record Of This Case

Ironically, Plaintiff's Motion for Sanctions, accusing Defendant and defense counsel of misrepresentations to the Court and the jury, misrepresents the record in this case:

| **Plaintiff's Motion for Sanctions** | **The Record Of The Case** |
| --- | --- |
| Defendant "claimed it was unlikely he had seen" the letter. *See* Doc. 241, p. 6, citing footnote 11. | Defendant repeatedly testified that he could not recall whether he saw the letter in 2019 or not. *See* Exhibit A, pp. 63:17 – 64:1 & Doc. 207, p. 459:11-12 & 22 & p. 477:14-23. Defendant testified, "I got the email and I think the letter was referenced. If it was attached and copied and I reviewed that, I'm not sure." *See* Doc. 207, p. 477:15-17. |
| Defendant's testimony at his deposition and at trial put this issue on a tee for Plaintiff's counsel. Plaintiff could, and should, have established that Defendant's lack of recollection meant that it was just as likely that he saw the letter as not. Defendant should not be punished for counsel's inadequate cross examination and closing argument. | |

| Plaintiff's Motion for Sanctions | The Record Of The Case |
|---|---|
| Defendant "claimed that his only action in response to Mr. Ebbitt's email about the letter was to "acknowledge[e] receiving the email." *See* Doc. 241, p. 7, citing footnote 15.<br><br>Defendant testified "that he merely 'acknowledged' receipt of the email." *See* Doc. 241, p. 10. | Defendant specifically testified at his deposition that he replied to Mr. Ebbitt's email. *See* Exhibit B, p. 25:12-13. Defendant also admitted at trial that responded to Mr. Ebbitt's email about the June 2019 letter. See Doc. 207, p. 475:10-13. |

| | |
|---|---|
| Another missed opportunity. The fact that Defendant replied to the email could reasonably be argued to make it more probable that Defendant had at least some knowledge of the claims made in the letter. | |

| Plaintiff's Motion for Sanctions | The Record Of The Case |
|---|---|
| "Days before the last trial, defense counsel represented to Plaintiff's counsel via email that [Dr. Butalid] was too ill with terminal cancer to come to trial." *See* Doc. 241, p. 11, footnote 20. | Defense counsel notified Plaintiff's counsel of Dr. Butalid's illness the same day defense counsel learned of Dr. Butalid's illness. See Affidavit of Kevin Peek, attached hereto and incorporated herein by reference as Exhibit F. Defense counsel communicated to Plaintiff's counsel exactly what was communicated by Dr. Butalid, i.e. that he was diagnosed with Stage 4 cancer. *See* Exhibit F. He wore a winter coat and hat throughout his deposition because he has trouble regulating his body temperature. *See* Exhibit F.[1] |

| | |
|---|---|
| Dr. Butalid has significant cancer. He wore a winter coat and hat in full view of Plaintiff's counsel during his deposition because he cannot regulate his own body temperature. If, after Dr. Butalid testified that he was working full time, Plaintiff was concerned about a misrepresentation, and followed up on that point during the deposition, they would have learned the truth. | |

The jury was well-positioned to decide whether or not Defendant was telling the truth

when he testified that he could not recall, or "was not sure," whether he saw the letter or not.

The jury knew that Defendant was sent an email about the letter (Doc. 207, p. 465:1-3), knew

---

[1] On July 11, 2024, after his call with Dr. Butalid, Mr. Peek contemporaneously drafted a file memorandum in the form of an email to Mr. Harms memorializing this call. Defendant is willing to submit this memorandum/email to the Court *in camera* to confirm the statements made in Mr. Peek's Affidavit.

Defendant was notified of the existence of the letter (Doc. 207, p. 477:11-17), and knew

Defendant replied to Mr. Ebbitt's email about the letter (Doc. 207, p. 475:10-13).  The only

difference the email string makes is Mr. Ebbitt's comment, in the body of the email, that the

letter was attached.  *See* Exhibit C.  If asked, it will continue to be Defendant's testimony at the

upcoming trial that when he testified as a corporate designee he thought Mr. Ebbitt forgot to

attach the letter to the email based on the materials he was given to review prior to that

deposition.  If asked, Defendant will testify, consistent with his testimony at the first trial, that he

cannot recall whether the letter was or was not attached to Mr. Ebbitt's email.

  E.  Defense Counsel's Actions Demonstrate No Intent to Mislead

  When the email string was the subject of pre-trial motion practice, defense counsel

suggested that the Court "permit Plaintiff to reference the email string so that Plaintiff can

demonstrate that Defendant Ritz was one of seven recipients of an email regarding the June 2019

letter" in order for Plaintiff could demonstrate that Defendant had a connection to the June 2019

letter.  *See* Doc. 173, pp. 9-10.  When the issue was brought up after the trial started as a result of

Plaintiff's late-filed additional Motion in Limine, defense counsel agreed that Defendant was not

going to say anything about Dr. Lehman at all.  *See* Doc. 205, pp. 12:4-24, 13:3-6 & 14:5-6.

Defendant met that obligation.  The word "Lehman" was not used at any point while the jury was

present.

  Plaintiff filed a Motion to Compel the email strings on April 1, 2025.  *See* Doc. 226.

Defendant did not oppose the motion.  When Plaintiff's Motion to Compel was discussed at the

status conference, defense counsel pointed out that the Court had essentially already ruled on the

issue, but did not aggressively fight production of the email strings.

At Plaintiff's request, this case was set for another settlement conference on May 29, 2025. *See* Docs. 233 & 234. The Court ordered Defendant to produce the email strings by May 30, 2025. *See* Doc. 233. Because Plaintiff wanted to see the email strings in advance of the settlement conference, defense counsel provided them prior to the beginning of the settlement conference. To ensure there is no claim of misrepresentation, it is true the email strings were sent to Plaintiff's counsel very shortly (seventeen minutes) before the settlement conference was going to begin due to defense counsel's schedule, including expert discovery in other cases. That said, the settlement conference lasted for multiple hours and defense counsel did nothing to try to rush that proceeding to resolve the case to try to hide the import of the email strings. The emails strings are a total of fourteen pages, much of which is duplicative. There was plenty of time for Plaintiff's counsel to review the email strings during that proceeding, with full knowledge of Defendant's deposition testimony and the prior trial. If defense counsel wanted to hide the email strings they would not have been voluntarily produced prior to the settlement conference.

Suggesting that Plaintiff have the benefit of the email string without the burden of Defendant's interpretation of Dr. Lehman's email, not filing an opposition to the Motion to Compel or strongly opposing it during the recent status conference and sending the email string to Plaintiff's counsel prior to the settlement conference are all wholly inconsistent with an effort to violate "the ethics that govern the legal profession," as alleged in Plaintiff's Motion for Sanctions. Those are not the actions of an attorney that played "dirty tricks" during this litigation as alleged in Plaintiff's Motion for Sanctions.

F.    Defendant's Assertion That The Emails Were Privileged Was Made In Good Faith

Mr. Ebbitt's initial email states, in all capital letters, "PLEASE COPY ATTORNEY SHARP ON ALL EMAIL COMMUNICATIONS CONCERNING THIS ISSUE."  *See* Exhibit C.  This evidences a clear intent by Mr. Ebbitt to obtain legal advice concerning the June 2019 letter.

Attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L. Ed. 2d 584 (1981).  "The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts" to determine what is legally relevant.  *Id.* at 390 – 391.  Due to "the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, 'constantly go to lawyers to find out how to obey the law.'" *Id.* at 392, citing *Burnham, The Attorney–Client Privilege in the Corporate Arena*, 24 Bus.Law. 901, 913 (1969).

In *Upjohn*, a corporation decided to conduct an internal investigation.  *Upjohn,* 449 U.S. at 386 (1981).  As part of that investigation, the corporation sent questionnaires to various employees and indicated on these questionnaires that the corporation's General Counsel was conducting an investigation.  *Id.* at 387.  The Supreme Court reasoned that the responses to the questionnaires were communications "made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." *Id.* at 394.  The Supreme Court further stated, "The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.*  The

Supreme Court held that the communications made by Upjohn employees in the form of these questionnaires were protected from disclosure by attorney-client privilege. *Id.* at 397.

Other than the fact that Mr. Sharp was outside counsel for Wexford, and not Wexford's General Counsel, the circumstances here are almost identical to those in *Upjohn*. Mr. Ebbitt sent an email to various corporate officials to obtain information to investigate the claims made in the June 2019 letter. *See* Exhibit C. He advised the recipients to include Mr. Sharp on all communications so that Mr. Sharp could gather the information needed to offer legal advice. *See* Exhibit C.

Defendant acknowledges that there exists other authority holding that the mere copying of an attorney on an email does not create privilege, but because Mr. Ebbitt's clear goal in sending the initial email was to gather information to obtain legal advice Defendant (and defense counsel) had, at a minimum, a good faith basis to assert privilege.

G.    Plaintiff's Attempt To Use Sanctions To Gain A Litigation Advantage Is Inappropriate

Claims about the conduct of defense counsel are not new to this case. Much of the rebuttal portion of Plaintiff's closing argument at the first trial focused on the conduct of defense counsel, including the statement: "[Y]ou can't always believe what a lawyer says." *See* Doc. 208, p. 654:23. Plaintiff's counsel referenced defense counsel, by name, thirteen separate times during Plaintiff's counsel's rebuttal. *See* Doc. 208, p. 654 – 662. Had Defendant objected to such commentary that objection likely would have been sustained. *See,* e.g. *Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1211 (7th Cir. 1986).

Blithely tossing around accusations of misconduct is improper as acknowledged by the Seventh Circuit, in its Standards for Professional Conduct:

- "We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." *See* 7th Cir. Standards for Prof. Conduct, Lawyer's Duties to Other Counsel at ¶ 4.

- "We will not ascribe a position to another counsel that counsel has not taken or otherwise seek to create an unjustified inference based on counsel's statements or conduct." *Id.* at ¶ 29.

Using accusations of impropriety to gain a litigation advantage is grounds to warrant sanctions. "[U]nprofessional antagonism toward opposing counsel benefits no one and improperly burdens federal courts." *Matter of Lisse*, 921 F.3d 629, 645 (7th Cir. 2019).

As demonstrated by the chart above, the accusations included in Plaintiff's Motion for Sanctions are themselves misleading. The most obvious example of that is the claim that Defendant/defense counsel engaged in "deception" that is "part of a pattern" based entirely on their conclusion that Dr. Butalid was not too sick to attend the prior trial. *See* Doc. 241, p. 11, footnote 20. Plaintiff's counsel claimed that this left "a hole in the evidence, while Defendant gained an empty chair and a partial scapegoat." *Id.* These assertions are wildly misleading.

First, Plaintiff's counsel's own significant departure from the reasonable practice of law in not seeking any discovery during the discovery period set by this Court caused Plaintiff to lose the opportunity to present Dr. Butalid's testimony at trial. Had Plaintiff sought to depose Dr. Butalid during the months-long discovery period, his testimony would have been admissible and available.

Second, everything that Defendant/defense counsel represented about Dr. Butalid's condition prior to and during the last trial is true. *See* Exhibit F. Defense counsel notified

Plaintiff of the issue with Dr. Butalid's attendance at the last trial virtually immediately after learning of it. *See* Exhibit F.

Next, Defendant/defense counsel never used Dr. Butalid as a scapegoat. His notes regarding the collegial review call with Defendant were offered into evidence as an exhibit by Defendant. Defendant/defense counsel demonstrated that there was follow-up from the collegial review call via the efforts to obtain Plaintiff's prior records. If Dr. Butalid's absence hurt any party at trial, it was Defendant. Defendant plans to offer Dr. Butalid's deposition testimony into evidence at the upcoming trial. *See* Doc. 247.

Finally, while it is true that Dr. Butalid testified at his deposition that he was working full-time, this leaves out the fact that he is working to ensure that he has health insurance so that he can obtain life-saving medical treatment, and despite getting easily fatigued. *See* Exhibit F. He wore a coat and hat throughout his deposition. *See* Exhibit F. Plaintiff had ample opportunity to seek discovery on what is now claimed to be a pattern of deception but failed to do so. Defendant is not responsible for Plaintiff's failure.

H.      Defendant Requests That Sanctions Be Imposed Against Plaintiff

"Moving for sanctions based on scurrilous, unsupported allegations of bad faith or unethical conduct is itself bad faith conduct, rendering it sanctionable." *Martin v. Living Essentials, LLC*, No. 17 C 02020, 2017 WL 4572499, at *5 (N.D. Ill. June 22, 2017), aff'd, No. 17-2469, 2017 WL 11622113 (7th Cir. Nov. 9, 2017).

Defendant has been forced to spend money defending against the unfounded and assumptive claims in Plaintiff's Motion for Sanctions. This is a pattern. Defendant was also forced to incur legal fees to enforce the Court's order granting limited discovery after Plaintiff sought to seek well more discovery than the Court had allowed, including the disclosure of an

expert. Defendant was also forced to incur legal fees to preclude Plaintiff from adding new claims to the case during this limited discovery period. Defendant, who lives in another state, will likely need to spend additional time in a hotel, incurring the expenses attendant thereto, because the trial was pushed back by a day to address these claims. Defense counsel spent hours preparing this Response when that time could have, and should have, been used for trial preparation, to the prejudice of Defendant. This prejudice is significant and must be addressed by the Court.

Defendant asks this Court to deny the Motion for Sanctions and to sanction Plaintiff for bringing this Motion pursuant to Rule 11 and 28 U.S.C. § 1927. Defendant respectfully suggests that appropriate sanctions would include the preclusion of the use of the June 2019 letter and/or the email strings, or any reference thereto, during the upcoming trial and/or an award of the attorneys' fees and costs incurred responding to Plaintiff's Motion.

## <u>Conclusion</u>

Plaintiff's Motion is misleading and premised largely on assumptions of fact. Attorneys have a responsibility to treat one another collegially and to accuse opposing counsel of wrongdoing only when well-developed facts require it. Sanctions against an opposing party should be reserved for egregious conduct that is undeniable after effort is expended to ensure that the allegations in such a motion are bulletproof.

Plaintiff's effort prior to filing this motion falls woefully short of that obligation. Plaintiff's Motion is almost entirely based on conjecture. Any prejudice Plaintiff suffered from not seeing the email strings until the Court recently ordered their production is entirely the fault of Plaintiff's repeated dilatory acts. The Court should deny Plaintiff's Motion and award sanctions to Defendant for having to defend against it.

WHEREFORE, Defendant Dr. Stephen Ritz respectfully prays that this Court enter its order and DENY Plaintiff's Motion for Sanctions, issue appropriate sanctions against Plaintiff and/or Plaintiff's counsel, and for such other and further relief as this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/ Rodney M. Sharp
Rodney M. Sharp, #6191776
Dennis S. Harms, #6291610
Jennifer E. Blood, #6304806
701 Market Street, Suite 600
St. Louis, MO 63101
314-231-3332
314-241-7604 (Fax)
rhsarp@sandbergphoenix.com
dharms@sandbergphoenix.com
jblood@sandbergphoenix.com

*Attorneys for Defendant Stephen Ritz, M.D.*

## Certificate of Service

I hereby certify that on this the 6th day of June, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Maria Makar
Julia Rickert
Jon Loevy
Locke Bowman
Loevy & Loevy
makar@loevy.com
julia@loevy.com
jon@loevy.com
locke@loevy.com
*Attorneys for Plaintiff*

    /s/ Rodney M. Sharp