**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

Antonio Hunter,

                  Plaintiff,

v.

Stephen Ritz,

                  Defendant.

Case No.  21-cv-271-NJR

JURY TRIAL DEMANDED

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT[1]

Caught in major and material lies, Defendant's response has been to tell more of them. Ritz's main defense is that the "Steve" referenced in the Wexford emails was not Dr. Ritz but rather Dr. Steve Meeks, who worked for the Department of Corrections. In his declaration, unlike his brief, Dr. Ritz does not definitively say that "Steve" was Dr. Meeks but merely attests that he "believes" it was Dr. Meeks, a hedge which makes sense only because the lie unravels under scrutiny. Ritz's declaration also suggests (falsely) that he still does not believe the 2019 letter about Mr. Hunter was attached to the Mr. Ebbitt's email to him, but when Plaintiffs' counsel immediately insisted on seeing the original email in the chain, that suggestion also was proved false. Defendant's counsel initially tried to claim it was "too late" to ask for the original email and that perhaps it no longer exists, but faced with the prospect of another motion, he relented. Notwithstanding the representation of doubt in the declaration Dr. Ritz just filed with the Court, the letter was indeed attached to the original email, which is information that Defendant and his counsel, both of whom were recipients of that email, always had. For an

---

[1] Recognizing that reply briefs are normally disfavored, Plaintiff respectfully submits this brief due to the extraordinary nature of the impending hearing.

attorney who is now seeking cross-sanctions, one would have thought he would have performed at least that minimal investigation before filing yet another misleading pleading.

**A. Dr. Ritz's Claim That the "Steve" in Question Was Not Him Cannot Be Credited for Several Reasons.**

Dr. Ritz attests in his declaration that he does not "believe the 'Steve' in Dr. Lehman's email to be a reference" to him. Dkt. 249-4, Decl. Ritz ¶ 8. Instead, he says he believes it refers to Steve Meeks, the IDOC's Agency Medical Director, who was also a defendant in this case until he reached a settlement with Plaintiff just before the first trial. But Dr. Ritz's attempt to take advantage of the fact that he has a common first name is a post hac excuse that contradicts all of the evidence.

**First, this was not Ritz's story at his deposition.** The point of Dr. Ritz's Rule 30(b)(6) deposition was to determine how the 2019 letter was handled, and he never once mentioned Dr. Meeks or anyone from IDOC. Instead*, after reviewing the emails in question to prepare for the deposition,* Dr. Ritz testified that such a letter "would undergo review by risk management and then it's forwarded to the appropriate parties at the state leadership level *for Wexford*, the operational administrative staff that is, and then also usually the site medical staff and possibly the regional medical staff." Dkt 249-2, Ritz 30(b)(6) dep. at 33:7-13 (emphasis added). And after he testified that Dr. Lehman wrote he would take care of it, *id.* at 31:24-32:10, Ritz was asked this follow-up question: "[Lehman] just said, 'I'm going to take care of it?" *Id.* at 32:18. Ritz responded, "Yeah. This is my interpretation of what he was alluding to based upon our customary processes." *Id.* at 32:22-23. Again, no mention of Meeks.

**Second, if the email truly referred to Meeks, there is no reason Ritz would have concealed that.** Ritz's story is that he reviewed the emails right before the deposition. The whole point of the deposition was to ascertain whether anyone took reasonable steps in response to the

letter. If the answer truly was, "yes, it was routed to the physician for another party (IDOC) that would have been responsible to address it," there would have been no reason to conceal the involvement of Meeks. Involvement by Meeks, an IDOC employee, would have taken some of the responsibility off Wexford, Ritz's employer and, at that time, co-defendant. Any evidence that an IDOC employee had some responsibility for handling Mr. Hunter's situation would have been good for Wexford and for Dr. Ritz. Dr. Ritz, however, carefully left out of his testimony that Dr. Lehman was jointly handling the issue with a "Steve," even when pressed for more information. Although Dr. Ritz had no known reason to conceal Dr. Meeks's involvement, he had an obvious reason to conceal his own.

**Third, in the context of these emails, Dr. Lehman would not have written "Steve" without a last name if he had meant someone other than Stephen Ritz**. Mr. Ebbitt's initial email about the 2019 letter singled out Dr. Ritz among all the recipients and said that the two of them needed to speak to decide whether a "global" call was needed. Dkt. 249-3 at 6. He said Ritz could call or he could come see him in his office that day**, *to which Dr. Ritz responded "Joe Ill call you." Id.* at 5. Mr. Ebbitt also specifically said the plan was to speak with attorneys on the phone, meaning someone who did not work for Wexford like Dr. Meeks would not have been included in the conversation. Then, less than an hour later, Dr. Lehman wrote in the same chain, "Steve and I are handling the issue," without giving a last name for "Steve." The obvious assumption for the recipients would have been that Lehman was referring to the Steve who was on the email chain, the one who had been singled out by Mr. Ebbitt to figure out how to address the situation. It defies all common sense to believe that Lehman really meant a different Steve, one who does not work for Wexford and who was not on the email chain at all, without even saying anything to make that clear and avoid confusion.

**Fourth, Dr. Meeks testified that he would not have expected to be involved with addressing this particular situation himself but that he would have expected Dr. Ritz to be involved.** During his deposition in this case, which took place before Dr. Ritz's, Dr. Meeks denied having any recollection of the 2019 letter, which was addressed both to him and to Joe Ebbitt at Wexford. Ex. 1, Meeks dep., at 38:10-12. But Dr. Meeks testified that if he had received this specific letter, he would have assumed Dr. Ritz was handling it:

> A    Okay.  Well if the attorney has sent [the medical records] to
> Dr. Ritz and the Wexford folks, there would be no need
> for me to get involved because they now have the records
> that they're asking for, if that's the information that
> they wanted.  So, Dr. Ritz and this team got the records
> according to this letter.
> Q    Okay.  So, let -- let's just go up.  So, it
> went to Wexford Health Services Inc., co Joe Ebbitt,
> Director of Risk Management.  So, would -- would you
> then call Wexford and ask them if they also got this
> letter in the records?
> A    No, I wouldn't need to do that.

*Id.* at 56:13-24. Dr. Meeks further testified that he would have assumed if he had read the letter that things were going to be handled appropriately by Wexford's collegial review process, which Dr. Ritz ran:

> A    Well what I would think is, this process is
> moving along.  We've got an attorney who's bringing this
> to our -- our attention, so it's -- it's kicked up a
> notch.  Okay?  The attorney is saying, we're sending you
> the records that we have, that we know you should
> already have, but here they are again.  And then that, I
> would imagine, would continue the collegial process.

*Id.* at 59:10-16. Again, Dr. Meeks also testified to having no recollection of any discussion with anyone from Wexford about Antonio Hunter. *Id.* at 133:11-13.

Dr. Meeks's testimony makes sense—the problem raised in the 2019 letter concerned collegial review, and so the collegial review director should be involved in addressing it.

Undoubtedly that is why Mr. Ebbitt wanted to talk to Ritz first to figure out next steps. By contrast, Dr. Ritz's story that Dr. Meeks was the appropriate person to address the situation does not make sense, and it is not a story he ever told before responding to Plaintiff's motion.

In sum, Ritz's attempt to explain away the newly produced smoking gun email by insisting it referred to a different Steve does not hold water. It is a lie to try to excuse a lie, and it should not go without consequences.

**B. Even if "Steve" Were Steve Meeks, Dr. Ritz Still Gave Materially False Testimony That Prejudiced Plaintiff and Should Be Sanctioned**

As stated, Dr. Ritz read the emails in question at the time they were sent, and then he read them again before his deposition, specifically so that he could testify about them. He was obliged to give truthful testimony regardless of who "Steve" is, particularly when the other Steve was his co-defendant. But rather than testifying that Dr. Lehman wrote in an email that he and Steve Meeks would handle it, Dr. Ritz testified that "Dr. Lehman [] alluded to that he was going to communicate something to someone that he was, I think, was going to take care of it. . .. Unfortunately, Dr. Lehman is deceased, so he's not able to attest to that." Even when clarity was sought and he was asked, "[Lehman] just said, 'I'm going to take care of it?," Ritz responded, "Yeah. This is my interpretation of what he was alluding to based upon our customary processes." Ritz 30(b)(6) dep at 32:18-23.

Dr. Ritz plainly chose to conceal the mention of "Steve" as having notice of the critical letter and responsibility for addressing it. Either he was protecting himself or, as he now claims, he was protecting a co-defendant, Dr. Meeks, who worked for co-defendant IDOC. In either case, Ritz was intentionally misleading: He pretended that no additional information could be learned about Dr. Lehman's plan to "take care of it" because Lehman is dead. He also said Lehman was going to "communicate something to someone"—as if the email contained a vague,

inscrutable plan involving unknown persons—though the email from Lehman says nothing about communicating anything to anyone. (The full text is: "Steve and I are handling this issue. Thanks." Dkt. 241-1 at 5.) If Dr. Ritz at all times believed the Steve in question was Dr. Meeks, as he now attests, he was obliged to say so when questioned about what Dr. Lehman wrote and meant.

Importantly, if Dr. Lehman had enlisted Dr. Meeks to "handle" the situation, this information would have strengthened Plaintiff's case against Dr. Meeks considerably, and Plaintiff would have approached settlement negotiations with Dr. Meeks differently. But because Dr. Ritz concealed "Steve's" involvement in handling the situation, Plaintiff was left with Dr. Meeks's testimony that he had no recollection of the letter. Obviously, Dr. Ritz was not permitted to give false testimony concealing the involvement of his then co-defendant. But Dr. Ritz's response to Plaintiff's motion for judgment is that he did exactly that, which is no defense at all. If Ritz did so, he undermined Plaintiff's case against Meeks and led Plaintiff to settle against Meeks without crucial information that Plaintiff was entitled to have. Plaintiff sued two Steves, and we now know from the emails that one of them was supposed to "handle" Plaintiff's problem. For concealing that information, judgment against Dr. Ritz is an appropriate sanction, regardless of which Defendant named Steve he was protecting.[2]

**C. Dr. Ritz Should Not Be Permitted To Rely on a New Empty Chair Defense at Trial**

Faced with the emails showing his culpability, Dr. Ritz now seeks to put the responsibility for Mr. Hunter's care on a new person: Dr. Meeks. But Ritz never pointed to Meeks at any other time in this litigation, despite supposedly knowing of his involvement all along. Even when directly questioned about the statement of Dr. Lehman that he now claims

---

[2] To be clear, Plaintiff is not suggesting Dr. Meeks or IDOC conspired with Dr. Ritz to conceal the involvement of Dr. Meeks.

implicated Meeks, Ritz did not mention Meeks. But concealing an empty chair defense during discovery with false and misleading testimony is impermissible. Dr. Ritz cannot wait for Meeks to settle with Plaintiff and then blame him, days before trial, because Plaintiff has obtained new evidence that Dr. Ritz had all along and was questioned about under oath.

### D. Defendant Ritz Glosses Over or Fails To Address His Other Material False Testimony

Defendant's concealment of "Steve" is not the only material false statement Dr. Ritz made under oath. His most direct lie was that "no evidence" showed the 2019 letter was attached to the email he received from Mr. Ebbitt, as statement he made knowing his receipt of the letter was key to the case. Also hugely consequential were his false statements that regional medical directors may have been tasked with handling Mr. Hunter's situation (he knew the regional directors were told the opposite), as well as his concealment of the fact that Joe Ebbitt sought his input on what to do.

### 1. Dr. Ritz's testimony that "no evidence" showed the letter was attached to the email is false.

Whether Dr. Ritz had notice in 2019 of Mr. Hunter's medical condition has always been one of the central questions in this case. If the email Mr. Ebbitt sent him attached the detailed 2019 letter from Plaintiff's counsel, then Dr. Ritz did receive fulsome notice, and he was also notified that the medical records he supposedly wanted had been received.

Ritz's recent declaration, however, tries to cast doubt on whether the letter was attached. Dkt. 249-4, Decl. Ritz ¶¶ 17-20. He claims it would have had the word "attachment" under the subject line if there had been an attachment and provides a screenshot from his attorney's email system (rather than from his own) to illustrate. *Id.* ¶ 18. He claims the lack of the word

"attachment" in this spot led him to believe he could truthfully testify that there was "no evidence" of an attachment. *Id.*

Upon receiving the filing yesterday, Plaintiff's counsel immediately reached out to defense counsel (Mr. Rodney Sharp) and requested that he share a "native" copy of the first Ebbitt email in the chain, so the question could be resolved. Defendant had previously produced a PDF of emails responding to the Ebbitt email, so while the initial Ebbitt email appeared in the chain, its attachments did not. Contradicting the suggestion in Defendant's recent response that everything could have been quickly cleared up if only Plaintiff's counsel had been more collegial about conferring on the phone, Mr. Sharp first refused to confirm that he would produce the Ebbitt email, claiming that it was "too late" to be asking for things like this and suggesting the email might not have been saved, even though Mr. Sharp himself (along with Dr. Ritz and others) was one of the recipients of the Ebbitt email. Plaintiff's counsel followed up with an email seeking a commitment. Ex. 2, 6/6/25 Rickert Email and Sharp Response. Faced with the prospect of another motion, Mr. Sharp turned the email over yesterday afternoon, and it turns out that Ritz had misled the Court yet again.

Definitively, the 2019 letter *was* attached to the Ebbitt email. Ex. 3, Ebbitt Email. The email does not say "attachment" under the subject line, as Dr. Ritz's purports he would have expected, but it shows an attachment at the bottom. Ex. 3 at 8. Thus there is no question and no dispute: Dr. Ritz did receive the 2019 letter, which Ebbitt directed him to read, and he then responded, "Joe Ill call you." Dr. Ritz's continued equivocation throughout his declaration about whether the letter was attached is just more misinformation.

Dr. Ritz also knew the letter was attached when he testified. He reviewed an email chain in which the recipients were all told to read the "attached" letter, and no one wrote back and said,

"What letter?" Instead, Dr. Ritz responded that he would call Mr. Ebbitt, and Dr. Funk responded with a comment about what the letter said. Dkt. 249-3 at 5. If Dr. Ritz reviewed this correspondence (as he testified he did), he could not have concluded from it that the letter was not attached. His story that he thought it was not attached because he did not see "attachment" under the subject line the way attachments show up in his lawyer's emails is a fabrication—he knows how his own work email system functions, and the native file proves that attachments do not appear that way in Wexford emails. The bottom line is that Ritz's testimony that "no evidence" showed the letter was attached was flatly false—and self-servingly so.

    **2.  Testimony that regional medical directors were most likely tasked with addressing the situation was also false.**

Dr. Ritz testified, and his counsel reinforced the idea, that the regional medical directors—Wexford employees who were also copied on the email from Mr. Ebbitt—would likely have been the people to respond to the issues raised in the letter. For example, Ritz testified:

> A· · []So the review of the medical piece generally is going to be done by the regional medical directors and the site medical directors as part of the process.
> Q· · And so what was done to follow up on the medical piece of this letter?
> MS. FRITZ:· Objection.· Asked and answered.
> A· · There -- there's no documentation of what actually transpired.· Again, customarily, there may not be because it would've been discussed verbally.

Dkt. 249-2, Ritz 30(b)(6) dep. at 33:15-34:8. He also testified during the first trial:

> Q. Were you one of seven people that was sent an e-mail about that letter?
> A. Yes.
> Q. Did you do anything in response to being one of the seven people that was on this e-mail chain?
> A. As I recall, I would have responded, I think, to Mr. Ebbitt regarding acknowledging it, but in terms of specific

> actions, I don't recall.
> Q. Why did you not get personally involved when you were one
> of the seven people that was included on this e-mail?
> A. As I had said earlier, the customary practice when these
> types of things would come in to the corporate office, and
> especially if they were from attorneys or they were from
> families, that we had a process that we went through where
> this information was forwarded usually to the staff on site or
> regional medical directors and administrative staff to look
> into it.

Trial tr. at 524:2-18.

In reality, the emails (which Defendant and his counsel believed at the time that Plaintiff would never see) showed the regional medial directors were specifically told not to get involved. It was in response to an email from one of them that Dr. Lehman wrote, "Steve and I will handle it. Thanks." Dkt. 249-3 at 5. Dr. Ritz received this email and later reviewed it—and spoke to Mr. Ebbitt—in order to testify about what steps were taken in response to the letter. Dkt. 249-2, Ritz 30(b)(6) dep. at 17-22. Testifying that it might have fallen to the regional medical directors to respond to the letter was false when Ritz was aware of evidence that they had been told it was being handled by others. His counsel's repetition of the false idea was unethical at best.

### 3. Dr. Ritz concealed that he spoke to Mr. Ebbitt about the letter in 2019 to give input on how to handle the situation.

Dr. Ritz testified at trial that he merely "acknowledged" the email from Mr. Ebbitt. Trial tr. at 524:7-9. He did not testify that Mr. Ebbitt wanted to talk with him to decide on next steps, and he did not testify that his response to Ebbitt was not a mere acknowledgment but was, instead, a promise to call. Dkt. 249-3 at 1. Dr. Ritz attests now that he does not know whether he actually spoke to Mr. Ebbitt that day, 249-4, Decl. Ritz ¶ 22, but considering that Ebbitt said he would come to Ritz's office if need be, this is just one more specious, self-serving claim. In any event, the fact that Dr. Ritz was the first and only person Mr. Ebbitt asked to speak with about

next steps regarding the letter is important information supporting Plaintiff's claim against Dr. Ritz, and Dr. Ritz and his counsel knowingly concealed it. His whole defense at the first trial was "not my job," but clearly Mr. Ebbitt thought it was Dr. Ritz's job to weigh in on the letter. He was "personally involved," contrary to his testimony.

## CONCLUSION

This all started because Ritz gave certain self-serving false testimony in depositions and at trial while believing that Plaintiff's counsel would never get to see the emails that revealed the truth. But for a hung jury, he would have gotten away with it. Having now been caught in a lie, Defendant Ritz has spun a new lie—even while asking the Court to sanction Plaintiff for daring to call him out for what has happened. The old story was that he believed Dr. Lehman (deceased and not a defendant) was going to handle Mr. Hunter's situation, and that "no evidence" showed the 2019 letter was attached to Mr. Ebbitt's email to him. The new story is that he believed Dr. Lehman *and Dr. Meeks* were going to handle it and that he thought the letter was not attached because he did not see that word under the subject line. Unfortunately, Defendants' counsel was no innocent bystander, having himself had access to the emails that contradicted both the old and "new and improved" stories that his client was trying to tell.

The Court is going to have to decide what to do with all of this. Plaintiff respectfully submits that this kind of gamesmanship is antithetical to the judicial system, and that there must be very serious consequences. Defendant's intent to mislead is apparent, and Plaintiff should not have to try the case over again under these circumstances. There should not have been any need for a second trial at all. The Court should exercise its inherent powers to grant the motion for judgment.

Respectfully submitted,

**ANTONIO HUNTER**

By: /s/ Julia Rickert
*One of Plaintiff's Attorneys*

Jon Loevy
Locke Bowman
Julia Rickert
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
locke@loevy.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2025, the foregoing was served on all counsel of record via the Court's e-filing system.

/s/ Julia Rickert