IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antonio Hunter, | |
| Plaintiff, | Case No. 21-cv-271-NJR |
| v. | JURY TRIAL DEMANDED |
| Stephen Ritz, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT RITZ'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant Ritz has filed a motion under Fed. R. Civ. P. Rule 50(b) for judgment as a matter of law, asking the Court to hold that no reasonable jury could have found for Plaintiff based on the evidence. But this motion is procedurally barred and substantively baseless. Defendant already renewed his Rule 50(a) motion under Rule 50(b), and the Court denied it, citing ample evidence in the record supporting the jury's finding of deliberate indifference and punitive damages award. This second Rule 50(b) motion should be summarily rejected without reaching the merits.

Regardless, Defendant's motion fails on the merits for all the reasons the Court already identified and more. Defendant omits from his motion all the trial evidence supporting the jury's finding of deliberate indifference and its award of punitive damages. Defendant also makes a general, incorrect assertion that the Court got facts wrong in its order denying the prior Rule 50(b) motion. Throughout his motion, it is Defendant who misrepresents the facts and trial record and presents his own trial theory as if the jury had to embrace it. He also relies on waived and procedurally improper arguments for a second bite at the apple.

Defendant's motion boils down to two arguments: (1) that Dr. Myers did not diagnose Mr. Hunter with rectal prolapse in 2017, and (2) that Ritz followed Wexford's utilization management process. Not only did the jury hear evidence contradicting both points, but neither would absolve Ritz of liability as a matter of law. Evidence was presented at trial that Ritz learned from his own colleagues in 2018 that Mr. Hunter was suffering from rectal prolapse, experiencing extensive bleeding, and urgently in need of specialist colorectal care. Ritz undisputedly was informed of Mr. Hunter's history of rectal prolapse and a prior, failed rectal prolapse surgery. The jury also heard evidence that Ritz was informed Mr. Hunter was still suffering from rectal prolapse in 2019 and had received no treatment. Additionally, the jury learned that, at the same time, Ritz had received medical records from a prior prolapse surgery—records he had claimed in 2018 to need—but did nothing even though it was his responsibility to act, and even though he knew rectal prolapse required surgery. The jury also learned that Ritz had given false deposition testimony about his knowledge and role.

In short, there was ample evidence at trial showing Ritz's deliberate indifference and supporting a punitive damage award. Despite Defendant's assertions, the jury did not have to accept Ritz's theory of the case, disregard evidence to the contrary, or find Ritz credible. Nor does Wexford's utilization management process absolve Ritz. Defendant repeatedly says in his motion that Ritz left it to the on-site doctors, who could have appealed his decision or repeated the request and approval process. But Ritz had already made his decision to deny Mr. Hunter care, and the jury learned that the lower-level doctors were told Ritz was handling the situation. Only Ritz had the authority to approve outside care for Mr. Hunter, and he knew Mr. Hunter was suffering, yet he did nothing about it. The jury's verdict was rational, and the Court should deny Defendant's motion.

## ARGUMENT

The Court should deny Defendant's motion for four reasons: First, it is procedurally improper for Defendant to move again for judgment as a matter of law. The Court already denied Defendant's renewed Rule 50 motion, and this is not a proper Rule 59 motion. Second, the Court should deny Defendant's motion because he has waived his arguments, which are cursory and were forfeited at trial. Third, the Court should deny the motion for all the reasons it denied the initial renewed motion, when the Court identified ample trial evidence supporting the jury verdict. Finally, the Court should deny the motion based on all the additional evidence in the trial record supporting the jury verdict.

**I.     The Court should deny Defendant's motion because it is an improper, third motion under Rule 50.**

Under Rule 50, Defendant may bring a motion for judgment as a matter of law before the case is submitted to the jury (subsection a), and may bring a renewed motion after the jury has reached a verdict (subsection b). "A jury's verdict will only be overturned if no reasonable juror could have found in the prevailing party's favor." ECF 278 at 2 (citing *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)).

Rule 50 states:

> (a)(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
>
> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) , the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law.

Fed. R. Civ. P. 50.

Defendant has already brought motions under Rule 50(a) before the verdict, and Rule 50(b) after the verdict. Defendant orally moved for judgment as a matter of law under Rule 50(a) prior to case submission to the jury:

> THE COURT: Now, Mr. Harms, I believe you have a motion, as well?
>
> MR: HARMS: Yes, Your Honor. And we will file our motion on the docket sometime today. Defendant moves, pursuant to Federal Rule of Civil Procedure 50, to directed verdict in Defendant's favor. I'm not going to belabor the point, especially considering the fact that we are going to file a written motion, but deliberate indifference is very high bar under the law. There's no question about that. There were multiple examples of Dr. Ritz engaging in reasonable conduct, both in during the May 2018 collegial review and in response to the June 2019 lawyer letter. Plaintiff failed to produce competent and substantial evidence that supports each and every element of their claim in deliberate indifference, and we would ask that as a result the Court grant a directed verdict in Defendant's favor.
>
> THE COURT: All right. Well, as you are going to follow up with a written motion, I will take that motion under advisement at this time.

ECF 275 at 33:02-04. But then Defendant did not file a written motion that day, and the jury returned a verdict for Plaintiff and awarded punitive damages.

The next day, on June 13, 2025, Defendant filed a post-verdict, renewed motion for judgment as a matter of law. ECF 269. Defendant articulated two bases: (1) insufficient evidence of deliberate indifference and (2) insufficient evidence of punitive damages. Because Defendant was limited to the basis articulated in his Rule 50(a) oral motion, the Court would not have been able to grant Defendant's motion based on his second, unpreserved basis. *See* Fed. R. Civ. P. 50, Comm. note to 2006 Amendment ("Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion."). Still, the Court addressed both bases and denied the renewed motion on August 4, 2025. ECF 278. The Court began its order by stating, "Pending before the Court is the *renewed* Motion for Judgement as a Matter of Law pursuant to *Rule 50(b)*." *Id.* at 1 (emphasis added).

Defendant's written motion was his one chance at a Rule 50(b) renewed motion. *See* Fed. R. Civ. P. 50. This is the case even though the Court held the matter under advisement after Defendant's oral Rule 50(a) motion, because Defendant did not end up filing a written motion pre-verdict. The Court's order denying the Rule 50(b) motion ended the matter at the trial level. It is now the law of the case and should not be relitigated. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

II.  **Even if it were proper for Defendant to file a second Rule 50(b) motion, his arguments have been waived.**

Defendant presented a perfunctory Rule 50(a) motion before the case went to the jury with only one basis: that no reasonable jury could find evidence of deliberate indifference. Then Defendant filed a Rule 50(b) motion, post-trial, that had two undeveloped arguments based on generalizations and misrepresented facts: (1) no reasonably jury could find evidence of deliberate indifference, and (2) no reasonable jury could find evidence supporting punitive damages.

Both arguments are waived as cursory and underdeveloped. Rule 7(b)(1)(B) and Local Rule 7.1(a)(1) require, "A motion shall state its grounds with particularity and shall set forth the relief sought." Defendant simply repeated his trial theory without addressing contradicting trial evidence from Ritz himself, Mr. Hunter, and other witnesses and exhibits. Nor did Defendant analyze that evidence under the Rule 50 standard and explain why no reasonable jury could find for Mr. Hunter.

Defendant's second argument is also waived as unpreserved. "[T]he renewed Rule 50(b) is technically only a renewal of the Rule 50(a) motion for judgment as a matter of law." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985) (quotation marks and citation omitted). Parties may not use a Rule 50(b) motion to "assert a ground that was not included in the

5

[original] motion." *Id*. "By not raising this argument at trial or in its Rule 50(a) motion, [the appellant] has waived its right to bring a Rule 50(b) motion on this ground." *In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014); *see also* Wright & Arthur K. Miller, Federal Practice and Procedure § 2537 (3d ed. 2018) ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."). "This rule makes sense in light of Rule 50(b)'s purposes. Rule 50(b) is designed to prevent a litigant from ambushing both the district court and opposing counsel after trial." *Id*.

## III. Putting aside the issues of procedure and waiver, the Court should deny this motion for all the reasons the Court denied Defendant's initial Rule 50 motion.

In its order denying Defendant's initial Rule 50 motion, the Court cited ample evidence supporting the jury's finding of deliberate indifference and award of punitive damages. *See generally*, ECF 278. Defendant's (improper) second motion under Rule 50(b) does nothing to undermine the Court's conclusions. In fact, additional evidence also supports the Court's conclusions.

"To prevail on a deliberate-indifference claim, the plaintiff must prove that he suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." ECF 278 at 3 (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

### *Serious medical need*

In denying Defendant's prior motion, the Court first addressed the "serious medical need" aspect of deliberate indifference, which is an objective inquiry. Defendant actually conceded this element at trial, meaning he cannot contest it now. ECF 275 at 80:07–09 ("The first element, did Mr. Hunter have a serious medical need. Rectal prolapse is a serious medical need. We have

6

never disputed that."). Even so, the Court identified multiple pieces of evidence supporting the conclusion that Mr. Hunter had a serious medical need. First, the Court cited Mr. Hunter's own testimony that he had surgery in 2012, that his condition worsened in 2017, and that his pain level was 10 out of 10 when going to the bathroom. ECF 278 at 3 (citing ECF 274 at 95). Pain alone can constitute a serious medical need. *Smith v. Knox Cnty Jail*, 666 F.3d 1037 (7th Cir. 2012). The Court also pointed to Mr. Hunter's testimony that climbing to a top bunk would cause his prolapse to "peek out." ECF 278 at 3 (citing ECF 274 at 98). Finally, the Court highlighted Mr. Hunter's explanation of how he used the bathroom, having to use his fingers and a tissue plug, and not being able to sit on the toilet because his prolapse "would be in the water." *Id.* at 4 (citing ECF 274 at 118, 119, 126).

The Court then pointed to testimony from four other witnesses showing Mr. Hunter's serious medical need. First, Dr. Ritz himself testified that a serious medical need is simply one that requires treatment, and that a person suffering from rectal prolapse can require treatment. ECF 278 at 4 (citing ECF 273 at 41, 174). Dr. Myers then testified about his urgent referral in April 2018 for Hunter to have a "surgical consultation for correction" after symptoms of Hunter's rectal prolapse returned. *Id.* at 4 (citing ECF 275 at 37). Dr. Noble testified that when he saw Hunter on May 29, 2019, for a separate issue, Mr. Hunter had "quite an impressive rectal prolapse." *Id.* (citing ECF 274 at 9, 11). Having treated tens of thousands of patients over the course of his career as an emergency medicine physician, Dr. Noble independently remembered Hunter's prolapse. *Id.* Finally, Dr. Poola testified that he treated Hunter for recurrent rectal prolapse, where the "rectum comes out in the anus and it stays there." *Id.* (citing ECF 274 at 11). Dr. Poola testified that a rectal prolapse can only be corrected with surgery, ECF 275 at 29:4-8,

7

and Dr. Ritz himself said rectal prolapse requires treatment. ECF 273 at 269:16-22. The reality that Mr. Hunter had a rectal prolapse and that it required treatment is beyond dispute.

## *Deliberate indifference*

Next, the Court identified trial evidence supporting the jury's conclusion that Defendant was deliberately indifferent to Mr. Hunter's objectively serious medical need. Deliberate indifference is established by evidence that the defendant knowingly or recklessly disregarded a known risk by failing to act. *Whiting*, 839 F.3d at 661–62. Defendant attempts to blame Plaintiff for his lack of care, contending that Plaintiff (inexplicably) hid his own prior surgical records. But, as the Court pointed out in denying the prior motion, Mr. Hunter was presented with an authorization form that did not ask where his prior surgery occurred or refer to the surgery in any way. ECF 278 at 5 (citing ECF 274 at 138-39); Def. Trial Ex. 243. Hunter explained he was not attempting to hide anything about his medical history from any Wexford doctors and wanted the doctors to have all the information they needed to get him help. ECF 275 at 422:09-10. Defendant also attempts to shift the blame to Mr. Hunter by arguing that he should have requested care more often. The Court, however, pointed to Mr. Hunter's testimony that, once Wexford denied his surgical consultation in 2018, he knew there was no point in submitting additional sick call slips. ECF 278 at 7; ECF 274 at 481:22-484:01. As Mr. Hunter testified, every three or four months he went to the hypertension clinic and reminded Dr. Myers about his rectal prolapse. ECF 274 at 200:04-06. Dr. Myers told him: "It's just not going to happen," meaning a referral to a colorectal surgeon. ECF 274 at 110:04-12. The Court additionally highlighted Mr. Hunter's testimony about the suffering he endured while his rectal prolapse remained untreated, and Dr. Poola's testimony that a rectal prolapse cannot be corrected without surgery. ECF 278 at 7; ECF 275 at 11-12.

Finally, as the Court highlighted in denying the earlier motion, the jury was presented with evidence that Mr. Hunter's attorneys sent a letter in 2019 to Wexford to explain that Mr. Hunter continued to suffer grievously from rectal prolapse and had received no treatment. The letter correctly said that Dr. Myers had urgently sought a referral for Hunter to see a colorectal surgeon but that Dr. Ritz or another Wexford physician had denied the referral, ostensibly because Mr. Hunter's prior surgical records were needed. ECF 273 at 163:20-166:24. The letter included these records and asked that the attorneys be notified if additional documentation was required. *Id*. As the jury learned, Dr. Ritz received this letter and was tasked with addressing the issue but did nothing. *Id.* at 169:06-21.

Specifically, the jury learned that Wexford Risk Management Director Joe Ebbitt emailed the letter to Dr. Ritz and others within Wexford stating, "Please read the attached letter concerning the above patient. We need to discuss ASAP. . . If possible, maybe Dr. Ritz can call me or I can stop down his office today to briefly discuss in order to determine whether we need a global call or not." ECF 273 at 177:15-20; Pl. Ex. 74. Dr. Ritz had responded, "Joe [Ebbitt], I'll call you." ECF 273 at 189:19-21. Dr. Lehman had then written, in response to an email in the chain from a regional medical director, that "Steve and I are handling the issue." *Id.* at 95. At trial, Dr. Ritz confirmed that his first name is Steve and that he was the only Steve on the email chain. *Id.* at 95-96. Dr. Ritz conceded that he was the decisionmaker in the collegial review process, that he did not tell anyone at Pinckneyville that he had received the 2019 attorney letter or Hunter's records, and that he "didn't take specific action." ECF 273 at 74:22. Dr. Ritz admitted that he did nothing upon learning that the prior surgical records had been received, despite that lack of these records was his stated reason for denying Dr. Myers's urgent referral in

the first place. ECF 273 at 169:06-22. The jury was permitted to conclude from this evidence that Dr. Ritz's stated reason for denying the referral was a mere pretext.

The jury also learned that, when Dr. Ritz had testified about the handling of the 2019 attorney letter in a deposition before trial, he falsely denied that the attorney letter was attached to the email he received. He had also testified that Dr. Lehman responded to Mr. Ebbitt that he was "going to take care of it" and that what Dr. Lehman meant by this was unknowable because he is deceased. *Id.* at 183:22-188:03. He concealed that Mr. Ebbitt had singled him out to discuss the letter and that Dr. Lehman had said he and Steve were handling it. *Id.* at 189:09-22. The jury learned that Dr. Ritz gave this false testimony knowing that Plaintiff did not have access to the emails that would contradict him. This concealment showed his consciousness of guilt, as reasonable jury could conclude. There is no question that the trial record supports the jury's finding of deliberate indifference.

### *Punitive damages*

Defendant again disputes that the trial record supports an award of punitive damages, but the Court also got this one right in denying the previous 50(b) motion, highlighting evidence from trial that was more than sufficient to support the jury's punitive damages award. First, Dr. Ritz is a medical doctor who agreed on direct examination that a rectal prolapse can cause extreme pain and impact a person's quality of life. ECF 278 at 8; ECF 273 at 137:15-23. He also confirmed that a rectal prolapse can require a person to use his hands to defecate, that it can cause fecal incontinence and leakage, and that, ultimately, a rectal prolapse can threaten a person's life. ECF at 273:139-12-140:05. As explained above, Dr. Ritz admitted that rectal prolapse required treatment and could be corrected with surgery. *Id.* At 137:24-138:01. The Court summarized the evidence supporting punitive damages as follows:

10

> Dr. Ritz first became aware of Hunter's need for a surgical consult in late April 2018 after Dr. Myers submitted an urgent referral. Dr. Ritz denied that consultation in favor of an alternative treatment plan that included first obtaining Hunter's prior surgical records. But when presented with those very records in June 2019, Dr. Ritz admitted he took no action to ensure Hunter received a surgical consultation to treat his rectal prolapse. In other words, despite fully understanding the nature and potential consequences of Hunter's rectal prolapse, Dr. Ritz chose not to allow Hunter to see a surgeon—even after he received the medical records that he claimed to want as part of an alternative treatment plan.

ECF 278 at 8.

Notably, the jury heard no testimony from Dr. Ritz that he would do anything differently if he could go back, that he has remorse, or that would change his conduct going forward, absent a deterrent. Additionally, a reasonable jury could conclude that the email evidence concerning the 2019 attorney letter shows that Dr. Ritz intentionally concealed his knowledge and involvement and gave false testimony to avoid liability. Dr. Ritz now stresses a supposed lack of malice on his part, but the jurors were properly instructed that a reckless disregard for Mr. Hunter's well-being is sufficient to support a punitive damages award. ECF 275 at 564:14-23. And Dr. Ritz's lack of concern for Mr. Hunter is obvious.

Rather than address the evidence and the Court's reasoning, Defendant contends the Court got unspecified facts wrong in the order denying the prior motion. But the reality is that Defendant has chosen to ignore the mountain of evidence supporting denial of their motion.

## CONCLUSION

For the above reasons, the Court should deny Defendant's motion in its entirety.

Respectfully submitted,
**ANTONIO HUNTER**
By: /s/ Maria Makar

11

*One of Plaintiff's Attorneys*

Jon Loevy
Locke Bowman
Julia Rickert
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
Makar@loevy.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 2, 2025, the foregoing was served on all counsel of record via the Court's e-filing system.

/s/ Maria Makar