IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antonio Hunter, | |
| Plaintiff, | Case No. 21-cv-271-NJR |
| v. | |
| Stephen Ritz, | JURY TRIAL DEMANDED |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S NEW TRIAL MOTION**

Defendant Dr. Stephen Ritz has moved for a new trial under Fed. R. Civ. P. 59(a). Dkt. 281. His motion is meritless and should be denied for the reasons given below.

## INTRODUCTION

Dr. Ritz got a fair trial this past June, a trial he lost because the evidence was overwhelmingly against him. He nevertheless seeks a do-over, but neither the facts of this case nor the law governing new trial motions remotely entitles him to one.

In support of his motion, Defendant presents four purported errors of this Court, contending that they independently and cumulatively demand a new trial. But Defendant has waived or forfeited each of these purported errors. With respect to one of them, Defendant even explicitly told the Court he did not want the jury instruction he now says was essential. And the one "error" Defendant raises that involves the Court denying him something he actually requested—an instruction saying that Plaintiff had given "mistaken" testimony—Defendant had not objected when the testimony was given. Yet Defendant makes no argument that his inaction with respect to these purported errors he raises should be excused.

Instead, Defendant argues, with no case law support whatsoever, that this Court was obliged to "intervene" when his attorneys failed to make the objections or take the actions they now say were crucial to his receiving a fair trial. Defendant essentially is seeking to impose a new standard on judges that would require them to do defense counsel's job. This attempt is improper and merits condemnation in addition to rejection.

## LEGAL STANDARD

"A new trial is warranted only if an error has a substantial influence over the jury and the result reached was inconsistent with substantial justice." *Barrow v. Wexford Health Sources, Inc.*, No. 314CV00941NJRDGW, 2018 WL 11424698, at *6 (S.D. Ill. Apr. 9, 2018), *aff'd*, 793 F. App'x 420 (7th Cir. 2019). "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial." *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012). Similarly, when the party moving under Rule 59(a) made no contemporaneous objection to the purported error, the objection is either waived, meaning the purported error either cannot be reviewed at all, or forfeited, meaning the stringent "plain error" standard will be applied. *Barrow*, 2018 WL 11424698, at *2. Failure to make objections will not be excused because motivated by strategy concerns. *Id*.

## FACTUAL SUMMARY

### *Plaintiff's medical need*

Plaintiff Antonio Hunter suffered from a recurrent rectal prolapse from 2018 to 2022 while incarcerated at Pinkneyville Correctional Center. Rectal prolapse is a condition in which the last section of the large intestine protrudes from the anus. This condition can have a severely negative impact on quality of life and, in some instances, can be life threatening. The only way to correct a rectal prolapse is surgery.

Medical care at Pinkneyville during the relevant period was provided by a private company, Wexford Health Sources. After Plaintiff requested to see a doctor at Pinkneyville about his prolapse,[1] Dr. Percy Meyers examined him. Dr. Myers noted Plaintiff's subjective complaint of rectal prolapse and history of rectal prolapse and documented that Plaintiff had a spontaneous bowel movement in the exam room. Following the exam, Dr. Myers submitted an urgent referral request to Wexford corporate, saying that Plaintiff should be sent to a colorectal surgeon for evaluation. Dr. Myers's colleague at Pinkneyville, Dr. Butalid, concurred with his judgment and presented the urgent referral request to Defendant Dr. Ritz, whose approval at the corporate level was needed at that time for an inmate to receive care outside the prison.

Dr. Ritz, however, denied the referral request. He instead put in place an "alternative treatment plan" that called for Plaintiff's past surgical records to be obtained. This plan did not include any actual treatment, and Plaintiff received none.

In June 2019, Plaintiff's attorneys sent a letter to Wexford, explaining that Plaintiff continued to suffer grievously from his prolapse. The letter expressed a desire to avoid litigation and also enclosed Plaintiff's past surgical records, just in case Wexford had not yet obtained them. Wexford's director of risk management, Joe Ebbitt, emailed this letter to Dr. Ritz and a few other Wexford employees (none of whom worked at Pinkneyville). Ebbitt directed the

---

[1] Defendant's statement of facts omits that Plaintiff complained of having a prolapse, though Dr. Myers's SOAP note says he did. See Pl. Trial Ex. 7 (Myers SOAP note dated 4/28/18).[2] Astoundingly, Defendant's statement of facts excises the name "Steve" from the Lehman email and replaces it with "Dr. Meeks" in brackets. Dkt. 281 at 4. Dr. Meeks, an employee of the Illinois Department of Corrections, is indeed named Steve, and he was a recipient of the lawyer letter, but Dr. Meeks was not on the email chain in question, which was exclusively Wexford employees and attorneys, and he was not referenced in the emails. Defendant claimed for the first time that "Steve" was actually Dr. Meeks in an affidavit in opposition to a sanctions motion Plaintiff filed shortly before trial. The Court recognized that the assertion "Steve" was Dr. Meeks was implausible. At trial, Defendant presented no evidence that "Steve" was Dr. Meeks (such as testimony from others on the email chain or from Dr. Meeks), and Defendant himself backed away from the idea that "Steve" was Dr. Meeks during his testimony. *See* Tr. 199:20-24 (Q. "[Y]ou can't say that he was talking about Steve Meeks, right?" A. "No, I can't." Q. "So, he's just as easily talking about you, correct?" A. "He could have been. I don't know.").

3

recipients to read the attached letter and asked to discuss it with Dr. Ritz, who was named in the letter. Dr. Ritz responded that he would call Mr. Ebbitt. Thereafter, the then-Chief Medical Officer of Wexford, Dr. Lehman, wrote in response to an email in the same chain from a regional medical director that "Steve and I are handling" the situation. The only Steve on this email chain was Dr. Ritz.[2]

Still, Plaintiff received no care for his prolapse, even though Dr. Ritz knew that the medical records he claimed to need were now in Wexford's possession. Even after this lawsuit was filed, Dr. Ritz did nothing to get Plaintiff the care he had single-handedly prevented Plaintiff from getting in 2018. Not until a preliminary injunction hearing was set did Wexford schedule an appointment for Plaintiff to see a specialist. During that hearing, Wexford informed the Court that Plaintiff would be sent to a colorectal surgeon, and the Court ordered defense counsel to inform the Court of the appointment date by the following Monday "to make sure that that is, in fact, happening as you tell me it is." Dkt. 78 at 30:16-25. Eventually, Dr. Venkateswara Poola, a colorectal surgeon, operated on Plaintiff and successfully repaired the prolapse, which was among the worst Dr. Poola had ever seen.

*First trial*

The first trial in this case ended in a mistrial when the jury was unable to reach a verdict.

---

[2] Astoundingly, Defendant's statement of facts excises the name "Steve" from the Lehman email and replaces it with "Dr. Meeks" in brackets. Dkt. 281 at 4. Dr. Meeks, an employee of the Illinois Department of Corrections, is indeed named Steve, and he was a recipient of the lawyer letter, but Dr. Meeks was not on the email chain in question, which was exclusively Wexford employees and attorneys, and he was not referenced in the emails. Defendant claimed for the first time that "Steve" was actually Dr. Meeks in an affidavit in opposition to a sanctions motion Plaintiff filed shortly before trial. The Court recognized that the assertion "Steve" was Dr. Meeks was implausible. At trial, Defendant presented no evidence that "Steve" was Dr. Meeks (such as testimony from others on the email chain or from Dr. Meeks), and Defendant himself backed away from the idea that "Steve" was Dr. Meeks during his testimony. *See* Tr. 199:20-24 (Q. "[Y]ou can't say that he was talking about Steve Meeks, right?" A. "No, I can't." Q. "So, he's just as easily talking about you, correct?" A. "He could have been. I don't know.").

The contested issues in that trial included whether Dr. Ritz had received the 2019 letter from Plaintiff's counsel and whether Dr. Ritz bore any responsibility for responding to the issues raised in the letter. At that time, Plaintiff did not have access to the email chain described above, which had been withheld as privileged, and Dr. Ritz had testified in a deposition that he had reviewed the email chain and that he saw no evidence the attorney letter was attached. Dr. Ritz had also testified in the deposition that Dr. Lehman wrote he would "take care" of the situation, the meaning of which Dr. Ritz claimed was unknowable because Dr. Lehman had since died. Dr. Stephen Ritz left out Dr. Lehman's reference in the email to "Steve."

*Motion practice following the first trial*

Between trials, Plaintiff moved to compel the production of the email chain, arguing any privilege had been waived. Dkt. 226. Defendant filed no response to that motion, which the Court then granted. Dkt. 233. The email chain revealed that the attorney letter was attached to the email; that Mr. Ebbitt had asked that Dr. Ritz read it and talk with him about it; and that, per Dr. Lehman, he and "Steve" were handling the situation.

Plaintiff, alleging misconduct by defense counsel and false testimony by Dr. Ritz in connection with the emails, moved for judgment as a sanction. Dkt. 241. The Court denied that motion and the case proceeded to trial. The Court ruled that the emails would be admissible at trial.

*Second trial*

At the second trial, Plaintiff presented evidence that he had suffered from a rectal prolapse that required medical care. *See, e.g.*, Tr. at 374:8-25, 375:1-9. Plaintiff also presented evidence that Dr. Ritz was informed of his condition and had the power to get him help but opted to deny him care instead. Tr. 140:21-25, 141:1-25, 142:1-3, 146:9-24. And the emails concerning

5

the 2019 attorney letter, when contrasted with Dr. Ritz's past testimony about them, showed that Dr. Ritz had obscured his role in the continued denial of care to Plaintiff, suggesting a consciousness of guilt.

The evidence in Plaintiff's favor was so strong that Plaintiff took the rare step (for a plaintiff) of moving for judgment as a matter of law. The Court denied that motion, but after deliberating for a few hours, the jury found Dr. Ritz liable, awarding Plaintiff $4 million to compensate for his four years of needless suffering and $1 million to punish Dr. Ritz for his egregious behavior.

Additional facts will be discussed below where relevant to Defendant's arguments.

## ARGUMENT

Defendant identifies four purported trial errors that he contends denied him a fair trial, both independently and collectively, warranting a new trial under Rule 59(a). As explained below, the Court did not err and certainly did not err to an extent that would warrant a new trial.

### A. The Court's Limiting Instruction Was Appropriate

Defendant first argues that he is entitled to a new trial because the Court declined to give his preferred instruction relating to a brief mention from Plaintiff about a preliminary injunction hearing that took place three years earlier. During the re-direct examination of Plaintiff, the following exchange took place:

> Q. And it wasn't until after you filed the lawsuit that they finally sent you to see a colorectal specialist, right?
> A. As I remember -- As a matter of fact, I was in Pinckneyville when the Judge ordered Dr. Myers in a video conference to send me out right now.
> Q. We will not go into all of that. But, you had to do a lot, you had to wait a long time, you had to jump through many hoops in order to finally get to see a colorectal surgeon?
> A. Yes.

Tr. at 508:1-9. Plaintiff's counsel had no intention of eliciting this testimony and tried to cut it off, but in any event, Defendant had not filed a motion *in limine* on this subject, and counsel for Defendant neither objected when the testimony was given nor asked for it to be stricken.

Raising this testimony afterward when the jury was out, Defendant's counsel said he would submit a "withdrawal instruction." *Id.* at 512:9-10. Off the record, *see id.* at 512:16, the parties and Court discussed giving a standard instruction telling the jury to disregard Plaintiff's testimony about the preliminary injunction hearing. Plaintiff had no objection to such an instruction.

Late that night, Defendant's counsel emailed a proposed instruction that said the testimony must be disregarded and also that it was "mistaken." *See* Exhibit 1 at 1-2. Plaintiff's counsel responded:

> Dennis, I was fine with the instruction you proposed in Court yesterday, simply telling the jury to disregard any testimony they heard about any past order of the Court. I object to this new proposal characterizing the testimony as mistaken. If we go down that path, we would need to explain what actually happened at that hearing, and no one wants that. I also note that you did not object or move to strike the testimony when it was given.

*Id.* at 3.

The following morning, the Court explained that a neutral instruction was warranted, one that would not "get into whether [the testimony] was mistaken or not." Tr. at 524:8-9. Defendant's counsel responded:

> I do think that some language needs to be included in the instruction about him being -- Frankly, after talking to two of my partners last night, the word that they wanted to use was "incorrect." I was trying to be fair with the word "mistaken," because I think everybody agrees he was mistaken, so we would ask that that sort of language be included in the instruction.

Tr. at 524:18-24. The Court again rejected this suggestion, explaining:

7

> Okay. Well, I am not going to do so,
> because I think if we say -- If I say, "don't consider it,"
> then it doesn't matter what it was, I am telling them not to
> consider it in any way, that should accomplish that. I think
> if we say "mistaken," then we need to explain what actually
> happened,[3] which I don't think is appropriate.

*Id.* 524:25-525. The Court then delivered this instruction to the jury:

> Yesterday you heard testimony that the Court
> previously entered an order in this case directing Dr. Myers
> to take certain action. You must entirely disregard this
> testimony. You must not consider it at all during your
> deliberations.

527:4-8.

Defendant now argues that the instruction above was insufficient to cure the prejudice he says resulted from Plaintiff's mention of the preliminary injunction hearing, making a fair trial impossible. Yet he did not move for a mistrial, then or at any other point, precluding the grant of a new trial on this basis. *See Pittman v. Cnty. of Madison*, No. 08-CV-890-SMY-DGW, 2019 WL 4343707, at *4 (S.D. Ill. Sept. 12, 2019), reversed on other grounds by *Pittman by &*

---

[3] What had actually happened during the preliminary injunction hearing was that the Court demanded some assurance Plaintiff would be sent to see a surgeon. After Dr. Myers testified that an appointment had been scheduled but that he did not know the appointment date, the Court said to defense counsel:

> Okay. Well, I don't have anything other
> than you telling me that it has, in fact, been scheduled
> within the next few weeks, because Dr. Myers didn't have that
> information. So, get me that information by close of business
> on Monday and I will evaluate at that point whether or not the
> motion is moot. If it's moot -- Because I do know that that
> was the injunctive relief requested, was referral for a
> surgical consultation. So, although he was seen by someone,
> then that person recommended the surgeon, so I want to make
> sure that that is, in fact, happening as you tell me it is.

Dkt. 78 at 30:16-25. So, Plaintiff's trial testimony was not completely accurate, but an entirely accurate account would not have been much better for Defendant, if at all. Notably, Defendant at no point requested an instruction that would have informed the jury of what actually happened.

8

*through Hamilton v. Cnty. of Madison, Illinois*, 970 F.3d 823 (7th Cir. 2020). But even assuming that this purported error had been properly preserved, Defendant cannot show prejudice because juries are presumed to disregard evidence when instructed to do so. *See United States v. Soria*, 965 F.2d 436, 441 (7th Cir. 1992), quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)) ("It is presumed that the jury will follow an instruction to disregard inadmissible evidence unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."); *Barrow v. Wexford Health Sources, Inc.*, No. 314CV00941NJRDGW, 2018 WL 11424698, at *5 (S.D. Ill. Apr. 9, 2018), aff'd, 793 F. App'x 420 (7th Cir. 2019) ("[T]here is a presumption that juries follow the instructions that they are given".). Defendant has in no way rebutted that presumption. And even if the jury did fail to disregard the testimony as instructed, it is far from clear that Defendant would have been prejudiced. Plaintiff testified that Dr. Myers, not Dr. Ritz, was ordered to send him to a surgeon, and a significant aspect of Dr. Ritz's defense was that some other Wexford employee was likely to blame for Plaintiff's lack of medical care: either Dr. Lehman, the regional medical directors, or the medical staff at Pinkneyville, of which Dr. Myers was a member. *See, e.g.*, Tr. at 123:20-19-25; 247:8-15, 612:5-15.

### B. The Court Was Not Required to Act *Sua Sponte* to Strike Testimony or Give a Limiting Instruction After an Unredacted Email Was Mistakenly Presented to the Jury

During the cross examination of Dr. Ritz, Plaintiff's counsel mistakenly presented Dr. Ritz with a copy of an exhibit that was missing some redactions and asked Dr. Ritz to read from it.[4] Tr. at 176:6-18. The portion that should have been redacted said the following: "I think it is very odd that this guy got a large settlement from us in late 2016 when he was free, then

---

[4] The jury received an appropriately redacted version when it received the exhibits for deliberation.

committed armed robbery in late 2017. His next parole date is 2022." *Id.* at 176:13-16. Plaintiff's counsel was dismayed at her mistake for multiple reasons: The unredacted text suggested Plaintiff was playing the system; it revealed that he had committed an armed robbery; it revealed that he had been in and out of prison; and it revealed that he was eligible for parole in 2022 but was still incarcerated in 2025. The danger of prejudice *to Plaintiff* was huge.

Defendant's counsel said nothing as this email was read. Counsel did not ask for the testimony to be stricken and did not request a limiting instruction. Yet Defendant now argues that this mistake by Plaintiff's counsel entitles him to a new trial. He writes that he made an "objection," Dkt. 281 at 13, but no objection appears in the trial record. Instead, Defendant used the mention of a prior settlement as a basis to argue that Plaintiff should be subjected to questioning about phone calls with his attorneys. Tr. at 442:25-443:13. The Court rightly rejected this non-sequitur. *Id.* at 448:10-21. After this rejection, Defendant chose not to ask for a limiting instruction or that the testimony be stricken.

Arguably, Defendant's affirmative decision to seek admission of the call logs, rather than to request a limiting instruction or that the testimony be stricken, constitutes waiver. Waiver is a "conscious relinquishment of a known right" that may be "express or implied." *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 651 (7th Cir. 2014). Defendant was well aware of his options when he made the affirmative decision to make the call log argument and not to seek an instruction. Waived issues are not reviewable. *Barrow*, 2018 WL 11424698, at *11. But even if Defendant merely forfeited the issue, he makes no argument that the Court committed plain error by not giving an instruction or striking the testimony *sua sponte*. (And he may not do so for the first time in his reply brief. *Jennings v. United States*, 461 F. Supp. 2d 818, 833 (S.D. Ill. 2006).)

Regardless, plain error review would not entitle Defendant to a new trial. An error is

plain when it "has a substantial influence over the jury and the result reached was inconsistent with substantial justice." *Barrow*, 2018 WL 11424698, at *6. Evidentiary errors satisfy the plain error standard only if they most likely affected the outcome of the trial. *Id.* Defendant most certainly has not demonstrated that the outcome of the trial likely would have been different if the Court had stricken this testimony or had given a limiting instruction of its own accord.

### C. The Court Was Correct Not to Strike Testimony or Give a Limiting Instruction When Defendant's Counsel Affirmatively Declined Such Action

Defendant argues that when defense witness Dr. Myers referenced "'the previous trial,'" the Court was obliged "to intervene by issuing a limiting instruction or striking the evidence." Dkt. 281 at 14-15. Because the Court did neither, Defendant contends, the jury would have gotten the impression that the case was a close one, thus "preventing him from receiving a fair trial." *Id.* Defendant does not explain why the mere existence of a past trial would suggest the case was close (the hung jury was not mentioned). Nor does he explain how the impression of a close case would prejudice him instead of Plaintiff—a tie would have gone to Defendant.

In any event, Defendant affirmatively waived his ability to raise this purported error. After defense counsel was silent during Dr. Myers's reference to the previous trial, the Court invited a limiting instruction when the jury was out, observing that Court intervention at the time may have been appropriate, "just to say that there are many reasons why a case can be retried and that it's not anything that they need to take into consideration." Tr. at 510:6-7, 510:12-15. Plaintiff's counsel then proposed an instruction but also explained that giving an instruction might be unnecessary or counterproductive. *Id.* at 510:8-10, 510:20-24. Counsel for Defendant responded:

> As I stand here right now, I think I am
> generally fine with that language, but I think I also agree
> with Counsel. I'm not even sure a limiting instruction is

11

> necessary. Dr. Myers just kind of randomly mentioned it on
> accident. I will represent to the Court he was told to not
> talk about there having been a prior lawsuit. I think he got
> confused by the question and said it. I personally don't
> think a limiting instruction is necessary. I wouldn't object
> to one being entered if the Court and opposing counsel wants
> one, but it's such a nonissue, I don't -- I don't think that
> the jury is going to have any confusion about there being --
> We have talked about prior proceedings a bunch of times, prior
> testimony. I really do think it's a nonissue.

*Id.* 511:1-13. This is a classic waiver. *See Barrow*, 2018 WL 11424698, at *11 (citing *Natale*, 719 F.3d 719, 729). The Court then stated: "Okay. Then if you are both in agreement it's not necessary, then we won't worry about it." *Id.* at 511:14-15.

Again, when an issue has been waived, rather than merely forfeited, it is unreviewable. *Id.* at *2. Thus Defendant cannot make an issue of this "nonissue" now that he lost the trial. His attempt to do so shows a lack of candor and is a waste of everyone's time.

### D. Plaintiff's Counsel Did Not Commit Misconduct, Let Alone Misconduct Warranting a New Trial

According to Defendant, the single mention of the previous trial by his own witness, Dr. Myers, somehow gave Plaintiff's counsel "the opening to allege a purposeful and significant delay in production" of the Wexford emails about the attorney letter. Dkt. 281 at 15. For this reason, Defendant contends, the Court was obliged to intervene to prevent Plaintiff's counsel from arguing that Dr. Ritz did not expect Plaintiff ever to see the emails Dr. Ritz had given false testimony about in a deposition. But this chain of reasoning falls apart at each step.

The most glaring problem is that, once again, Defendant is arguing that the Court should have acted as his defense counsel. Defendant did not object when Plaintiff's counsel said during opening statement that the jury would "hear evidence that Dr. Ritz believed you would never see." Tr. at 115:24-111:1. Nor did Defendant seek to bar Plaintiff from repeating this true

12

statement. Defendant again failed to object when Plaintiff's counsel questioned Dr. Ritz at length about whether he was aware Plaintiff's counsel lacked the emails when he previously testified. Tr. at 185:8-186:5. And Defendant also did not object during closing arguments when Plaintiff's counsel said, "We didn't have those [emails] when Dr. Ritz gave all the past testimony that you have seen and he believed we never would, so he testified the way that he did." Tr. at 568:5-7. Given the many opportunities defense counsel had to raise this issue, their decision not to must have been conscious, and thus the decision should be treated as a waiver, rather than a forfeiture, and the "error" should not be reviewed at all. *Barrow*, 2018 WL 11424698, at *11 (citing *Natale*, 719 F.3d 719, 729).

      Waiver aside, Defendant's attempt to tie Plaintiff's counsel's statement above to his own witness's errant reference to the prior trial has no basis. Plaintiff's counsel made no attempt to tie the two together, neither overtly nor by stealth. Rather, Plaintiff's counsel pointed out that Dr. Ritz did not expect the emails to be provided to Plaintiff to give needed context for assessing the motivation behind Dr. Ritz's false deposition testimony. In that deposition, Dr. Ritz had denied that the attorney letter was attached to the email he received and had denied that he played any role in deciding how to respond to that letter. Knowing that Dr. Ritz did not expect Plaintiff or the jury to be able to compare his testimony to the actual emails was important for assessing his credibility and intent. Plaintiff's counsel was always going to make this point, as the opening statement reveals, and it has no connection to Dr. Myers' unexpected reference to prior trial.

      Even truly inappropriate statements in closing arguments will rarely warrant a new trial. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011) ("We have stated repeatedly that improper comments during closing argument rarely amount to reversible error.").

And further guarding against any conceivable unfair prejudice to Defendant was the Court's instruction to the jury that attorney statements are not evidence. *See Christmas v. City of Chicago*, 682 F.3d 632, 642 (7th Cir. 2012) (affirming district court denial of new trial motion in part because "the district court instructed the jury that statements by the attorneys should not be considered as evidence"). Defendant is seeking to manufacture prejudice out of nothing.

E. **Defendant's Cumulative Error Argument Is Undeveloped and Meritless**

Defendant contends that the purported errors he has identified warrant a new trial in combination, even if not standing alone. He develops no argument in support of this idea, however, and undeveloped arguments are forfeited. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). In any event, the purported errors, not one of which prompted counsel for Defendant to object contemporaneously, were of very little consequence and, in some instances, may have been helpful to Defendant. Adding them together does not change this reality.

## CONCLUSION

For the reasons given above, Defendant's motion should be denied.

Respectfully submitted,

**ANTONIO HUNTER**

By: /s/ Julia Rickert
*One of Plaintiff's Attorneys*

Jon Loevy
Locke Bowman
Julia Rickert
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor

14

Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
Julia@loevy.com

## CERTIFICATE OF SERVICE

    I hereby certify that on October 2, 2025, the foregoing was served on all counsel of record via the Court's e-filing system.

/s/ Julia Rickert