**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ANTONIO HUNTER,

        **Plaintiff,**

v.

                                    **Case No. 3:21-CV-271-NJR**

STEPHEN RITZ,

        **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Antonio Hunter, a former inmate in the Illinois Department of Corrections, sued Dr. Ritz for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. (Doc. 1). After a hung jury led to a mistrial in 2024, a jury in June 2025 found in favor of Hunter, awarding $4 million in compensatory damages and $1 million in punitive damages. (Doc. 279).

Now pending before the Court are two motions filed by Defendant Dr. Stephen Ritz: a Motion for New Trial (Doc. 280) and a Renewed Motion for Judgment as a Matter of Law (Doc. 282).

### I.    Renewed Motion for Judgment as a Matter of Law

Before reaching the merits of Dr. Ritz's motion, the Court addresses a procedural issue raised by Hunter. At trial, counsel for Dr. Ritz orally moved for judgment as a matter of law under Rule 50(a). (Doc. 275 at p. 32). Counsel said he would file a written motion later that day, June 12, 2025, but he briefly argued that there was insufficient

evidence presented to support each and every element of Hunter's claim of deliberate indifference. (*Id.*). Because a written motion was to be filed, the Court took the matter under advisement at that time. (*Id.* at p. 33).

Dr. Ritz did not file a written motion that day. The matter was submitted to the jury, and a verdict was returned in Hunter's favor for $4 million in compensatory damages and $1 million in punitive damages. (Doc. 266). The following morning, June 13, 2025, Dr. Ritz filed his written Motion for Directed Verdict, arguing that the evidence was insufficient to allow a reasonable jury to find in Hunter's favor on his claim of deliberate indifference. (Doc. 269). Unlike Dr. Ritz's oral motion, however, the written motion also argued that Hunter failed to set forth substantial evidence demonstrating that he was entitled to punitive damages. (*Id.*).

Hunter now argues that Dr. Ritz's oral motion was his Rule 50(a) motion, his written motion was his Rule 50(b) motion, and his current renewed motion is an improper, third motion under Rule 50. Thus, it is procedurally barred.

In reply, Dr. Ritz asserts that his first written motion was a supplement to his oral motion under Rule 50(a), while his current motion is a proper Renewed Motion for Judgment as a Matter of Law under Rule 50(b). Moreover, because the Court ordered Hunter to respond to Dr. Ritz's "Renewed Motion for Judgment as a Matter of Law," he argues, the Court recognized that the motion was procedurally appropriate.

"Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

on that issue.'" *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting FED. R. CIV. P. 50(a), (b)). A motion for judgment as a matter of law may be made any time before the case is submitted to the jury, specifying the judgment sought and the law and facts that entitle the movant to the judgment. FED. R. CIV. P. 50(a)(2). If the court does not grant a motion made pursuant to Rule 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). "No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *Id.*

The 2006 Amendment to Rule 50 explains that "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." *Id.* comm. note (2006 amend.). The Rule 50(a) motion informs the opposing party of the challenge to the sufficiency of the evidence, affords an opportunity to provide additional evidence that may be available, and alerts the court to the opportunity to simplify the issues that will go to the jury. *Id.*

Here, Dr. Ritz submitted his Rule 50(a) motion orally and supplemented it with a written brief that was filed after the verdict was returned. That motion was denied by written order on August 4, 2025. (Doc. 278). That makes Dr. Ritz's current motion his renewed motion under Rule 50(b).

The Court realizes that it contributed to the confusion by referring to Dr. Ritz's written supplement as his renewed motion. (Doc. 278). The Court also discussed the evidence that was sufficient to support the jury's punitive damages award, even though

Dr. Ritz did not raise that issue in his oral motion before the case was submitted to the jury. But Hunter did not respond to Dr. Ritz's written supplement, and therefore did not argue that Dr. Ritz forfeited the punitive damages issue by not raising it in his oral Rule 50(a) motion. Thus, in effect, Hunter also forfeited this argument.

Regardless of any procedural issues, the Court still finds that sufficient evidence was presented for a reasonable jury to find for Hunter on both the issues of deliberate indifference and punitive damages.

With regard to deliberate indifference, Dr. Ritz argues there was no evidence that he knew Hunter had a rectal prolapse when Dr. Myers referred him for a surgical consultation, since Dr. Myers never diagnosed Hunter with a rectal prolapse. Instead, Dr. Ritz only knew for certain that: (1) Hunter had a history of rectal prolapse that was surgically corrected in 2012; (2) Hunter defecated when he was being examined by Dr. Myers in April 2018; and (3) Hunter was reportedly experiencing bleeding with bowel movements, having issues emptying his bowels, and having episodes of fecal incontinence. (Doc. 283). Thus, Dr. Ritz argues, it was reasonable for him to believe that Hunter's condition was something other than a rectal prolapse and to pursue a more conservative approach to treatment, which included acquiring Hunter's past surgical records and ordering bloodwork.

While it is true that Dr. Myers never diagnosed Hunter with a rectal prolapse, Dr. Ritz's argument ignores the evidence that he received an email in June 2019 from Joe Ebbitt, Wexford's Risk Management Director, which included a letter from Plaintiff's counsel informing Ebbitt and Dr. Steven Meeks that Hunter's rectal prolapse symptoms

Page 4 of 14

had returned, Dr. Myers referred Hunter for a surgical consultation for correction, and Dr. Ritz or another Wexford physician denied the referral due to a need for Mr. Hunter's prior medical records. Dr. Ritz claims that Plaintiff's counsel's 2019 letter provided him with "little new information," but the letter *included* the medical records that he specifically requested. Dr. Ritz then admitted at trial that he took no action to address the claims and concerns raised in the letter. (Doc. 273 at p. 159). While it is true that the letter did not provide a new diagnosis of rectal prolapse, it did provide him with the information that he previously said he needed. Thus, there was evidence from which the jury could conclude that, by June 2019, Dr. Ritz knew that Hunter's rectal prolapse symptoms had returned and that he had the medical records he previously requested, yet he chose to take no action.

As to punitive damages, Dr. Ritz argues merely that the evidence at trial did not demonstrate "knowledge of unlawfulness or reckless indifference to the law," as required to award punitive damages. The Court previously addressed this argument in its August 4, 2025 Order denying Dr. Ritz's initial Motion for Directed Verdict. Because he has raised no new arguments, the Court stands on its prior analysis and denies Dr. Ritz's Renewed Motion for Directed Verdict.

## II.    Motion for New Trial

Rule 59 of the Federal Rules of Civil Procedure allows a district court to grant a new trial on all or some of the issues, for any reason for which a new trial has been granted in federal court. FED. R. CIV. P. 59(a)(1)(A). The Seventh Circuit Court of Appeals has held that a new trial is appropriate "if the jury's verdict is against the manifest weight of the

evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018). A jury verdict "should only be overturned if 'no rational jury' could have rendered it." *Hakim v. Safariland, LLC*, 79 F.4th 861, 868 (7th Cir. 2023); *see also Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (quoting *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)) ("A new trial should be granted, however, 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience.'").

A "new trial is not automatically required whenever a jury is exposed to material not properly in evidence." *United States v. Coney*, 76 F.4th 602, 607 (7th Cir. 2023) (quoting *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir. 1989)). The relevant question is whether there was a " 'reasonable possibility' that the improper material affected the verdict." *Id.* "This is a fact-intensive inquiry . . . and the primary responsibility for deciding whether this prejudice occurred lies with the district judge . . . ." *Id.* (internal citation omitted).

Dr. Ritz alleges that four prejudicial errors precluded him from receiving a fair trial. The Court addresses each alleged error in turn.

*The Court's Limiting Instruction Addressing Hunter's Improper Testimony*

Dr. Ritz first argues that he was deprived of a fair trial when the Court refused to give his proposed limiting instruction after Hunter falsely testified that the Court ordered Dr. Myers to immediately send him out for medical care. Dr. Ritz contends that Hunter made up this testimony to suggest to the jury that even the Court had problems with Dr. Ritz, and that the Court's refusal to properly instruct the jury prejudiced him.

The following exchange took place at trial during Hunter's redirect examination

by his counsel:

> Q. And it wasn't until after you filed the lawsuit that they finally sent you
> to see a colorectal specialist, right?
>
> A. As I remember — As a matter of fact, I was in Pinckneyville when the
> Judge ordered Dr. Myers in a video conference to send me out right
> now.
>
> Q. We will not go into all of that. But, you had to do a lot, you had to wait
> a long time, you had to jump through many hoops in order to finally get
> to see a colorectal surgeon?
>
> A. Yes.

(Doc. 274 at p. 226).

Defense counsel did not object to the testimony at trial, although counsel did

indicate, on a break, that he would propose a limiting instruction that evening. The

instruction submitted by Dr. Ritz stated:

> In reaching your verdict, you shall not consider testimony about any order
> made by the Court in this case. That testimony was mistaken. You must
> disregard all such testimony when deliberating.

The Court rejected this instruction, instead instructing the jury as follows:

> Yesterday you heard testimony that the Court previously entered an order
> in this case directing Dr. Myers to take certain action. You must entirely
> disregard this testimony; you must not consider it at all during your
> deliberations.

(Doc. 275 at pp. 5-6). The Court explained that if the instruction said Hunter's "testimony

was mistaken," then the Court would need to explain what actually happened, which

Page 7 of 14

would be inappropriate.[1] (*Id.*). By telling the jury to entirely disregard the testimony about a previous order, the Court reasoned, the jury would not consider the testimony in any way, shape, or form. (*Id.*).

Dr. Ritz argues that when Hunter testified that the Court had ordered Dr. Myers to immediately send him out for a surgical consultation, Hunter effectively told the jury that the Court believed his treatment had been inadequate. When combined with testimony that Dr. Ritz was the "decision maker" in the collegial review process, he argues, this testimony could not simply be disregarded by the jury.

Hunter avers that Dr. Ritz never objected to the testimony during trial; thus, he has forfeited this issue and cannot raise it in a motion for new trial. In *Christmas v. City of Chicago*, the plaintiffs did not object to a witness's testimony, instead waiting until the conclusion of his examination before asking the court to reprimand the witness for failing to adhere to the court's *in limine* rulings. 682 F.3d 632, 640 (7th Cir. 2012). The plaintiffs later moved for a new trial based, in part, on the prejudice caused by that witness's testimony. *Id.* at 639. The district court denied the plaintiffs' motion for new trial, finding that they failed to preserve the issue when they did not timely object. *Id.* On appeal, the Seventh Circuit agreed that the district court did not abuse its discretion in denying the plaintiffs' motion for new trial when the plaintiffs did not timely and properly object to the testimony. *Id.* at 640.

---

[1] The Court notes that while Hunter's testimony was indeed untrue, it was not entirely baseless. At a preliminary injunction hearing held via videoconference on September 7, 2022, the Court ordered Defendants to provide a status report as to whether Hunter had been scheduled for a surgical consultation and/or surgery. (Doc. 78).

Here, however, Dr. Ritz's argument is based on the language of the limiting instruction given by the Court, not an objection to the testimony itself. Dr. Ritz clearly objected to the Court's instruction, which the Court noted and overruled. (Doc. 275 at pp. 5-6). But juries are presumed to follow the instructions given to them by the court, *id.* at 641, and the undersigned told the jury to entirely disregard Hunter's testimony about a court order directing Dr. Myers to take certain action.

Dr. Ritz points to the concurrence in *United States v. Jones*, where Judge Easterbrook noted that, in some circumstances, a limiting instruction telling a jury to ignore evidence "is like telling jurors to ignore the pink rhinoceros that just sauntered into the room." *United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring). In *Jones*, Judge Easterbrook was referring to evidence of a defendant's prior conviction in a criminal case. *Id.* He explained that a limiting instruction telling jurors not to infer that someone who violated the law is likely to do so again is unhelpful unless the judge explains to the jury what inferences it *is* allowed to make. *See id.* at 812 ("A good limiting instruction needs to be concrete so that the jury understands what it legitimately may do with the evidence.").

In this case, the Court told the jurors exactly what to do with the testimony, which was to disregard it entirely. Moreover, the Court explained that using Dr. Ritz's proposed limiting instruction would draw more attention to the testimony, requiring the Court to clarify the circumstances behind the "mistake." Given that Hunter's comment was isolated, his attorney quickly moved on, and it involved Dr. Myers's involvement in his care (not Dr. Ritz's), the Court finds that Dr. Ritz was not prejudiced and denied a fair

trial.

*Evidence of a Previous Settlement*

Dr. Ritz next asserts that he was deprived of a fair trial when the Court "allowed" Plaintiff's counsel to publish, and then have Dr. Ritz read aloud, an email concerning a settlement that Wexford reached with Hunter in 2016. The relevant portion of the email, which should have been redacted, stated: "I think it is very odd that this guy got a large settlement from us in late 2016 when he was free, then committed armed robbery in late 2017. His next parole date is 2022." Dr. Ritz argues that the Court's failure to issue a limiting instruction or strike the reference to the earlier settlement, despite his objection, undermined his ability to receive a fair trial.

In response, Plaintiff's counsel states that she mistakenly presented the unredacted version of the email for Dr. Ritz to read, which actually prejudiced Hunter: it suggested he was playing the system, it revealed he had committed armed robbery, it showed he had been in and out of prison, and it revealed that he was eligible for parole in 2022 but was still incarcerated in 2025. Even if the evidence somehow prejudiced Dr. Ritz, defense counsel did not object, did not ask for the testimony to be stricken, and did not request a limiting instruction.

Having carefully reviewed the trial transcript, the Court finds that Dr. Ritz waived this argument. Defense counsel neither objected when the email was read to the jury, nor requested a limiting instruction at any time. In fact, the testimony regarding the prior settlement occurred on the second day of trial (the first day of testimony), while the "objection" referenced by Dr. Ritz did not occur until the following day. (*See* Docs. 273,

274). And, it only arose in the context of defense counsel arguing that the testimony opened the door to questioning Hunter about his phone calls with his attorney—not that the testimony should be stricken or that a limiting instruction should be given. (Doc. 274 at pp. 160-67). Because Dr. Ritz never objected to the evidence and instead chose to assert that it opened the door to questioning about the call logs between Hunter and his attorneys, he has waived the issue. *See Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co., S.I.*, 168 F.4th 483, 489 (7th Cir. 2026) ("Waiver is the intentional relinquishment or abandonment of a known right.") (cleaned up).

Even if Dr. Ritz had not waived the argument, a new trial is not warranted just because the jury heard that Hunter received a prior settlement from Wexford. As noted by Plaintiff's counsel, Hunter was just as likely, if not more likely, to be prejudiced by the evidence. It revealed that he was litigious, he was out of prison before committing armed robbery and returning to prison, and he was still in prison in 2025 despite a 2022 parole date. The Court therefore finds that the evidence of the settlement did not influence the verdict against Dr. Ritz such that a new trial is required.

*A Reference by Dr. Myers to "the Previous Trial"*

Dr. Ritz asserts a new trial should be ordered because the Court failed to intervene when his own witness, Dr. Myers, made a reference to the "previous trial." He contends that the Court should have issued a limiting instruction or struck the testimony, but it did not do so even though it later acknowledged it "probably should have." Dr. Ritz argues this error allowed the jury to infer that a second trial was needed because the case was a close call. He also claims it allowed Plaintiff's counsel to improperly reference the

prior trial and to suggest that a second trial was necessary because Dr. Ritz allegedly hid evidence.

At trial, Plaintiff's counsel asked Dr. Myers if he recognized Hunter in the courtroom "from patient interactions." (Doc. 274 at p. 26). Dr. Myers responded, "I recognize him because of the previous trial." (*Id.*). Nothing was mentioned about why there was a previous trial, that there was a hung jury, or that the "previous trial" even involved Hunter. Defense counsel did not object to the testimony.

After Dr. Myers was excused as a witness, the undersigned said, "I think we need a limiting instruction to the jury about reference to a prior trial. I'll put that on counsel." (Doc. 274 at p. 82). Later that day, the Court noted that it was waiting for the limiting instruction with regard to Dr. Myers's testimony about the prior trial. (*Id.* at p. 167). When the Court mentioned the limiting instruction a third time that day, Plaintiff's counsel proposed one but also noted that giving the instruction may draw more attention to the issue. The Court agreed that drawing more attention to the testimony is always a risk and then mused, in an off-hand remark, that the Court probably should have said something at the time of the testimony. (*Id.* at p. 228).

After Plaintiff's counsel read their proposed instruction, defense counsel stated that he was fine with the language. He then admitted:

> I think I also agree with [Plaintiff's] counsel. I'm not even sure a limiting instruction is necessary. Dr. Myers just kind of randomly mentioned it on accident. I will represent to the Court he was told to not talk about there having been a prior lawsuit. I think he got confused by the question and said it. I personally don't think a limiting instruction is necessary. I wouldn't object to one being entered if the Court and opposing counsel wants one, but it's such a nonissue, I don't –I don't think that the jury is

going to have any confusion about there being—We have talked about prior proceedings a bunch of times, prior testimony. I really do think it's a nonissue.

(*Id.* at p. 229).

Because both parties agreed that a limiting instruction was not necessary, the Court did not give one. Indeed, defense counsel went so far as to call it a nonissue. The Court thus rejects Dr. Ritz's argument that the Court's failure to *sua sponte* strike the testimony or give a limiting instruction was so prejudicial that he is entitled to a new trial.

The Court also is not persuaded by Dr. Ritz's claim that the Court's failure to intervene allowed Plaintiff's counsel to improperly reference the prior trial. Dr. Ritz cites Hunter's closing argument, during which counsel referred to the internal Wexford emails and said, "We didn't have those when Dr. Ritz gave all the past testimony that you have seen and he believed we never would, so he testified the way that he did." (Doc. 275 at p. 49).

First, Dr. Ritz did not object to this statement in closing argument. Second, Plaintiff's counsel did not reference the previous trial. Instead, her reference to "past testimony" was to Dr. Ritz's video deposition testimony that the jury watched. Dr. Ritz did not suffer any prejudice warranting a new trial by the Court's failure to *sua sponte* strike Dr. Myers's testimony about the previous trial or issue a limiting instruction that both parties agreed was not necessary.

### The Cumulative Effect of the Alleged Errors

Finally, Dr. Ritz argues that the cumulative effect of these alleged errors, even if harmless on their own, deprived him of a fair trial.

Page 13 of 14

To prevail on a cumulative effect argument, the movant must show that multiple errors occurred at trial and that those errors, in the context of the entire trial, were so severe that the trial was "fundamentally unfair." *Christmas*, 682 F.3d at 643 (quoting *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011)). The court must look at the entire record, examining the alleged errors, their interrelationship and combined effect, the efficacy of any remedial measures, and the strength of the plaintiff's case. *Id.*

As discussed above, Dr. Ritz waived the argument that he was prejudiced by evidence of the prior settlement, he agreed that evidence of a "previous trial" was a nonissue, and Plaintiff's counsel never improperly mentioned the prior trial. The remaining alleged error regarding the Court's instruction to entirely disregard all testimony about an order directing Dr. Myers to take certain action cannot, on its own, constitute a cumulative error. *See United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error."). Thus, Dr. Ritz has failed to demonstrate that any cumulative errors deprived him of a fair trial.

## CONCLUSION

For these reasons, the Motion for New Trial (Doc. 280) and Renewed Motion for Judgment as a Matter of Law (Doc. 282) filed by Defendant Dr. Stephen Ritz are **DENIED**.

**IT IS SO ORDERED.**

DATED:   April 10, 2026

**NANCY J. ROSENSTENGEL**
**United States District Judge**